**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
KYLA NÚÑEZ (Bar No. CA 329484)
knunez@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 916.552.2300
Facsimile: 916.552.2323

MATTHEW F. BRUNO (*Pro Hac Vice Forthcoming*)
mbruno@manatt.com
7 Times Square
New York, New York 10036
Telephone: 212.790.2701

*Attorneys for Defendant*
Better Home & Finance Holding Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELENA LEANOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER HOME & FINANCE HOLDING COMPANY,<br><br>Defendant. | Case No.: 3:25-CV-07893<br><br>Assigned to Hon. Edward Chen<br><br>**DEFENDANT BETTER HOME & FINANCE HOLDING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed concurrently with Request for Judicial Notice, Declaration of Brandon P. Reilly; and [Proposed] Order<br><br>Date: November 20, 2025<br>Time: 1:30 p.m.<br>Courtroom: 5<br><br>Complaint Filed: September 16, 2025<br>Trial Date: None Set |

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on Thursday, November 20, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5, 17th Floor, located in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA, the Honorable Edward Chen presiding, Defendant Better Home & Finance Holding Company ("Better"), will and hereby does move to dismiss Plaintiff Elena Leanos' ("Plaintiff") class action complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is made on the grounds that Plaintiff failed to state a claim as a matter of law for violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.*; violations of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631(a) and 632; and invasion of privacy under California's constitution. Plaintiff's claims fail because she failed to plausibly allege that Better violated her rights to privacy.

Further, Plaintiff lacks standing to bring these claims because she failed to plausibly allege that she suffered damages of any kind. Finally, each of Plaintiff's four causes of action are untimely under the applicable statutes of limitations.

The motion is based on this notice of motion; the accompanying memorandum of points and authorities; request for judicial notice; declaration of Brandon P. Reilly; all pleadings, records, and files in this action; any evidence or argument presented at the hearing; and any and all papers on file with the Court.

Dated: October 10, 2025

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: /s/ Brandon P. Reilly
Brandon P. Reilly
Matthew F. Bruno
Kyla Núñez
Attorneys for Defendant,
Better Home & Finance Holding Company

# TABLE OF CONTENTS

PAGE

MEMORANDUM OF POINTS AND AUTHORITIES .... 1
INTRODUCTION .... 1
BACKGROUND .... 3
A. Legislative History .... 3
B. Summary of Allegations .... 5
LEGAL STANDARD .... 7
ARGUMENT .... 8
I. PLAINTIFF LACKS ARTICLE III STANDING. .... 8
II. PLAINTIFF'S CLAIMS ARE TIME-BARRED. .... 10
III. THE COMPLAINT FAILS TO STATE A CLAIM. .... 14
A. Plaintiff's Wiretap Act Claim Fails Under the One-Party Consent Rule .... 14
B. Plaintiff's Wiretap Act and CIPA Section 632 Claims Fail Because the Communications Were Not Confidential. .... 16
C. Plaintiff's Wiretap Act and CIPA Section 631 Claims Fail Because She Does Not Allege "Interception in Transit." .... 16
D. Plaintiff's CIPA Section 631 Claim Fails Because She Has Not Alleged That Better "Aided and Abetted" the Alleged Unlawful Interception. .... 18
E. Plaintiff's Invasion of Privacy Claim Fails. .... 21
IV. CONCLUSION .... 23

## TABLE OF AUTHORITIES

PAGE

### CASES

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) (Chen, J.) .......... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) .......... 15

*Belluomini v. Citigroup, Inc.*,
2013 No. CV 13-01743 CRB, WL 3855589 (N.D. Cal. July 24, 2013) .......... 22

*Brown v. Madison Reed, Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022), *aff'd*, No. 22-16415, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) .......... 13

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) .......... 20

*Cabral v. Supple, LLC*,
No. EDCV 12-85-MWF (OPX), 2012 WL 12895825 (C.D. Cal. Oct. 3, 2012) .......... 22

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) .......... 7

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023) .......... 20

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F. 3d 1017 (9th Cir. 2013) .......... 16

*Finney v. Ford Motor Co.*,
No. 17-CV-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) .......... 11

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) .......... 21

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) .......... 4, 16

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) .......... 23

*Fredenberg v. City of Fremont*,
119 Cal. App. 4th 408 (2004) .......... 23

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 19, 20, 22

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .......... 8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 23

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ........ 10

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ........ 17

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 22, 23

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ........ 17

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ........ 7

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ........ 8, 22, 23

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d at 1037–38 ........ 23

*Javier v Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ........ 10, 11

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024) ........ 17

*Khamooshi v. POLITICO LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........ 8, 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 8

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) ........ 8

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 17

*Lau v. Gen Digital Inc.*,
No. 22-CV-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) ........ 13

*Licea v. Cinmar*, LLC,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ........ 18, 20

*Lightoller v. Jetblue Airways Corp.*,
No. 23-CV-00361-H-KSC, 2023 WL 396382 (S.D. Cal. June 12, 2023) ........ 8, 9

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ........ 16

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 22, 23

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 8

*Massie v. General Motors LLC*,
No. CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) .......... 9

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 17

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 8, 9, 10

*Mikulsky v. Noom, Inc.*,
No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 2024) .......... 9

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) .......... 7

*Popa v. Microsoft Corp.*,
--- F.4th ---, 2025 WL 2448824 (9th Cir. Aug. 26, 2025) .......... 8, 9

*Powell v. Union Pacific Rail Company*,
864 F. Supp. 2d 949 (E.D. Cal. 2012) .......... 19

*Raifman v. Wachovia Sec., LLC*,
649 F. App'x 611 (9th Cir. 2016) .......... 13

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 19

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 19

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 21

*Rodriguez v. Google, LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 18

*Roe v. Amgen*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 14, 16, 19

*Rogers v. Ulrich*,
52 Cal. App. 3d 894 (1975) .......... 19, 20

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 11, 12, 13

*Saeedy v. Microsoft Corp.*,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) .......... 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 7

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .......... 7

*Sussman v. AM. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 15

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd* No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) .......... 23

*Torres v. Prudential Financial, Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) .......... 18

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG, 2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) .......... 18, 21, 22

*Yale v. Clicktale, Inc.*,
No. 20-CV-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .......... 20, 22

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......... 11

**STATUTES**

18 U.S.C. § 2511 .......... 14, 15

18 U.S.C. § 2520(e) .......... 10

Cal. Civ. Code § 1791.100 .......... 4, 21

Cal. Civ. Code § 1798.100 .......... 4

Cal. Civ. Code § 1798.110 .......... 5

Cal. Civ. Code § 1798.115 .......... 5

Cal. Civ. Code § 1798.130 .......... 5

Cal. Civ. Code § 1798.135 .......... 5

Cal. Civ. Code § 1798.136 .......... 5

Cal. Civ. Code § 1798.140 .......... 5, 21

Cal. Civ. Proc. Code § 340(a) .......... 10

Cal. Fin. Code § 4050 .......... 15, 16

Cal. Fin. Code § 4053 .......... 15

Cal. Fin. Code § 4054.6 .......... 15

Cal. Fin. Code § 4056 .......... 15

Cal. Pen. Code § 630. .......... 1, 2, 3

Cal. Pen. Code § 631 .......... 4, 17, 18, 19, 21

Cal. Pen. Code § 632 .......... 2

Gramm-Leach Bliley Act .......... 15

## OTHER AUTHORITIES

16 C.F.R. §§ 313.4–313.9 ........ 15
11 CCR §§ 7000-7600 ........ 4
11 CCR §§ 7010-7012 ........ 5
11 CCR § 7013 ........ 5
11 CCR § 7022 ........ 5
11 CCR § 7024 ........ 5
11 CCR § 7025 ........ 5
11 CCR § 7026 ........ 5
11 CCR §§ 7050-7053 ........ 5
A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015) ........ 4
SB 690, 2025-26 Regulatory Session (March 24, 2025) ........ 5
SB 690 Analysis, Cal. Senate Pub. Safety Comm., 2025-26 Regulatory Session (April 25, 2025) ........ 5
U.S. Const., Art. III ........ 1, 7, 8, 9

## RULES

Fed. R. Civ. Pro. 9(b) ........ 11, 13
Fed. R. Civ. Pro. 12(b)(1) ........ 7, 8, 9, 10
Fed. R. Civ. Pro. 12(b)(6) ........ 7
Fed. R. Evid. 201 ........ 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Plaintiff's Complaint against Better Home and Finance Company ("Better") represents the latest in a series of potentially thousands of similar complaints and demands lodged in recent years against website owners of all types and sizes. These complaints center around purportedly illegal "wiretapping" activities associated with the use of third-party cookies or pixels on commercial websites. Here, Plaintiff takes two telephone laws passed in 1967 and 1968 and applies them to routine business technologies developed by Google and LinkedIn and deployed by Better (as well as thousands of other websites) to assist with analyzing website traffic and engage in advertising. Plaintiff's claimed invasion of privacy is based on Better's alleged disclosure of two pieces of information voluntarily provided by Plaintiff – a home address (apparently, the address of a 400-plus unit building) and a credit score range – that are not associated with any of her identifying information, including her name or email address.

Out of the gate, the Complaint faces serious, uncurable defects that warrant dismissal with prejudice. Plaintiff lacks Article III standing because she does not (and cannot) plead a concrete, particularized injury-in-fact resulting from Better's use of basic website tools. Instead, Plaintiff relies on vague assertions that "Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff," (Compl. ¶ 179), but leaves the Complaint devoid of any facts describing a specific or palpable harm.

Dismissal of the Complaint is separately warranted because Plaintiff affirmatively pleads herself out of court by alleging actions that fall outside of the applicable statutes of limitations. Plaintiff's claims are governed by one-year (i.e., California Invasion of Privacy Act ("CIPA")) and two-year (i.e., the federal Electronic Communications Privacy Act ("ECPA," also known as the "Wiretap Act") and California constitution) limitation periods. However, the Complaint identifies actions that purportedly occurred ***three and half years ago*** – well outside the limits of either limitation period. Recognizing this, Plaintiff tries to save her claims by asserting conclusory, boilerplate allegations in an effort to have her otherwise untimely complaint tolled

based upon Better's purported "knowing and active concealment" of the website's use of third-party cookies. Not only are these allegations insufficient to invoke any tolling doctrine, but they are contradicted by Better's Privacy Policy that was readily available on the website at issue at the time of her alleged visit and at all times thereafter. Even under the most generous reading, these circumstances do not justify tolling and cannot save her untimely claims as a matter of law.

These glaring and uncurable issues aside, Plaintiff also fails to plead facts demonstrating that the information collected was personally identifiable or otherwise sensitive. Because it is not. Indeed, the figures in the Complaint remove all doubt – the only information voluntarily provided is a general address and a credit score range, unattached to Plaintiff's name or other identifying information. That is it. Where, as is the case here, the data provided is "insufficiently personal" and "basically anonymous," generalized privacy concerns are insufficient to satisfy federal jurisdictional requirements. As such, without a concrete, imminent, and individualized injury, Plaintiff lacks standing, and the Complaint must be dismissed.

Even if Plaintiff were able to establish standing (she cannot), the Complaint still fails to state a viable claim. Plaintiff cannot maintain an action under the Wiretap Act because that statute permits interception of communications if intercepted by a party to the communication, or where a party consented to the interception by a third-party. The participant in the conversation cannot be held liable for "intercepting" that communication. While a narrow exception to this rule exists for interceptions "for the purpose of committing any criminal or tortious act," Plaintiff offers no allegations to credibly plead the exception applies here.

Nor has Plaintiff pled facts demonstrating a reasonable expectation of privacy, or that the information shared by Better was confidential, which are prerequisites to Wiretap Act and CIPA Section 632 claims. The information allegedly disclosed was not associated with a name or other personally identifiable information and thus does not constitute "confidential communications" under the ECPA or CIPA or "highly sensitive" information sufficient to support a constitutional or common law privacy claim. (Compl. ¶¶ 5, 32.) Courts require disclosure of highly sensitive, personal, and confidential information, such as medical records, Social Security numbers, or

similarly sensitive data to constitute a privacy claim. Plaintiff does not allege disclosure of these.

Plaintiff also does not (and cannot) allege that any communication was "intercepted in transit," as required under the Wiretap Act and CIPA Section 631. The Complaint describes only that Plaintiff voluntarily submitted data to Better through its standard webform and online application, which was then allegedly processed by Google and LinkedIn *only after* the information was transmitted. As pled, the alleged conduct is not an interception of a communication "in transit." Rather, Plaintiff describes a voluntary transmission by her to the intended recipient – Better – in the ordinary course of business, which third-parties later used according to disclosed policies for standard and expected business purposes.

Moreover, Plaintiff does not allege that information was shared with a true "third-party." Instead, she broadly asserts that Better "discloses information related to consumers' financial applications" to LinkedIn and Google using "Tracking Technologies," but fails to explain how these entities act as anything more than ordinary vendors – that is, extensions of Better. (Compl. ¶¶ 3, 8, 31.) Courts have consistently held that the use of routine marketing and analytics tools, such as those employed here, are simply tools used by companies to assist business and maintain websites, and do not amount to disclosure to a third-party for the purposes of a wiretapping claim.

Finally, Plaintiff alleges no conduct that could plausibly be characterized as "highly offensive" to adequately plead an invasion of privacy claim. The allegations center on standard "tracking technologies" that are employed by countless websites for marketing and data purposes. The routine use of common analytics and marketing tools is neither egregious nor shocking; it is standard practice across industries and its allegation here cannot support a privacy tort.

## BACKGROUND

### A. Legislative History

The California Invasion of Privacy Act, California Penal Code § 630 *et seq.* ("CIPA"), was enacted in 1967. The Wiretap Act was passed in 1968. As explained by the California Supreme Court, CIPA was enacted to "replac[e] prior laws that permitted the recording of telephone conversations with the consent of one party to the conversation." *Flanagan v.*

*Flanagan*, 27 Cal. 4th 766, 768-69 (2002).

CIPA was amended well into the Internet Era. In 2015, AB 929 (Chau) amended CIPA to encompass pen registers and trap and trace devices. *See* A.B. 929, 2015-2016 Reg. Sess. (Cal. 2015). However, like the 1967 version, the 2015 amendment to CIPA did not contain the words "Internet," "website," "cookies," "pixels," or "advertising," despite the widespread use of Internet websites and tracking technologies when the bill was passed. Rather, the focus remained on telephones and other person-to-person communications. *See, e.g.,* Cal. Pen. Code § 631(a) (referring to "telegraph or telephone wire, line, cable, or instrument" and "internal telephone communication system"); § 631(b) (referring to a "public utility," "telephone company," and "telephonic communication systems"); § 632 (referring to a "telegraph, telephone, or other device."). As stated by the bill's sponsor, Assemblymember Chau, "pen registers/trap and trace devices are used by law enforcement for telephone surveillance to record incoming and outgoing phone numbers from a tapped line" and "[a] pen/trap order is only for the capture of incoming and outgoing phone numbers." *See* AB 929, Bill Analysis (April 21, 2015) at 10–11.

While CIPA does not address websites or third-party tracking technologies, California has a comprehensive privacy law that does: The California Consumer Privacy Act of 2018, Cal. Civ. Code § 1798.100 *et seq.*, including as amended by the California Privacy Rights Act of 2020 and its implementing regulations, 11 CCR §§ 7000-7600 (the "CCPA Regulations," and collectively, the "CCPA"). Altogether, the CCPA's text contains the word "Internet" 35 times, "website" 46 times, and "advertising" 30 times. *See id.* The CCPA regulates the use of online tracking technologies of the type alleged by Plaintiff by, among other things, requiring websites to (i) disclose whether the business shares personal information for cross-context behavioral advertising;[1] (ii) disclose categories of third-parties to whom the business discloses personal

---

[1] "Cross-context behavioral advertising" means "the targeting of advertising to a consumer based on the consumer's personal information obtained from the consumer's activity across businesses, distinctly branded internet websites, applications, or services, other than the business, distinctly branded internet website, application, or service with which the consumer intentionally interacts." Cal. Civ. Code § 1798.140(k); §§ 1798.115(c), 1798.130(a); 11 CCR § 7013.

information (Cal. Civ. Code § 1798.110(c)(4); 11 CCR §§ 7010-7012); (iii) offer a link allowing the website visitor to opt-out of such sharing (*id.* at §§ 1798.120, 1798.135; 11 CCR §§ 7026); (iv) respond to website visitors' browser signals that can automatically and instantly communicate such opt-out requests (*id.* at § 1798.135(b); 11 CCR § 7025); (v) request a report on all such sharing (*id.* at §§ 1798.115(a)-(b); 11 CCR § 7024); (vi) request the deletion of all personal information maintained by the business (*id.* at §§ 1798.105, 1798.130; 11 CCR § 7022); and (vii) enter contracts with all third-parties and service providers with which personal information is shared (*id.* at §§ 1798.100(d), 1798.140(ag)(1); 11 CCR §§ 7050-7053).

This year, the California Senate unanimously voted to amend CIPA to clarify that the statute is not intended to apply to business and commercial services. *See* SB 690, 2025-26 Regulatory Session (March 24, 2025) (CIPA's private right of action "does not apply to the processing of personal information for a commercial purpose"). The Senate Public Safety Committee's analysis noted that CIPA was "never intended to apply" to "website analytics or online advertising," which is already governed by the . . . CCPA." SB 690 Analysis, Cal. Senate Pub. Safety Comm., 2025-26 Regulatory Session (April 25, 2025).[2]

**B. <u>Summary of Allegations</u>**

Better is a digital home-ownership company that provides mortgage financing and related services. Better owns and operates a website, www.better.com (the "Website"), through which consumers can apply for mortgages and related services.

Plaintiff claims that more than three-and-a-half years ago, in January 2022, she used the Website to apply for a loan and submitted personal information, like her address and credit score. (Compl. ¶ 5.) Plaintiff alleges that Better uses the LinkedIn Insight Tag and Google Analytics (the "Tracking Technologies"), which purportedly caused information to be shared with those companies without Plaintiff's consent. (*Id.* at ¶¶ 31, 33, 87). Plaintiff contends Better voluntarily

[2] In a related development, on October 8, 2025, California Governor Gavin Newsom signed the California Opt Me Out Act (AB 566, Lowenthal), which will require all website browsers to offer consumers a simple, built-in opt-out signal. This mechanism will allow for immediate opt-outs of third-party website tracking for targeted advertising and other purposes. (*See* AB 566 (enrolled Sept. 15, 2025) (adding Cal. Civ. Code § 1798.136).)

implemented the Tracking Technologies on the Website. (*Id*. at ¶ 87.) Plaintiff alleges these technologies monitor user activity through cookies and embedded code, which capture personal information supplied by users via detailed URLs and event data. (*Id.* at ¶¶ 42, 70, 94, 95.)

The alleged information that is purportedly disclosed includes the: (i) applicant's home address or address the applicant seeks to buy and (ii) general range of the applicant's purported credit score. (*Id*. at ¶ 5, Figures 4, 7, 13.) As demonstrated in the Complaint, the information Plaintiff claims to have provided does not disclose her name or other personally identifying information. For example, the Complaint refers to the address of a 405-unit building and a credit score range of 700-719, neither of which uniquely identify Plaintiff. (*See id.*; Reilly Decl. Ex. A.)

Plaintiff also claims that, through its analytic tools, Better disclosed this information to LinkedIn and Google in "real time." (Compl. ¶¶ 29, 31–33, 42–47, 68, 94, 130.) But Plaintiff does not claim that these third-parties accessed or viewed the data during its transmission. According to the Complaint, Google collects information from the Website, processes it, and later combines it with other data for matching purposes. (*See id.* at ¶¶ 72–73.)

Accepting that, on its face, her Complaint is untimely, Plaintiff instead alleges her claims are somehow tolled due to Better's alleged "knowing and active concealment of its incorporation of the Tracking Technologies into its Website," which Plaintiff alleges she was ignorant of. (*Id.* at ¶¶ 100-08.) Specifically, Plaintiff claims Better "had exclusive knowledge that its Website incorporated the Tracking Technologies and yet failed to disclose to consumers, including Plaintiff and Class Members, that by accessing financial services through the Website—including mortgages, loans, and insurance quotes—Plaintiff's and Class Members' private and confidential facts and information relating to their applications would be disclosed or released to LinkedIn and Google." (Compl. ¶ 104.) Plaintiff claims the earliest she could have reasonably known about Better's use of Tracking Technologies "would have been shortly before" filing the Complaint. (*Id.* at ¶ 107.) However, Plaintiff is noticeably silent as to (1) whether Better had a Privacy Policy or other notice as of January 2022 or thereafter (it did); and (2) if so, whether such Privacy Policy or other notice disclosed Better's use of these technologies (it does). (Reilly Decl., Ex. C.)

Based on this, Plaintiff asserts the following causes of action: (1) Violation of the Wiretap Act, 18 U.S.C. § 2511, *et seq.*; (2) Violation of CIPA Section 631(a); (3) Violation of CIPA Section 632; and (4) Invasion of Privacy under California's Constitution. Plaintiff seeks class certification, naming Plaintiff as class representative, declaratory relief, "actual, compensatory, statutory (i.e., $5,000 per violation), and/or punitive damages," restitution of equitable monetary relief, injunctive relief, and attorneys' fees and costs. (*See id*., Prayer for Relief.)

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 952 (S.D. Cal. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998)). A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Id.* (*citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)). Where, as here, the attack is facial, "the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction." *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *Id.* at 952–53 (*citing Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001)). This Court must accept factual allegations as true and must draw reasonable inferences from them in favor of the nonmoving party. *Id.* (*citing Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996)). However, this Court is not required to accept "legal conclusions" as true. *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," there are two exceptions: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING.

To establish Article III standing, a plaintiff must allege an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). A statutory violation, standing alone, does not suffice; "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Dismissal under Rule 12(b)(1) is appropriate for several reasons.

First, following *TransUnion*, Ninth Circuit courts have dismissed privacy suits where, as is the case here, plaintiffs allege only abstract statutory violations without real-world harm. *See Popa v. Microsoft Corp.*, --- F.4th ---, 2025 WL 2448824, at *5-6 (9th Cir. Aug. 26, 2025) (affirming dismissal of wiretapping claim under Ruel 12(b)(1)); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 396382, at *3 (S.D. Cal. June 12, 2023) ("a bare CIPA violation by itself is insufficient to demonstrate Article III injury"); *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1225–27 (N.D. Cal. 2022) (no standing where plaintiffs alleged data disclosure but no actual and concrete misuse); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3–*4 (N.D. Cal. June 24, 2025) (general allegations of interception insufficient); *Khamooshi v. POLITICO LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (granting dismissal for lack of Article III standing, holding that routine website tracking data did not constitute a concrete privacy injury).

Second, Plaintiff fails to plead facts demonstrating that she "stated a legally protectable privacy interest based on the nature of the information at issue." *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014)) (granting motion to dismiss). Indeed, this was recently clarified by the Ninth Circuit: In *Popa*, the court held that information about a plaintiff's online interactions with a pet supply store website – "over 30 different categories of information" – included "no embarrassing, invasive, or otherwise private information" collected by the third-party at issue, comparing the

interaction "to a store clerk's observing shoppers." *Popa*, 2025 WL 2448824 at *2, 5; *Khamooshi*, 2025 WL 2822879, at *3 (decision issued eight days ago, following *Popa* and granting dismissal with prejudice). On this basis, the Ninth Circuit affirmed dismissal for lack of Article III standing. Here, the information at issue involves a home address and credit score range, which were voluntarily entered into field and text boxes on the Website. (Compl. ¶¶ 5, 89–92; Figures 2-15.) However, it is well-settled that interception of information that is merely entered into a field or text box fails to demonstrate a concrete injury. *Mikulsky*, 682 F. Supp. 3d at 864 (allegations that plaintiff input "her personal information in text fields" deemed insufficient to establish concrete injury); *Lightoller*, 2023 WL 3963823, at *4 (interception of "'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time'" is insufficient to demonstrate harm); *Khamooshi*, 2025 WL 2822879, at *2 ("browsing activity, geolocation data, device type, browser type, and 'device fingerprints'" are "insufficient to establish a concrete privacy injury").

Third, Plaintiff cannot demonstrate concrete harm because there is no recognized right to privacy over anonymized data. Cases are legion on this score. *See Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (anonymized data is "insufficiently personal") (collecting cases); *Massie v. General Motors LLC,* No. CV 21-787-RGA¸2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized data captured by the Session Replay software").

*Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 2024) is instructive. There, a plaintiff asserted privacy claims based on inputting "sensitive personal health information" within text fields. *Id.* at *5. In granting dismissal under Rule 12(b)(1), the Court explained that "Plaintiff's activity on Defendant's website was basically anonymous" because plaintiff did not enter "her name, email address, credit card details, or other contact information on Defendant's Website." *Id.* The same is true here: there is no information provided that would enable Better (or anyone else) to identify Plaintiff. The Complaint identifies only two forms of information purportedly disclosed: Plaintiff's (i) property address (Compl.

Figures 4, 7) and (ii) credit score range (Compl. Figure 13). Like *Mikulsky*, Plaintiff does not allege that she disclosed her name, email address, financial information, or bank records. While Plaintiff claims she disclosed her address – that, without more, does not demonstrate a concrete injury.[3] *See Mikulsky*, 682 F. Supp. 3d at 864 ("basic contact information" does "not trigger a protectable privacy interest"). Dismissal under Rule 12(b)(1) is warranted.

## II. <u>PLAINTIFF'S CLAIMS ARE TIME-BARRED.</u>

Plaintiff's CIPA claims (Counts II and III) are governed by a one-year statute of limitations period. *See* Cal. Civ. Proc. Code § 340(a); *Javier v Assurance IQ, LLC,* 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023). Plaintiff's ECPA and California constitutional invasion of privacy claims (Counts I and IV) are both subject to a two-year statute of limitations. *See* 18 U.S.C. § 2520(e) (two years for ECPA claims); *Al-Ahmed v. Twitter, Inc.,* 648 F. Supp. 3d 1140, 1155 n. 1 (N.D. Cal. 2023) (Chen, J.) (same); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598-99 (N.D. Cal. 2021) (California constitutional privacy claim is subject to two-year statute of limitations). Because the alleged violations occurred when Plaintiff visited the Website in or around January 2022 (Compl. ¶ 5) but her claims were not brought until September 16, 2025, each of Plaintiff's claims are time-barred. Recognizing this fatal flaw, Plaintiff attempts to save her claims by pleading facts to toll the limitations periods. (*Id.* ¶¶ 100-08.) Plaintiff's conclusory tolling allegations fail as a matter of law.

To invoke the delayed discovery doctrine, Plaintiff must plead facts to show "(1) the time and manner of discovery <u>and</u> (2) the inability to have made earlier discovery despite reasonable diligence." *Javier*, 649 F. Supp. 3d at 901 (emphasis original). When tolling is based on an allegation of fraudulent concealment, Plaintiff must meet the heightened pleading requirements of

---

[3] Nor does the address alleged in the Complaint suggest any type of personal connection. As part of the loan application process, the Complaint identifies the address of a 405-unit condominium. (*See* Compl. Figures 7, 11; *see also* Reilly Decl., Ex. A.)

Rule 9(b) and "plead with particularity facts showing that (1) the defendant affirmatively misled it, and that (2) the plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-CV-06525-WLH-E, 2025 WL 1141168, at *10 (C.D. Cal. Feb. 27, 2025) (internal citations and quotations omitted); *see also Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at * (N.D. Cal. June 4, 2018) ("Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)."). "The second element requires the plaintiff to allege (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* Moreover, fraudulent concealment requires conduct "above and beyond the wrongdoing" upon which the claim is based. *See Saedi*, 2025 WL 1141168, at *10 (dismissing CIPA claim as time-barred because plaintiff failed to sufficiently plead the applicability of the fraudulent concealment or the delayed discovery doctrines). Here, neither doctrine applies.

Plaintiff fails to plead any facts supporting the application of the delayed discovery doctrine. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (finding the complaint did not plead sufficient facts to invoke the delayed discovery rule). Although she claims she did not discover her alleged injuries until "September 2025 after contacting undersigned counsel" (Compl. ¶ 108), she fails to plead any facts concerning:

- The time and manner of her "discovery" of the facts giving rise to her claims;
- Whether the Better Website posted a Privacy Policy in January 2022 or at any point thereafter until "shortly before" the Complaint was filed in September 2025, which it did;
- If so, whether Better's Privacy Policy disclosed the use of third-party tracking technologies the Plaintiff claims were "concealed" from her, which it does;
- Why she did not discover the complained-of conduct when she was allegedly subjected to "harassing targeted advertising" (Compl. ¶ 99); and

- Why she could not contact undersigned counsel during the limitations period.

Indeed, while Plaintiff fails to allege any of the above, the few allegations she does make demonstrate that she was on inquiry notice upon visiting the Website. A plaintiff's recognition that a website at issue collected her information is "sufficient to provide constructive notice of the Privacy Policy, such that Plaintiff had inquiry notice upon visiting the Website." *Saedi*, 2025 WL 1141168, at *10. Here, as in *Saedi*, the Privacy Policy on Better's Website as of January 2022 contained disclosures sufficient to put Plaintiff on inquiry notice of the third-party tracking technology she claims she could not have known about until years later. Specifically, that Privacy Policy stated in relevant part under the heading "Cookies and Other Tracking Technologies":

> We use both first and third-party cookies and tracking technologies on the Website. These cookies and tracking technologies may collect your personal information. We may use cookies and tracking technologies to monitor how the Website is used, customize content, serve advertisements and evaluate the effectiveness of our advertising campaigns, identify problems with the Website, improve the Website, analyze Website traffic and other analytics purposes, monitor the security of the Website, and gauge the effectiveness of our communications.

(Reilly Decl., Ex. C.) In another section entitled "Tracking", that Privacy Policy stated:

> We also use third-party cookies to serve targeted advertisements on both the Website and on third-party websites. These cookies may track users over time and across third-party websites and services.

(*Id.*) Here, Plaintiff was, twice, placed on inquiry notice: (i) when she visited the Website in January 2022 and had the opportunity to review Better's clear disclosures; and (ii) when she allegedly began receiving "harassing targeted advertising" (Compl. ¶ 99). *Saedi*, 2025 WL 1141168, at *10 ("[E]ven assuming that Plaintiff did not have inquiry notice at the exact moment she visited the Website, she surely had inquiry notice when she began seeing ads.")

Plaintiff's attempt to invoke tolling due to fraudulent concealment is similarly doomed by inadequate and contradicted allegations. For one, Plaintiff does not come remotely close to satisfying Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Instead, in conclusory fashion, Plaintiff pleads that "[a]ny applicable statutes of limitations have been tolled

by Defendant's knowing and active concealment of its incorporation of the Tracking Technologies into its Website." (Compl. ¶ 100.) This, of course, does not suffice under Rule 9(b). Among other things, Plaintiff does not identify any fraudulent act committed by Better, let alone allege well-pled facts as to "when the fraud was discovered," "the circumstances under which it was discovered," or that she was "not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put [her] on inquiry." *Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611, 613 (9th Cir. 2016) (affirming dismissal of claims as time-barred because plaintiffs failed to sufficiently allege any efforts to investigate or that defendant fraudulently withheld information); *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 800 (N.D. Cal. 2022), *aff'd*, No. 22-16415, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) (finding delayed discovery and fraudulent concealment doctrines did not apply because plaintiff failed to provide enough detail to adequately allege any of the required elements); *Lau v. Gen Digital Inc.,* No. 22-CV-08981-JST, 2023 WL 10553772, at *3 (N.D. Cal. Sept. 13, 2023). Nor does Plaintiff allege how Better's conduct went "above and beyond the wrongdoing upon which the plaintiff's claim is filed." *Saedi*, 2025 WL 1141168, at *11 ("The only conduct alleged is the installation of Tracking Tools, which is the same alleged wrongdoing that forms the basis of the CIPA claim.")

Beyond this, Plaintiff's contention that Better "fraudulently concealed" its use of tracking technologies is flatly contradicted by her own allegations. She fails to include any allegation about what notices were presented to her when she visited the Website in January 2022. As detailed above, Plaintiff fails to acknowledge that the Better Privacy Policy, as of January 2022, clearly disclosed the use of "third-party cookies and tracking technologies" that "may collect your personal information," including to "serve advertisements and evaluate the effectiveness of our advertising campaigns," "improve the Website, analyze Website traffic and [for] other analytics purposes," and "to serve targeted advertisements on both the Website and on third-party websites." (Reilly Decl., Ex. C.) This separately defeats any attempt to toll her untimely claims.

Plaintiff fails to allege that she took any steps in trying to uncover the purported concealment other than contacting an attorney more than three and a half years after she visited

the Website. For these reasons, the Complaint should be dismissed with prejudice as untimely.

## III. THE COMPLAINT FAILS TO STATE A CLAIM.

### A. Plaintiff's Wiretap Act Claim Fails Under the One-Party Consent Rule.

In Count I, Plaintiff claims Better violated the Wiretap Act, which prohibits the interception of certain communications. 18 U.S.C. § 2511(1). However, the Wiretap Act further establishes a "one-party consent" rule, which permits the interception of communications if intercepted by a party to the communication, or where a party consented to the interception by a third party. 18 U.S.C § 2511(2)(d). Put differently, under the Wiretap Act, Better cannot be liable for intercepting communications to which it was a party. *Id.* Because Plaintiff cannot plead facts to avoid this rule's application, Count I should be dismissed.

There is no dispute that the parties to the "communications" were Plaintiff and Better. (*See, e.g.,* Compl. ¶¶ 5, 114, 128.) Despite this, Plaintiff claims that Better (i.e., the *participant* to the conversation) somehow "intercepted" communications in which it was participating. (*Id.* at ¶¶ 130–32, 135.) But it is well-settled that Better cannot be liable for purportedly wiretapping its own website. *See Roe v. Amgen*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (holding "Plaintiffs' allegations are self-defeating; their complaint is only susceptible to an inference that Defendant, as the creator and operator of its website, consented to the use of data collection tools it installed on its website" and dismissing Wiretap Act claim). That holds true here: as a party to the communication, Better cannot be liable for "intercepting" the communication intended for that party. For that reason, Count I fails as a matter of law.[4]

To avoid the one-party consent rule's application, Plaintiff attempts to invoke the crime-tort exception, (*see* Compl. ¶ 135), which negates consent where the interception was for the

---

[4] Plaintiff's alternative theory—that Google or LinkedIn, as third-parties, "intercept[ed]" the alleged communication - fares no better because Plaintiff acknowledges (as she must) that Better, as operator of the Website, "integrated" the Tracking Technologies onto the Website. (Compl. ¶ 31.) Put differently, the Complaint pleads nothing but *Better's* consent to these technologies being utilized on *Better's* Website—acts that fall within the one-party consent rule.

"purpose of ***committing [a] ... tortious act*** in violation of the . . . laws of the United States or any State." 18 U.S.C. § 2511(2)(d) (emphasis added). Here, Plaintiff pleads nothing more than general, unspecified, violations under the Gramm-Leach Bliley Act ("GLBA"), the California Financial Information Privacy Act ("CalFIPA"), and California Constitution. (*Id.* at ¶¶ 134–35.) But this falls well-short of satisfying the crime-tort exception, which requires Plaintiff plead *facts* demonstrating that "the ***purpose*** for the interception—its ***intended use***—was criminal or tortious." *Sussman v. AM. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). Specifically, courts require plaintiffs "plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (collecting cases). Plaintiff fails to do so.

Although the Complaint provides an "overview" of the GLBA, it does not explain how it was purportedly violated and ignores many provisions within the Act that permit disclosures of nonpublic financial information, including via sufficient disclosures and opt-out notices. *See, e.g.*, 16 C.F.R. §§ 313.4–313.9. But the Complaint *does* acknowledge these exceptions under CalFIPA, which permit the sharing of protected information under certain circumstances, including with consent. (Compl. ¶ 28 (citing Cal. Fin. Code §§ 4053, 4054.6, 4056).) The reality is that under the GLBA and CalFIPA, Better is allowed to share nonpublic information under various authorized circumstances. Ignoring these exceptions, Plaintiff simply pastes the definition of "nonpublic personal information" under the GLBA, without any meaningful explanation as to how Better violated the GLBA or CalFIPA. (*Id.* ¶¶ 134–35.) This cannot sustain a claim.

That aside, the crux of the Complaint rests not on criminality, but on the theory that Better was motivated by financial factors. (*Id.* ¶ 99.) Courts in this Circuit have repeatedly held that financial motivation is insufficient to trigger the crime-tort exception. *B.K.*, 721 F. Supp. 3d at 1065 (interception of information for "commercial advantage" failed to support exception); *Roe*, 2024 WL 2873482, at *6 (exception did not apply where "Defendant's motivations were to improve their marketing and advertising efforts"). Count I should be dismissed with prejudice.

**B. Plaintiff's Wiretap Act and CIPA Section 632 Claims Fail Because the Communications Were Not Confidential.**

Plaintiff's Wiretap Act (Count I) and CIPA Section 632 (Count III) claims separately fail because she fails to plead facts demonstrating she had a reasonable expectation of privacy or that the communications were confidential, which both acts require. *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 683, 698–90 (N.D. Cal. 2021) (ECPA and Section 632 of CIPA require allegations that the speaker had a "reasonable expectation of privacy."); *see also Flanagan*, 27 Cal. 4th at 768 (holding a conversation is confidential under Section 632 of CIPA "if a party to that conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded."); *Faulkner v. ADT Sec. Servs., Inc.*, 706 F. 3d 1017, 1019-20 (9th Cir. 2013) (Plaintiff must plead facts demonstrating the communications at-issue were "confidential" and he had "an objectively reasonable expectation [he was] not being recorded."). Plaintiff has not done so.

As detailed in Section I *supra*, Plaintiff alleges the purportedly intercepted communication was comprised of a (i) property address (of a 405-unit condominium) (Compl. Figures 4, 7) and (ii) credit score range (*id.* Figure 13). Plaintiff does not allege she disclosed – or that LinkedIn or Google intercepted – identifying information, like her name, email address, financial information, or bank records. This information, without an association with Plaintiff's name or other identifying information, is not confidential. *Lopez*, 519 F. Supp. 3d at 684, 689–90 (dismissing Wiretap Act and CIPA Section 632 claims for failure to plead confidential communications).

**C. Plaintiff's Wiretap Act and CIPA Section 631 Claims Fail Because She Does Not Allege "Interception in Transit."**

Because Plaintiff cannot allege that any communication was intercepted while "in transit," the Wiretap Act (Count I) and CIPA Section 631 (Count II) claims fail. *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024) ("The analysis for a violation of the Federal Wiretap Act is the same as under CIPA.") Section 631(a) requires contemporaneous interception, but the allegations confirm the tracking technology software operates to collect information only *after* the user arrived on the Website (Compl. ¶ 90), collecting data once the

communication is complete, and thus falling outside the scope of unlawful interception. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that for a communication to be intercepted, "it must be acquired during transmission, not while it is in electronic storage"); *see also Torres v. Prudential Financial, Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *6–*7 (N.D. Cal. Apr. 17, 2025) (holding that even if third-party technology captures inputs in real time, Section 631 is not implicated where data is stored and later reviewed by humans).

For a violation of Section 631(a), the communication must be intercepted during transmission – that is, before it reaches its intended recipient. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021). Once the data reaches its recipient, even if only momentarily collected, there is no interception because at that point "a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077–78 (N.D. Cal. 2015). For instance, in *Jones v. Tonal Sys., Inc.*, the court found plaintiffs failed to plausibly allege interception under Section 631 because the transcripts were "retrieved and created after transmission from the server provided for [defendant's] benefit by [defendant's] service provider." 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024). The court emphasized that conclusory allegations – like repeatedly asserting data was "intercepted" – are not enough without concrete facts indicating contemporaneous access during transmission. *Id.* (citing *Rodriguez v. Google, LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022)).

Similarly, *Valenzuela v. Keurig Green Mountain, Inc.* makes clear that simply reciting the phrase "intercepted in transit" does not suffice to state a Section 631 claim. 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). There, the court stressed that a plaintiff must plausibly allege the specific mechanism by which the challenged technology intercepts a communication while in transit, emphasizing that – "'[w]hile' is the key word here." *Id.* Conclusory allegations, without concrete facts showing contemporaneous interception, are inadequate. *Id.*; *see also Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) ("Bare allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit.

The timeline of the automatic recording and transcription is unclear, as it could occur during transit or it can take place after receipt of the message in defendant's inbox.”).

As in *Jones* and *Valenzuela*, the Tracking Technologies capture data only for later use and analysis. Plaintiff does not allege facts establishing real-time interception. *Jones*, 751 F. Supp. 3d at 1037; *Valenzuela*, 674 F. Supp. 3d at 758. Plaintiff's assertion that communications were “*disclosed* by Defendant to LinkedIn and Google and/or intercepted in transit by LinkedIn and Google, *in real time*,” (Compl. ¶ 94 (emphasis added)) is unsupported by allegations showing that third-parties accessed or reviewed data while in transit. In fact, the Complaint confirms the opposite – that these purported disclosures are *not* contemporaneous: “***once*** Google's software code collects the data intercepted from the Website, it packages the information and sends it to Google for processing.” (*Id.* at ¶ 72 (emphasis added).) Therefore, given that the Complaint identifies ***post***-transmission like *Jones* and *Valenzuela*, it fails to support a Section 631 violation. That is because the later use of collected data does not convert lawful collection into unlawful interception. *Valenzuela*, 674 F. Supp. 3d at 758. Counts I and II must be dismissed.

**D. Plaintiff's CIPA Section 631 Claim Fails Because She Has Not Alleged That Better “Aided and Abetted” the Alleged Unlawful Interception.**

Although far from clear, it appears Plaintiff advances an aiding and abetting theory of liability based on Better's relationship with Google and LinkedIn. (Compl. ¶ 149.) This argument fails for at least two reasons. First, like the Wiretap Act, Better cannot be liable under Section 631 since Plaintiff alleges Better was a party to the communications. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 828, 831–33 (N.D. Cal. 2021) (dismissing CIPA claim under the “party to the communication” exception); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (dismissing ECPA and Section 631(a) claims based on one-party consent provision). To hold otherwise would ignore the purpose of the party exceptions under the Wiretap Act and CIPA. Indeed, the Eastern District's decision in *Powell v. Union Pacific Rail Company* rejected a similar attempt to extend liability. 864 F. Supp. 2d 949 (E.D. Cal. 2012). There, plaintiff sought to extend Section 631 liability to a call participant, claiming the “participant should be liable for aiding or conspiring with a third

party to enable that party to listen in on the call." *Id.* at 954. In rejecting this theory, the Court explained the "focus of section 631" is on the actions of third-parties and takes "aim[] at one aspect of the privacy problem – eavesdropping, or the secret monitoring of conversations by third parties." *Id.* at 955 (quoting *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985) and *Rogers v. Ulrich*, 52 Cal. App. 3d 894 (1975)).[5] The Court added that "[p]ublished cases are in accord that section 631 applies only to third parties and not participants." *Id.* (collecting cases). As such, "[g]iven the settled nature of the third-party focus of section 631," the Court rejected plaintiff's "alternate reading" and declined to extend aiding and abetting liability to the conversation participant. *Id.* at 956. Consistent with *Powell*'s reasoned decision, the Court should follow suit.

Second, even if the Court follows *Revitch* in favor of *Powell*, Plaintiff's attempt to establish liability still fails. Courts that have addressed this issue focus on whether the third-party acts as an "extension" of the conversation participant; that is, the question is whether the third-party "provides a tool – like the tape record in *Rogers* – that allows [the conversation participant] to record and analyze its own data in aid of [its] business." *Graham*, 533 F. Supp. 3d at 832–33 (citing *Rogers*, 52 Cal. App. 3d at 897–99). If the third-party only stores data for the defendant or collects data in aid of the participant's business, then it will not be treated as a third-party eavesdropper and the party exception controls. *Id.; Yale v. Clicktale, Inc.*, No. 20-CV-07575-LB, 2021 WL 1428400, at *3 (N.D. Cal. Apr. 15, 2021) (vendor not a "third-party eavesdropper" where it "provide[d] a software service that allows its clients to monitor their website traffic.").

That is the case here: the "Tracking Technologies" and "cookies" identified are tools used by Better to improve its business. (Compl. ¶¶ 31, 43, 57.) To avoid this, Plaintiff spends almost a third of the Complaint making general statements about LinkedIn's and Google's technology. (*Id.* ¶¶ 35–54 (LinkedIn); ¶¶ 55–86 (Google).) But these allegations only summarize LinkedIn and

[5] Another court departed from *Powell*'s rational, holding that the conversation participant could be liable for helping a third-party eavesdrop. *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). It is respectfully submitted that *Revitch* was wrongly decided on this issue and failed to meaningfully address *Powell*'s reasoning.

Google's capabilities, and do not demonstrate that Plaintiff's data was used by LinkedIn and Google in every way those vast companies may use data. This, without more, fails to establish LinkedIn or Google as third-party eavesdroppers. *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023) ("[p]laintiff must provide facts suggesting that [the software companies] are recording [d]efendant's customers' information for some use or potential future use beyond simply supplying this information back to [d]efendant."); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) ("Defendant uses a third-party vendor to 'record and analyze its own data in aid of [Defendant]'s business,' not the 'aggregation of data for resale,' which makes the third-party an 'extension' of Defendant's website, not a 'third-party eavesdropper.'"); *Licea v. Cinmar*, LLC, 659 F. Supp. at 1109 ("Plaintiffs fail to plead that the unnamed third party acted sufficiently independent from Defendant as to constitute an unannounced auditor under California law.").

Indeed, Plaintiff fails to make this causal connection because it is not plausible. For example, while Plaintiff discusses LinkedIn's website, Privacy Policy, and User Agreement (*see,* Compl. ¶¶ 35–54), she conveniently avoids mentioning LinkedIn's Ads Agreement (which is publicly available on the same website as the other terms). (Reilly Decl., Ex. B). That agreement clearly states that any data shared by Better with LinkedIn is to be used for the ***exclusive purpose of rendering services back to Better***:

> With respect to the Personal Data that you disclose or otherwise make available to LinkedIn for processing on your behalf, you agree that you act as a "controller" or "business" (as each term is defined by Applicable Law) with respect to such data. ***LinkedIn acts as a "processor" or "service provider," as each term is defined by Applicable Law,***[6] ***and processes such Personal Data on your behalf and subject to your instructions unless otherwise stated in specific terms for a relevant product or in the DPA.***

---

[6] Under the California Consumer Privacy Act ("CCPA"), a "business" is the entity that "determines the purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d). A "service provider" is the entity that "processes personal information on behalf of a business and that receives from or on behalf of the business consumer's personal information for a business purpose pursuant to a written contract," and is prohibited from "[r]etaining, using, or disclosing the information for any purpose other than for the business purposes specified in the contract for the business" or "retaining, using, or disclosing the information outside of the direct business relationship between the service provider and the business." *Id.* at § 1798.140(ag).

(*Id.* (emphasis added)) This dooms Plaintiff's theory of data harvesting.

Even assuming Plaintiff adequately pled facts demonstrating LinkedIn and Google's use of data for resale (she did not), this theory still fails because Plaintiff has not and cannot plead the requisite *mens rea* for aiding and abetting. *See Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRX), 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) (recognizing scienter requirement to aiding and abetting CIPA Section 631 claim); *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. 2024) (granting dismissal where visitor failed to plausibly allege manufacturer had knowledge that software company intended to independently use transcripts between visitor and customer service representative in violation of CIPA). Aiding and abetting requires defendant "'(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person.'" *Valenzuela*, 2024 WL 1336959, at *4 (quoting *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26 (1996)). "Mere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting." *Id.* (granting dismissal for failure to plead scienter). Here, like *Valenzuela*, Plaintiff cannot plead facts showing Better knew of CIPA violations committed by LinkedIn or Google, let alone that Better substantially assisted in commission of purported violations. Plaintiff's Section 631(a) claim fails.

**E. <u>Plaintiff's Invasion of Privacy Claim Fails.</u>**

Plaintiff's invasion of privacy claim fails for any number of reasons. To begin, because this claim rests entirely on her legally infirm wiretap claims, it, too, must be dismissed. *Graham*, 533 F. Supp. 3d at 836 ("Because there was no plausible wiretapping . . . the plaintiffs did not plausibly plead that they possess a legally protected privacy interest."); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 ("The plaintiff does not plausibly plead a violation of her right to privacy under the California Constitution because she did not plausibly plead wiretapping.").

Should the Court consider the merits of the claim, dismissal is warranted because she fails to adequately plead the required elements. "To establish an invasion of privacy claim, a plaintiff

must demonstrate: '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037 (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39–40 (1994)). "The California Constitution and the common law both set a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, 2013 No. CV 13-01743 CRB, WL 3855589, at *6 (N.D. Cal. July 24, 2013). Plaintiff does not clear this high bar.

As discussed above, *supra* pp. 8–10, Plaintiff has not identified a legally protected privacy interest. Indeed, the only information identified concerns the alleged disclosure of Plaintiff's home address and credit score range, unassociated with her name or other identifying information. (*See* Compl. ¶ 5.) Courts, however, have repeatedly held that disclosure of information like employment details, bank account status, or credit preapproval, while personal, is not enough to support a privacy claim. *See Cabral v. Supple, LLC*, No. EDCV 12-85-MWF (OPX), 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012) ("The disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy"); *Fredenberg v. City of Fremont*, 119 Cal. App. 4th 408, 423 (2004) ("[a] person's general location is not the type of core value, informational privacy explicated in *Hill*"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim.") Accordingly, this threshold element is not satisfied.

Second, Plaintiff fails to show her expectation of privacy was reasonable. To satisfy this prong, plaintiff "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037–38. Where, as here, consumers voluntarily disclose information during online commercial activity, there is no reasonable expectation of privacy. *See Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *4–5 (S.D. Cal. May 8, 2024) (no reasonable expectation of privacy in "name, address, credit card number(s), and billing information"

provided to third party), *aff'd* No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). The same holds true here: Plaintiff's alleged conduct is inconsistent with any reasonable expectation that the limited, generic information she voluntarily provided would remain private from Better. To be sure, Plaintiff concedes she visited the Website and voluntarily provided general information about an address and credit score range. (Compl. ¶ 5.) This conduct belies any *reasonable* expectation of privacy. *See, e.g.*, *Papa Johns*, 2024 WL 2060140, at *4–5.

Even if Plaintiff had a reasonable expectation of privacy, she failed to satisfy the "high bar" of demonstrating Better's conduct was "highly offensive." To satisfy this element, she must plead an "egregious breach of social norms." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038. She cannot meet this high standard because the collection of addresses and credit score ranges reflects "routine commercial behavior" that courts regularly accept. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("Courts in this district have held that data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011) (routine commercial behavior is not an egregious breach of social norms); *Low*, 900 F. Supp. 2d at 1025 (holding disclosure of personal information, like social security numbers, was not an "egregious breach of the social norms"). The privacy claim should be dismissed.

## IV. <u>CONCLUSION</u>

The Court should grant Better's motion and dismiss the case in its entirety with prejudice.

Dated: October 10, 2025

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: /s/ Brandon P. Reilly
Brandon P. Reilly
Matthew F. Bruno
Kyla Núñez
Attorneys for Defendant,
Better Home & Finance Holding Company