**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

ELENA LEANOS, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BETTER HOME & FINANCE HOLDING COMPANY,

Defendant.

Case No. 3:25-cv-07893-EMC

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: February 12, 2026
Time: 1:30 p.m.
Ctrm: 04, 17th Floor
Judge: Hon. Edward M. Chen

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION .......... 1

LEGAL STANDARD .......... 2

ARGUMENT .......... 3

I. PLAINTIFF HAS ESTABLISHED ARTICLE III STANDING .......... 3

II. PLAINTIFF'S CLAIMS ARE TIMELY .......... 5

III. PLAINTIFF SUFFICIENTLY PLEADS HER CLAIMS .......... 7

A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose .......... 7

B. Defendant Intercepted And Disclosed Plaintiff's Confidential Communications .......... 9

C. Defendant Intercepted Plaintiff's Communications In Transit .......... 10

D. Plaintiff Sufficiently Alleges Defendant Aided LinkedIn and Google .......... 11

E. Plaintiff States a Claim For Invasion of Privacy .......... 15

CONCLUSION .......... 17

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Allen v. Shutterfly, Inc.*,
2020 WL 5517172 (N.D. Cal. Sept. 14, 2020) ........ 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2

*Berman v. Freedom Finan. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 6

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) ........ 10

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 10

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ........ 3, 4

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........ 12

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) ........ 8

*Cousin v. Sharp Healthcare*,
681 F.Supp.3d 1117 (S.D. Cal. 2023) ........ 13, 14

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) ........ 6

*Doe v. Meta Platforms, Inc.*,
690 F.Supp.3d 1064 (N.D. Cal. Sept. 7, 2023) ........ 13

*E-Fab, Inc. v. Accountants, Inc. Serv.*,
64 Cal. Rptr. 3d 9 (2007) ........ 5

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (2011) ........ 16

*Fox v. Ethicon End-Surgery, Inc.*,
35 Cal. 4th 797 (2005) .......... 6

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 3, 5, 9

*Garcia v. Build.com, Inc.*,
2023 WL 4535531 (S.D. Cal. July 13, 2023) .......... 3

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. Aug. 28, 2023) .......... 4, 9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 12

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. July 27, 2023) .......... 3

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. July 18, 2022) .......... 16

*Hines v. Wells Fargo Home Mortg., Inc.*,
2015 WL 351818 (E.D. Cal. Jan. 26, 2015) .......... 5

*In re Cell Tower Litig.*,
2012 WL 1903883 (S.D. Cal. 2012) .......... 13

*In re Facebook Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... passim

*In re Meta Pixel Tax Filing Cases*,
724 F.Supp.3d 987 (N.D. Cal. Mar. 25, 2024) .......... 14

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) .......... 5

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 5

*Jones v. Tonal Systems, Inc.*,
751 F.Supp.3d 1025 (S.D. Cal. Sept. 30, 2024) .......... 11

*Khamooshi v. POLITICO LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .......... 4

*Lawrence v. Finicity Corp.*,
716 F. Supp. 3d 851 (E.D. Cal. 2024) .......... 5

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 11

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) ... 10

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 396382 (S.D. Cal. June 12, 2023) ... 4

*Lopez v. Apple, Inc.*
519 F.Supp.3d (N.D. Cal. Feb. 10, 2021) ... 10

*Mikulsky v. Noom, Inc.*
2024 WL 251171 (S.D. Cal. Jan. 2024) ... 4

*Nguyen v. Barnes & Noble, Inc.*,
763 F.3d 1171 (9th Cir. 2014) ... 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ... 6, 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. May 9, 2024) ... 8

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 12, 14

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. Mar. 21, 2024) ... 14

*Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al*,
2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ... 5, 7

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. Sept. 27, 2021) ... 11

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ... 1, 8, 10

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ... 9

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ... 2

*Smith v. Google, LLC*,
735 F.Supp.3d 1188 (N.D. Cal. June 3, 2024) ... 15

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ... 16

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ........ 15

*St. Aubin v. Carbon Health Technologies, Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ........ 10

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ........ 2

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ........ 8

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ........ 8

*Taylor v. ConverseNow Technologies, Inc.*,
2025 WL 2308483 ........ 10

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........ 11

*Tourgeman v. Collins Fin. Servs., Inc.*,
2009 WL 6527758 (S.D. Cal. 2009) ........ 15

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 751 (N.D. Cal. May 24, 2023) ........ 11

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........ 10

*Valley Bank of Nev. v. Superior Court*,
15 Cal.3d 652 (1975) ........ 15

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........ 12

**STATUTES**

18 U.S.C. § 2511(2)(d) ........ 7

Cal. Fin. Code § 4050 ........ 3, 8

Cal. Fin. Code § 4051 ........ 1

Cal. Fin. Code § 4052 ........ 15

Cal. Pen. Code § 631 ........ 11, 13, 14

Cal. Pen. Code § 631(a) ........ 11, 12, 13, 14

Cal. Pen. Code § 631(a)(4) .... 13

**RULES**

Fed. R. Civ. P. 8(a)(2) .... 2

Fed. R. Civ. P. 12(b)(1) .... 2

Fed. R. Civ. P. 12(b)(6) .... 2

**REGULATIONS**

16 C.F.R. § 313.... 1

16 C.F.R. § 313.3.... 3, 8, 15

**OTHER AUTHORITIES**

SB 690 .... 1, 2

# INTRODUCTION

Congress and the California Legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. See 16 C.F.R. § 313; Cal. Fin. Code § 4051*; see also Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the ECPA and CIPA by intercepting and unlawfully disclosing the plaintiffs' personal and financial information). Despite such duties to prevent consumers' private information from disclosure, Defendant Better Home & Finance Holding Company ("Defendant") unlawfully intercepts and discloses the personal and financial information of consumers applying for loans on its website to LinkedIn Corporation and Google LLC, unknown third parties.

Plaintiff is a resident of California who accessed Defendant's website to apply for a home loan. Class Action Complaint ¶¶ 5–6 (ECF No. 1) ("Compl."). Unbeknownst to Plaintiff, the confidential information she provided in connection with her loan application was intercepted by Defendant through its use of the LinkedIn Insight Tag and Google Analytics, and simultaneously disclosed to both LinkedIn and Google. *Id.* This included private information including Plaintiff's loan application status, information related to Plaintiff's property, and Plaintiff's credit score. *Id.* ¶¶ 5–6; Figs. 4–10. Such disclosures were not made to provide Plaintiff with services, but rather, to bombard her with harassing targeted advertising. Such conduct is unlawful under both state and federal law.

Defendant now moves to dismiss Plaintiff's Complaint. *See* Defendant's Motion to Dismiss Plaintiff's Class Action Complaint (ECF No. 17) ("MTD"). Defendant does not deny that it disclosed consumers' information to LinkedIn and Google. Instead, it largely relies on misstatements of both law and fact, none of which support dismissal.

Defendant also attempts to rely on recent legislative efforts to discredit Plaintiff's claims. However, thus far, none of the legislative developments have impacted Plaintiff's claims. California Senate Bill 690 ("SB 690") was effectively a concession that the plain text of the CIPA

applied to conduct like Defendant's here, thus necessitating an exception by wrongdoers to avoid liability. But SB 690 did not become law, it did not pass in the Assembly, and the retroactive provision was removed. Moreover, it is still subject to ongoing review and amendment. As such, the current draft of SB 690 does not apply to this action, SB 690 is not passing anytime soon (if ever), and the ultimate form of SB 690 is completely unknown. The only way through this action will be for Defendant to win on the merits. And the merits are not favorable to Defendant.

For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss in its entirety.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.

**ARGUMENT**

# I. PLAINTIFF HAS ESTABLISHED ARTICLE III STANDING

Defendant argues that Plaintiff lacks standing to assert her claims because she does not have a legally protected privacy interest in the information disclosed by Defendant and because "there is no recognized right to privacy over anonymized data." MTD at 9. That is wrong and misstates the nature of Plaintiff's claims.

Under state and federal law, financial service providers—including Defendant—are prohibited from disclosing nonpublic personal information to third parties. 16 C.F.R. § 313.3; Cal. Fin. Code § 4050, *et seq*. Courts have long recognized consumers who have had their private information disclosed have suffered concrete harms actionable under law. *In re Facebook Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (violations of privacy rights have long been actionable at common law and "encompass[] the individual's control of information concerning his or her person"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–19 (9th Cir. 2020) ("[the harms protected by [the ECPA and CIPA] bear a close relationship to ones that have traditionally been regarded as providing a basis for a lawsuit. . . and one of the several privacy torts historically recognized was unreasonable intrusion upon the seclusion of another.") (internal citations omitted); *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *2 (C.D. Cal. Mar. 2, 2025) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice.") (internal quotations omitted); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1037 (S.D. Cal. July 27, 2023) (finding that "intrusions into privacy can constitute injury in fact"); *Garcia v. Build.com, Inc.*, 2023 WL 4535531, at *3 (S.D. Cal. July 13, 2023) ("Plaintiff responds that a CIPA violation is a violation of privacy rights and is a sufficiently concrete injury-in-fact. The Court agrees.").

Here, Plaintiff does not allege an injury stemming from a bare statutory violation, as Defendant claims. Rather, Plaintiff alleges that she "applied for a home loan" through Defendant's website, where it required her to share her "PII and financial information, including her home address and credit score," as a part of the application process. Compl. ¶ 5. Defendant also requires

consumers to disclose information regarding the type of loan they are applying for (e.g. refinancing or HELOC) and whether their property is their primary residence or an investment property. *Id.* Figures 4-10. However, "[u]nbeknownst to Plaintiff, Defendant disclosed her PII to LinkedIn and Google—including communications that contained Plaintiff's confidential, "nonpublic personal information" as defined by the GLBA and CalFIPA. Neither Defendant nor LinkedIn nor Google procured Plaintiff's prior consent to the sharing of her private and protected information." *Id.* ¶ 6 (cleaned up). Such disclosures were not made to facilitate her loan application, but rather, were made for the purposes of targeted advertising without Plaintiff's consent. *Id.* ¶ 92. Plaintiff suffered a concrete injury from this disclosure, as it was an egregious violation of Plaintiff's privacy and Defendant's legal duties to protect such information from disclosure. *Id.* ¶ 99; *see Campbell*, 951 F.3d at 1117 (finding a legally cognizable privacy injury where plaintiffs alleged "Facebook identifies and collects the contents of users' individual private messages.").

The authority relied upon by Defendant is inapposite, as none of those cases concern the disclosure of protected information. *See, e.g., Popa v. Microsoft Corp.,* 153 F.4th 784, 791 (9th Cir. 2025) (finding no standing where the plaintiff "identifies no embarrassing, invasive, or otherwise private information collected"); *Lightoller v. Jetblue Airways Corp*., 2023 WL 396382, at *3 (S.D. Cal. June 12, 2023) (same); *Khamooshi v. POLITICO LLC*, 2025 WL 2822879, at *3 (N.D. Cal. Oct. 2, 2025) (same).

Defendant's remaining argument that its disclosure of information is done in an anonymized manner is belied by Plaintiff's allegations. *See* Compl. ¶¶ 44-48, 74-84, 92. Defendant's reliance on *Mikulsky v. Noom, Inc.* misses that mark, as that case concerned different technology that was incapable of identifying the users that visited the defendant's website. 2024 WL 251171 (S.D. Cal. Jan. 2024) ("Plaintiff's activity on Defendant's website was basically anonymous"). That stands in stark contrast to the present matter, where the purpose of the tracking technology utilized by Defendant is to identify consumers for targeted advertising purposes. *See* Compl. ¶¶ 6, 44-48, 74-84, 92; *see also Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. Aug. 28, 2023) ("This Court agrees that a [Facebook ID] can constitute PII where it

leads to a Facebook page that discloses personal and identifying information about the consumer.”).

## II. PLAINTIFF’S CLAIMS ARE TIMELY

Defendant argues that Plaintiff’s claims are barred by the statute of limitations because she cannot invoke the delayed discovery doctrine. MTD at 10. That is wrong.

As a threshold matter, questions concerning the delayed discovery doctrine raise factual issues that are not appropriately resolved at the pleading stage. See *Saedi v. SPD Swiss Precision Diagnostics GmbH d/b/a Clearblue et al*, 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025) (Holding that “the question when a plaintiff actually discovered or reasonably should have discovered the facts for purposes of the delayed discover rule is a question of fact unless the evidence can support only one reasonable conclusion.”) (quoting *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023)) (internal quotations omitted); *E-Fab, Inc. v. Accountants, Inc. Serv*., 64 Cal. Rptr. 3d 9, 17 (2007); *Lawrence v. Finicity Corp.*, 716 F. Supp. 3d 851, 892 (E.D. Cal. 2024).

Moreover, Defendant may only raise a statute of limitations argument on a motion to dismiss “if the running of the statute is apparent on the face of the complaint[,]” which is not the case here. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see also Hines v. Wells Fargo Home Mortg., Inc.*, 2015 WL 351818, at *2 (E.D. Cal. Jan. 26, 2015) (a court may only grant a motion to dismiss if “it is clear from the face of the complaint that the statute has run and that no tolling is possible”); *Gaige*, 2025 WL 559719, at *3 (holding that “dismissal of Plaintiff’s claims as time-barred would be premature,” where “Plaintiff allege[d] that he did not know and had no way of knowing that his personally identifiable information … was intercepted and unlawfully disclosed to Meta … because Defendant kept this secret”); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (“Plaintiffs’ delayed discovery argument poses another barrier to dismissal where Defendants secretly incorporated Meta Pixel into their Web Properties”) (internal quotations omitted).

Plaintiff has adequately alleged facts to support the application of the delayed discovery rule. To properly assert the delayed discovery doctrine, Plaintiff must "specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon End-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (internal citations omitted). Plaintiff has adequately alleged both elements. *See* Compl. ¶¶ 100-108 (Plaintiff only became aware of Defendant's conduct shortly before filing of the initial complaint in this matter, and was unable to have made an earlier discovery due to the fact that the tracking technologies are entirely invisible to website visitors). These allegations are sufficient to invoke the discovery rule. *See Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024) (finding that plaintiff's clear statement that "the earliest" plaintiff could have known of her injury was shortly before filing was enough to invoke the discovery rule given defendant's use of highly technical software).

Defendant next argues that the privacy policy on its website was sufficient to notify Plaintiff of the disclosures at issue. MTD at 12. Tellingly, Defendant does not provide the Court with any information to establish that Plaintiff was provided constructive notice of its privacy policy. That is intentional. California law requires constructive notice for consumers to be bound by contractual terms. *See Allen v. Shutterfly, Inc.*, 2020 WL 5517172, at *6 (N.D. Cal. Sept. 14, 2020); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023) ("To form a contract under California…law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent."). For internet contracts, courts distinguish between "clickwrap" agreements and "browsewrap" agreements. Clickwrap agreements "present[] users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." *Berman v. Freedom Finan. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Conversely, browsewrap agreements "offer terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." *Id.* Defendant's privacy policy is a browsewrap agreement, which Courts consistently find to be unenforceable because they fail to provide constructive notice to consumers. *Oberstein*,

60 F.4th at 513 ("Courts are generally reluctant to enforce [browsewrap] agreements because they often leave users unaware that contractual terms were even offered[.]").

Even if Defendant had a copy of its privacy policy on its website, Defendant fails to establish how the location and display of its privacy policy gives consumers constructive notice of its existence. It does not. Defendant cannot claim that consumers assented to the terms of its practices when they were not provided constructive notice of them. *Nguyen*, 763 F.3d at 1178-79. Accordingly, the actual terms of Defendant's policies are irrelevant to the Court's analysis because Defendant cannot establish that consumers, like Plaintiff, were provided with constructive notice of its existence. *Oberstein*, 60 F.4th at 513. In fact, such arguments are directly contradicted by Plaintiff's allegations. Compl. ¶ 29 ("Plaintiff's and Class Members' 'nonpublic personal information' is confidential, under both federal and California law. Nonetheless, Defendant disclosed such information to LinkedIn and Google, and neither Defendant, LinkedIn, nor Google procured Plaintiff's and Class Members' consent prior to such interceptions.").

Defendant's argument regarding Plaintiff's receipt of targeted advertising fares no better. Plaintiff was unaware as to *why* she was receiving such targeted advertising or that the reason she was receiving targeted advertisements was because Defendant disclosed her legally protected information until after she contacted undersigned counsel. Defendant's reliance on *Saedi v. SPD Swiss Precision Diagnostics GmbH* is unavailing because there, the court found that the plaintiff had constructive notice of the defendant's privacy policy. 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025). Defendant has not established that Plaintiff had constructive notice of its privacy practices here because Defendant offers no such evidence.

## III. PLAINTIFF SUFFICIENTLY PLEADS HER CLAIMS

### A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant argues the consent exemption to the ECPA applies because Defendant was a party to the communication. MTD at 14. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.

§ 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc*., 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted).

*Shah v. Capital One Financial Corporation*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) is instructive. In *Shah*, the plaintiff alleged that the defendant installed third party tracking software, including tracking software from Google, that intercepted private information related to his account information. *Id.* at 1041. There, the court denied the defendant's motion to dismiss, holding the defendant's actions of intercepting and disclosing communications without consent were allegedly tortious. *Id.* at 1053. Here, the same result is warranted where Plaintiff alleges Defendant disclosed her personally identifiable information and sensitive financial information in violation of the Gramm-Leach-Bliley Act (the "GLBA") (16 C.F.R. § 313.3) and the California Financial Information Privacy Act ("CalFIPA") (Cal. Fin. Code § 4050, *et seq*.). Compl. ¶¶ 20–30.

Defendant's argument that it had a financial motivation for disclosing Plaintiff's protected information (as opposed to a criminal motivation) has been repeatedly rejected by courts within this Circuit and across the country. *See Shah*, 768 F. Supp. 3d at 1053 ("However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exception does not apply."); *R.C. v. Walgreen Co.,* 733 F. Supp. 3d 876, 901 (C.D. Cal. May 9, 2024) ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law."); *Stein v. Edward-Elmhurst Health,* 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of a financial motivation (on the one hand) and a criminal or tortious motivation (on the other hand) are not mutually exclusive."); *Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369, 381–82 (S.D.N.Y. 2024) (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally

disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain."). This Court should do the same.

**B. Defendant Intercepted And Disclosed Plaintiff's Confidential Communications**

Defendant argues that Plaintiff's claims under the Wiretap Act and CIPA Section 632 fail because she does not allege the disclosure of "identifying information." MTD at 16. That is wrong.

As discussed *supra*, the LinkedIn tracking technology utilized by Defendant is "used to link the data collected to the user's LinkedIn profile." Compl. ¶ 45. Similarly, the Google tracking technology utilized by Defendant captures several pieces of PII, including a consumer's IP address, User ID, and browser-fingerprint. *Id.* ¶¶ 75-82. Due to the vast quantity of data maintained by Google, it is able to determine a consumer's identity, including Plaintiff's. *Id.* During the time Plaintiff used Defendant's website, she maintained accounts with LinkedIn and Google, both of which included her full name. *Id.* ¶ 6. By disclosing this PII to LinkedIn and Google, Defendant enabled them to match the intercepted data to Plaintiff's identity. Compl. ¶ 92 ("The information shared by Defendant allows LinkedIn and Google to know the identities of specific individuals as well as information related to the financial services they are receiving."); *id.* ¶ 93 ("The information disclosed by Defendant was also accompanied by the lms_ads and li_sugr cookies, whereby LinkedIn could connect the disclosed PII and financial information with the applicant's LinkedIn profile."). That is sufficient. *Ghanaat*, 689 F.Supp.3d at 720; *Gaige*, 2025 WL 559719, at *4 ("The Court finds that Plaintiff has sufficiently alleged that the IP address, in conjunction with the other specific user information that permitted identification of him, was personally identifiable."); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *5-6 (N.D. Cal. Oct. 21, 2024) (holding that "Plaintiffs plausibly allege [in a motion to dismiss] that the collection of their IP addresses through the Trackers allows the third parties to obtain personally identifying, non-anonymized information, and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising") (internal quotation marks

and citation omitted). Finally, Defendant's reliance on *Lopez v. Apple, Inc.* is inapposite as it concerned tracking technology unable to identify users. 519 F.Supp.3d 683, 679 (N.D. Cal. Feb. 10, 2021) (allegations related to recording through Apple's Siri software incapable of identifying users).

**C. Defendant Intercepted Plaintiff's Communications In Transit**

Defendant argues that "plaintiff does not allege facts establishing real-time interception." MTD at 18. This mischaracterizes Plaintiff's allegations. Under the ECPA and CIPA, "interception[]" of contents "must occur during . . . transmission, not when the communication is in electronic storage." *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023). On a motion to dismiss, Plaintiff's allegations that Defendant intercepts communications in real-time are to be taken as true. *Id.* ("Defendant argues that Plaintiff's allegations are conclusory and require more factual support. Not so."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same); *Taylor*, 2025 WL 2308483, at *5 (same); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (same).

Defendant argues that Plaintiff's allegations confirm that the interception did not occur "in real time" because Plaintiff uses the word "disclosed" in describing how the alleged interception occurs. MTD at 18. However, the use of words like "disclosed" in this manner coexists with the "in real-time" requirement, as the "content" of the communication cannot be transmitted until after it is communicated. Plaintiff goes to great lengths to explain how the LinkedIn Insight Tag and Google tracking software are used to intercept communications in real time. Compl. ¶¶ 35-86. The only plausible inference from Plaintiff's choice of words is that interception occurred "during transmission." Courts have found similar allegations to satisfy the "in transit" requirement. *See Licea*, 669 F. Supp. 3d at 946; *St. Aubin v. Carbon Health Technologies, Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 1078–79 (C.D. Cal. 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs[.]"); *Shah*, 768 F.Supp.3d at 1053-54 (same). Tellingly, Defendant relies solely on cases that concern different technologies, rather than the

advertising technology at issue here. *See Jones v. Tonal Systems, Inc.*, 751 F.Supp.3d 1025, 1029 (S.D. Cal. Sept. 30, 2024) (allegations related to chat feature on website); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 754 (N.D. Cal. May 24, 2023) (same); *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *6-7 (N.D. Cal. Apr. 17, 2025) (allegations related to session replay software).

Defendant's remaining argument that "the later use of collected data does not convert lawful collection into unlawful interception" merely because Google and LinkedIn further "process" the information intercepted fails for the same reasons. MTD at 18. While Google and LinkedIn may continue to utilize the data they intercept, that does not mean that they did not read and learn the meaning of the communications intercepted while they were in transit.

### D. Plaintiff Sufficiently Alleges Defendant Aided LinkedIn and Google

Defendant argues that Plaintiff's CIPA Section 631 claim fails because Defendant "was a party to the communications," and because LinkedIn and Google were acting as extensions of Defendant during these communications. MTD at 18-19. That is wrong.

The second prong of Section 631(a) prohibits parties from: "willfully and without consent of all parties to the communication, or in any unauthorized manner, reading, or attempting to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Pen. Code § 631(a).

Accordingly, the second prong of Section 631 has three independent requirements: (1) lack of consent of all parties to a communication; (2) eavesdropping by a third-party nonparticipant; and (3) interception of a communication while in transit. *See, e.g.*, *Valenzuela v. Keurig Green Mtn., Inc.*, 674 F. Supp. 3d 751, 756–58 (N.D. Cal. 2023); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1081–84 (C.D. Cal. 2023). Section 631(a) shields parties to a communication from liability. *See, e.g.*, *Valenzuela*, 674 F. Supp. 3d at 757; *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606–07 (9th Cir. 2020); *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 518 (C.D. Cal. Sept. 27, 2021). However, "a vendor hired by a website may act as a third-party eavesdropper

if they secretly record conversations in real time." *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024). In determining the party status of a website vendor, California courts look to see if the "usage of third-party recordation software can be considered equivalent to having hired a third-party in the first place for purposes of a Section 631(a) analysis." *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022). Courts will pay particular attention to whether the accused eavesdropper intercepted communications for self-use or, comparatively, simply recorded communications for future playback on behalf of one of the parties. *Compare Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("Facebook acquired user communications by causing their browsers to transmit parallel signals . . . that means of interception should not have stripped Facebook of its third-party status."), *with Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832–33 (N.D. Cal. 2021) ("[T]here are no allegations here that FullStory intercepted and used the data itself."). Finding of wrongdoing may require an examination into "whether or not the alleged third-party software provider aggregates or otherwise processes the recorded information, which might suggest that the software vendor independently uses the gathered data in some way." *Williams*, 2022 WL 17869275, at *3.

Here, LinkedIn and Google are more than mere tools utilized for Defendant's sole benefit. Indeed, the nature of their advertising tools allows LinkedIn and Google to utilize the information intercepted from Defendant's website for their own independent purposes. Compl. ¶ 38 ("The personal information and communications obtained by LinkedIn are used to fuel various services offered via LinkedIn's Marketing Solutions including Ad Targeting, Matched Audiences, Audience Expansion, Predictive Audience, and LinkedIn Audience Network."); *id.* ¶ 74 ("In addition to using the data collected through Google Analytics to provide marketing and analytics services, Google also uses the data collected through Google Analytics to improve its ad targeting capabilities and data points on users."). Such behavior is indicative of the impermissible self-serving behavior proscribed by California courts. *See In re Facebook*, 956 F.3d at 608 ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion, allowing the

exception to swallow the rule."). Defendant's reliance on LinkedIn's advertising agreement cannot negate these allegations, especially at the pleading stage. *Doe v. Meta Platforms, Inc.*, 690 F.Supp.3d 1064, 1076 (N.D. Cal. Sept. 7, 2023) ("What Meta's true intent is, what steps it actually took to prevent receipt of health information, the efficacy of its filtering tools, and the technological feasibility of implementing other measures to prevent the transfer of health information, all turn on disputed questions of fact that need development on a full evidentiary record.").

Defendant also argues that Plaintiff's claim under CIPA Section 631 fails because she "has not and cannot plead the requisite *mens rea* for aiding and abetting." MTD at 21. But CIPA Section 631 does not contain an abetting requirement. Prong four of CIPA § 631(a) provides for liability when a person, "by means of any machine, instrument, contrivance, or in any other manner,…*aids, agrees with, employs, or conspires with* any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section." (emphasis added). Notably, missing from the plain statutory text is of Section 631(a)(4) is *any* reference to an "abetting" requirement. Had the legislature intended for "aids" to mean "aids and abets," it would have written the latter term instead of the former. *Cousin v. Sharp Healthcare*, 681 F.Supp.3d 1117, 1129-30 (S.D. Cal. 2023) ("Defendant's contention that 'aids' means 'aiding and abetting' ignores the 'agrees with, employs, or conspires with' language of the clause."); *In re Cell Tower Litig.*, 2012 WL 1903883, at *2 (S.D. Cal. 2012) ("The first step in analyzing a statute is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.") (citations omitted).

The legislature's use of the terms "aids," "agrees with," and "employs" indicates that CIPA § 631(a) was mean to apply to a much broader swath of non-criminal conduct, regardless of "specific intent." *See Cousin*, 681 F.Supp.3d at 1129-30. To that end, "aid" should be interpreted as "to give assistance,"[1] "agrees with" as "to concur in opinion or purpose,"[2] and "employs" as "to

[1] *Aid*, Merriam-Webster Dictionary. http://www.merriam-webster.com/dictionary/aid.

[2] *Agree*, Black's Law Dictionary (11th ed. 2019).

make use of" or "to hire."[3] In short, a defendant violates prong four where it simply enables another's wrongdoing. *See Revitch*, 2019 WL 5485330, at *2 ("[T]he complaint adequately alleges that [defendant] violated section 631 by enabling [a third party's] wrongdoing.").

Here, Plaintiff alleges that Defendant intentionally enabled LinkedIn's and Google's wrongdoing. *See, e.g.*, Compl. ¶ 87 ("Pursuant to agreements with LinkedIn and Google, Defendant voluntarily embedded the Tracking Technologies on the Website. Through the Tracking Technologies, Defendant unlawfully intercepted and disclosed protected and confidential information to LinkedIn and Google without its customers' consent."); *id*. ¶ 92 ("Defendant shares its applicants' PII and financial information (specifically, the applicant's address, property information, loan application type, and credit score) with its advertising partners, including LinkedIn and Google. The information shared by Defendant allows LinkedIn and Google to know the identities of specific individuals as well as information related to the financial services they are receiving. This allows these companies, including Defendant, to profit from this information for targeted advertising purposes."); *id.* ¶ 150 ("Plaintiff and members of the California Subclass did not provide their prior consent to LinkedIn's or Google's intentional access, interception, reading, learning, recording, collection, and usage of Plaintiff's and California Subclass members' electronic communications. Nor did Plaintiff and California Subclass members provide their prior consent to Defendant aiding, agreeing with, employing, permitting, or otherwise enabling LinkedIn's or Google's conduct."). These allegations are sufficient to plead Defendant's violation of prong four of CIPA § 631(a). *See Cousin*, 681 F.Supp.3d at 1129-30.

The authority relied upon by Defendant is inapplicable because it concerns different tracking technology than what is at issue here. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104 (S.D. Cal. Mar. 21, 2024) (case concerning session replay technology). As it concerns the pixel technology at issue here, California courts are in accord that this technology is specifically designed to intercept communications for advertising purposes. *See In re Meta Pixel Tax Filing Cases,* 724 F.Supp.3d 987, 1002-03 (N.D. Cal. Mar. 25, 2024) (finding allegations that Meta

[3] *Employ*, Black's Law Dictionary (11th ed. 2019).

intended to intercept confidential tax filing information were sufficient); *Smith v. Google, LLC*, 735 F.Supp.3d 1188, 1198 (N.D. Cal. June 3, 2024) (same). This Court should limit its analysis to the plain text of the statute.

**E. Plaintiff States a Claim for Invasion of Privacy**

To state a claim for invasion of privacy under the California Constitution, a plaintiff need only plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted).

*First*, Plaintiff alleges a legally protected privacy interest in her financial information, such as her credit score. Compl. ¶¶ 2-3, 20-30, 92. Case law supports this determination. *See, e.g.*, *Smith v. YETI Coolers, LLC,* 754 F. Supp. 3d 933, 944–45 (N.D. Cal. 2024) ("sensitive financial information [falls into the category of legally protected information]"); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 (S.D. Cal. 2009) ("There can be little question that [p]laintiff has a legally protected privacy interest in his private financial information."); *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d 652, 656 (1975) ("[W]e may safely assume that the right of privacy extends to one's confidential financial affairs").

*Second*, Plaintiff's expectation in the privacy of her financial information is reasonable. Indeed, Plaintiff's privacy interest arises from Defendant's disclosures of sensitive and confidential financial information and PII including: (1) her identity, (2) address, (3) credit score, (4) type of loan applied for, (5) device information, and (6) property information. See Compl. ¶¶ 5, 92. This is precisely the type of information people possess a reasonable expectation of privacy over, which is bolstered by its protected status under both the GLBA and CalFIPA. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 et seq. (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer).

*Third*, Defendant's disclosure constituted an "egregious breach of privacy." Determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as

the likelihood of serious harm to the victim, the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606 (9th Cir. 2020) ("The ultimate question of whether [defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (same). A true holistic consideration in this case should lead to the determination that Plaintiff's data constitutes an egregious breach. Defendant relies on numerous cases that concern routine commercial behavior that is not legally protected (*see Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of Lamps Plus obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior.")) or cases that contain insufficient information as to what was allegedly disclosed. *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1091 (N.D. Cal. July 18, 2022) ("The lack of details as to how Google could attain the intimate information renders implausible what might otherwise be the strongest allegation of highly offensive conduct."). Here, contemporary social norms are far more likely to render the disclosure of loan application status and credit score information, for instance, as being highly offensive. *See* Compl. ¶ 99 ("Such disclosures are an invasion of privacy.").

Defendant's case law is unpersuasive. Here, Defendant's disclosure goes beyond "routine commercial behavior" because surreptitiously Defendant shared sensitive and confidential information with LinkedIn and Google while Plaintiff was applying for financial products on Defendant's website. The Ninth Circuit explained the inquiry into whether an intrusion is highly intrusive is a holistic one, often not fit to be resolved at the pleadings stage. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (explaining open factual questions pertaining to the degree of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social

norms render the intrusion inoffensive" should not be resolved in a motion to dismiss). Dismissal is therefore inappropriate.

**CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff respectfully seeks leave to amend the Complaint.

Dated: November 7, 2025

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*