**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
KYLA NÚÑEZ (Bar No. CA 329484)
knunez@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 916.552.2300
Facsimile: 916.552.2323

MATTHEW F. BRUNO (*Pro Hac Vice*)
mbruno@manatt.com
7 Times Square
New York, New York 10036
Telephone: 212.790.2701

*Attorneys for Defendant*
Better Home & Finance Holding Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELENA LEANOS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER HOME & FINANCE HOLDING COMPANY,<br><br>Defendant. | Case No.: 3:25-CV-07893-EMC<br><br>Assigned to Hon. Edward Chen<br><br>**DEFENDANT BETTER HOME & FINANCE HOLDING COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>Hearing Date: February 12, 2026<br>Time: 1:30 PM<br>Courtroom: 5<br><br>Complaint Filed: September 16, 2025<br>Trial Date: None Set |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Plaintiff Did Not Act with Reasonable Diligence Required to Justify Delayed Discovery ..... 2
B. Plaintiff Cannot Establish Article III Standing ..... 4
C. Plaintiff Fails to Adequately Allege Interception of Information "In Transit" ..... 6
D. Plaintiff's ECPA Claim Fails Because She Has Not Alleged that Better Had a Criminal or Tortious Purpose ..... 9
E. Plaintiff's Response Does Not Save Her Aiding and Abetting Theory ..... 10
F. Plaintiff's Response Does Not Save Her Invasion of Privacy Claim ..... 12
III. CONCLUSION ..... 14

## TABLE OF AUTHORITIES

Page

### CASES

*Ardente, Inc. v. Shanley*,
No. C 07-4479 MHP, 2010 WL 546485 (N.D. Cal. Feb. 10, 2010) .......... 2, 13

*Bittner v. United States*,
598 U.S. 85 (2023) .......... 7

*Bradshaw, et al. v. Lowe's Cos., Inc., et al.*,
No. 25CV0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 5

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023) .......... 11

*DellaSala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .......... 14

*Doe v. Eating Recovery Ctr. LLC*,
--- F.Supp.3d ---, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) .......... 6, 7, 8

*Doe v. FullStory, Inc.*,
712 F. Supp. 3d 1244 (N.D. Cal. 2024) .......... 2

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......... 9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. Sept. 7, 2023) .......... 10, 12

*Doe v. Ritz-Carlton Hotel Co., L.L.C.*,
No. 23-CV-05218-AMO, 2024 WL 2059087 (N.D. Cal. May 7, 2024) .......... 2, 13

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) .......... 5

*Gillean v. Better Home and Fin. Holding Co.*,
5:25-cv-01573-SB-MAR (Blumenfeld, J., filed June 24, 2025) .......... 1, 2, 5, 8

*Harrott v. Cnty. of Kings*,
25 Cal. 4th 1138 (2001) .......... 7

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) .......... 8

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d at 516 .......... 9

*In re Google Inc. Gmail Litig.*,
2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) .......... 10

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) .......... 11, 12

*Javier v. Assurance IQ, LLC*,
649 F.Supp.3d 891 (N.D. Cal. 2023) .......... 2, 3

*L.B. v. LinkedIn Corp.,* No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) .......... 6

*Licea v. Old Navy, LLC.*,
669 F. Supp. 3d 941 (C.D. Cal. 2023) .......... 6

*Oberstein*,
60 F.4th 505, 514 (9th Cir. 2025) .......... 3

*Oganyan v. Biolife Plasma Servs. L.P.*,
No. 1:25-CV-00099-KES-SKO, 2025 WL 2979619 (E.D. Cal. Oct. 22, 2025) .......... 4, 13

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) .......... 1, 4, 5, 13

*Price v. Converse, Inc.*,
No. 2:24-cv-08091-FLA-E, 2025 WL 3295119 (C.D. Cal. Sept. 30, 2025) .......... 4, 5

*R.C. v. Walgreen Co.*
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 9, 10

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 11

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) .......... 4

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-CV-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) .......... 3

*Shav v. Capital One Financial Corporation*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) .......... 9

*Smith v. Google, LLC*,
735 F. Supp. 3d 1188 (N.D. Cal. 2024) .......... 11, 12

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 12, 13

*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) .......... 9

*Torres v. Prudential Fin.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .......... 7

*Tourgeman v. Collins Fin. Servs., Inc.*,
No. 08-CV-01392 JLS NLS, 2009 WL 6527758 (S.D. Cal. Nov. 23, 2009) .......... 12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......... 5

*Valenzuela v. Nationwide Mutual Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 6

*Valley Bank of Nevada v. Superior Ct.*,
15 Cal. 3d 652, 542 P.2d 977 (1975) .......... 12

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......... 2

**STATUTES**

Cal. Penal Code § 631 .......... 6, 8, 11

Cal. Penal Code § 631(a) .......... 7

Cal. Penal Code § 631(a)(4) .......... 10, 12

Cal. Penal Code § 632 .......... 7

California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100(a)-(b) .......... 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Elena Leanos's arguments in opposition do not save her materially flawed allegations. The Complaint's core causes of action are clearly time-barred and Plaintiff's short attempt to invoke the discovery rule is not credible. Further, recent precedent from the Ninth Circuit in *Popa v. Microsoft* and the steady march of district court orders following that decision confirm that Plaintiff lacks Article III standing because the information allegedly disclosed – here, a Miami condominium building address and a credit score range – is not private. Dismissal is further warranted as to one or more individual claims for various reasons, including that (i) Plaintiff's allegations about "interception in transit" are vague and contradicting and, at any rate, should be afforded a narrow interpretation under the rule of lenity; (ii) Plaintiff has not alleged that Better had a criminal or tortious purpose; (iii) Plaintiff does not rebut Better's showing that the alleged third party services were mere tools of Better; and (iv) Plaintiff does not explain how she has a legally protected privacy interest in the sparse information allegedly disclosed.

Dismissal is warranted for any one of these many reasons.[1] The statute of limitations and standing deficiencies are apparent. Beyond this, application of the rule of lenity to Plaintiff's vague allegations under CIPA – a 1967 criminal statute about phone communications – to everyday, commercial website contexts would follow recent decisions in providing commonsense and much-needed clarity on these matters. For these reasons, and the reasons set forth in Better's opening brief, dismissal with prejudice is warranted.

[1] As further context for Better's request for dismissal, it is worth noting counsel's apparent forum-shopping strategy of filing a new complaint in this District after voluntarily dismissing a nearly identical complaint in the Central District of California following Defendant Better Home & Finance Holding Company's ("Better") dismissal motion in that matter. *See Gillean v. Better Home and Fin. Holding Co.,* 5:25-cv-01573-SB-MAR (Blumenfeld, J., filed June 24, 2025); *see also* ECF 15 (Notice of Pendency of Other Action or Proceeding). The *Gillean* action was voluntarily dismissed on September 10, 2025, following Better's filing of a Motion to Dismiss and just weeks after the same judge issued a decision that was unfavorable to Gillean. *See infra* n.7. The timing and circumstances strongly suggest that Plaintiff's counsel have engaged in improper forum shopping in search of a more favorable outcome.

## II. ARGUMENT

### A. **Plaintiff Did Not Act with Reasonable Diligence Required to Justify Delayed Discovery.**

Plaintiff does not dispute that her claims are untimely and has abandoned her theory of fraudulent concealment.[2] Instead, her Opposition confirms that she relies exclusively upon the delayed discovery rule to revive her stale, three-year-old claims. (Opp. at 5.) She does so, however, without any meaningful effort to explain how the Complaint's boilerplate allegations (*see* Comp. ¶¶ 100-08) come close to satisfying the rule's application. Because they do not. *See, e.g.*, *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 901-04 (N.D. Cal. 2023); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010). Better already highlighted, point-by-point, the Complaint's factual shortcomings regarding the discovery rule. (*See* Mot. at 11-12.) Plaintiff's Opposition avoids these points entirely.

These pleading shortcomings are not saved by the decision in *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255–56 (N.D. Cal. 2024), which Plaintiff relies solely upon for support. There, the court denied the defendant's statute of limitations arguments, holding that the complaint demonstrated "reasonable diligence" since, among other things, the privacy policy at issue explicitly indicated that the type of personal and healthcare information at issue in the complaint would *not* be shared with third parties (which the plaintiff claimed was not true) and therefore could not form a basis for precluding application of the discovery rule. *Id.* That simply is not the case here. Better's Privacy Policy explicitly disclosed the use of the third-party tracking technologies at issue in the Complaint. (ECF No. 18, Reilly Decl., Ex. C, Better Privacy Policy.) Plaintiff's self-serving claim that "[t]he earliest that Plaintiff or Class Members, acting with due diligence, could have reasonably discovered Defendant's conduct would have been shortly before

[2] In her Opposition, Plaintiff does not address Better's arguments challenging Plaintiff's attempt to invoke tolling due to fraudulent concealment. (*Compare* Mot. at 12-13 *with* Opp. at 5-7.) Plaintiff's silence concedes this argument. *Ardente, Inc. v. Shanley*, No. C 07-4479 MHP, 2010 WL 546485, at *7 (N.D. Cal. Feb. 10, 2010) ("Plaintiff does not respond to this argument and therefore concedes it."); *Doe v. Ritz-Carlton Hotel Co., L.L.C.*, No. 23-CV-05218-AMO, 2024 WL 2059087, at *2 (N.D. Cal. May 7, 2024) ("Plaintiffs do not contest this assertion, thus conceding the point.")

the filing of the Plaintiff's complaint in this matter," (Compl. ¶ 107), is also not credible, as an identical lawsuit against Better was filed in June 2025 – challenging the same purported "Tracking Technologies" and advancing the same wiretapping theories – based on acts that took place in July 2024. *See Gillean*, No. 5:25-cv-01573-SB-MAR, ECF No. 1, at ¶ 5.[3]

In an effort to avoid Better's Privacy Policy (which put Plaintiff on constructive notice), Plaintiff advances a new theory – for the first time – that the Privacy Policy is somehow an unenforceable "browsewrap agreement." (Opp. at 6-7.) This argument fails for any number of reasons. To begin, constructive notice does not require an enforceable contract. It requires clear and conspicuous notice and an opportunity to review, which Better provided via its Privacy Policy.[4] Also, nowhere in her Opposition does Plaintiff cite any factual allegations or other evidence to support her characterization of Better's Privacy Policy as a "browsewrap agreement" (or even an "agreement" of any kind). (*Id.*) Neither the Complaint nor the Opposition explain how Better's Privacy Policy constitutes a browsewrap agreement. In fact, the Complaint avoids any mention of Better's Privacy Policy at all. That is for good reason: it defeats her claims. Of course, Plaintiff's artful pleading and avoidance of any mention of Better's Privacy Policy hardly demonstrate any argument of "reasonable diligence" and counsel against the discovery rule's application. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 902 (N.D. Cal. 2023).

That aside, Plaintiff's general discussion regarding the enforceability of clickwrap and browsewrap agreements, (Opp. at 6-7), does not change the fact that Plaintiff was placed on constructive notice by virtue of Better's Privacy Policy. In *Oberstein*, for example, the Ninth Circuit held, as a matter of law, that the plaintiffs had constructive notice of the terms of the arbitration clause at issue, regardless of whether the agreement was labeled as browsewrap or clickwrap. 60 F.4th 505, 514 (9th Cir. 2025). Indeed, similar decisions have been held with respect to browsewrap agreements. *See Saedi v. SPD Swiss Precision Diagnostics GmbH, No.*

---

[3] Plaintiff and Gillean were represented by the same counsel.

[4] California law explicitly upholds website privacy policies as the required method to provide website visitors with all disclosures about the website owner's data collection, use, and sharing practices and how visitors can exercise their privacy rights. *See, e.g.,* California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100(a)-(b); 130(a)(1)(5).

2:24-CV-06525-WLH-E, 2025 WL 1141168, at *9 (C.D. Cal. Feb. 27, 2025) (finding defendant's privacy policy constituted sufficient notice of cookie use). As such, regardless of Plaintiff's characterization of Better's Privacy Policy, the outcome remains the same: Plaintiff was placed on constructive notice, which defeats any attempt to avail herself of the discovery rule.

At bottom, equitable principles like the discovery rule are not intended to reward the inattentive plaintiff that sat on her rights for three years. Plaintiff offers no argument, legally or factually, to the contrary and, for this reason alone, dismissal with prejudice is warranted.

### B. **<u>Plaintiff Cannot Establish Article III Standing</u>.**

Challenged with identifying a clear, identifiable, Article III injury, Plaintiff repeats the same conclusory allegations that Better identified as insufficient for establishing standing at the outset. (*See* Opp. at 3-5.) But Plaintiff still has not identified any private information that was disclosed to Better and therefore has not demonstrated a protectable privacy interest based on the nature of the information at issue. On the contrary, the information at issue involves an address and credit score range, which were voluntarily entered into field and text boxes on the Website. (Compl. ¶¶ 5, 89-92; Figs. 2-15.) Indeed, the figures in the Complaint clearly establish that the only information that may have been disclosed involved (i) an address of a Miami, Florida condominium building (Figs. 7, 8, and 11) that was used as an investment property (Figs. 9 and 10), and (ii) a credit score range (Figs. 13 and 14). Plaintiff cites no authority to support her claim that this information is the type of private and protectible information that confers standing in a privacy claim. Because it is not.

In only the few months since the Ninth Circuit's decision in *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) – briefed extensively in Better's opening brief – district courts have continued to dismiss similar CIPA claims for lack of Article III standing, where, as the case is here, the information is not private. *See Oganyan v. Biolife Plasma Servs. L.P.,* No. 1:25-CV-00099-KES-SKO, 2025 WL 2979619, at *2 (E.D. Cal. Oct. 22, 2025) (following *Popa* and dismissing CIPA claims for lack of standing based on alleged disclosure of email addresses and IP addresses); *Price v. Converse, Inc.*, No. 2:24-cv-08091-FLA-E, 2025 WL 3295119, at *1-3

(C.D. Cal. Sept. 30, 2025) (following *Popa* and dismissing CIPA complaint for lack of standing, because the alleged data collection via "device fingerprinting" did not constitute the type of "highly offensive" invasion of privacy recognized by courts under Article III and thus the allegations failed to show any "concrete injury"); *Rodriguez v. Culligan Int'l Co.,* No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *5 (S.D. Cal. Nov. 3, 2025) (following *Popa* and dismissing CIPA complaint based on allegations of collecting IP address, geolocation, email address, and embedded social media identities); *Bradshaw, et al. v. Lowe's Cos., Inc., et al*., No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *4-6 (S.D. Cal. Nov. 12, 2025) (granting motion to dismiss in part due to lack of standing over CIPA allegations).

Plaintiff's reliance upon *Ghanaat v. Numerade Labs* further supports dismissal here and underscores the Complaint's pleading deficiencies. (Opp. at 4-5.) First, *Ghanatt* was issued several years ago and well before the Ninth Circuit's clarifying opinion in *Popa*. Moreover, while the *Ghanaat* court acknowledged that a Facebook ID *may* constitute personally identifiable information ("PII") (such as if it leads to a Facebook page that discloses PII about the consumer), the court granted dismissal of the complaint since the plaintiffs "do not allege their Facebook pages contain any personal information, such as their names or email addresses." 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). The same holds true here.

Plaintiff makes no effort to explain how the information allegedly disclosed is her private information. It is not the kind of personal health-related or financial information on which *Popa* and many other courts have focused. Indeed, such an argument strains credulity because identical information (including the same Miami address and general credit score range) was previously identified by another plaintiff. *Gillean*, No. 5:25-cv-01573-SB-MAR, ECF No. 1, at ¶ 90 Figs. 7, 14. And, like *Ghanatt*, Plaintiff does not (and cannot) claim the disclosure of an address and general credit score range led to the disclosure of private information, let alone any purported injury flowing from the same. Settled law holds that an "injury in law is not an injury in fact." *Price*, 2025 WL 3295119, at *2 (quoting *TransUnion LLC v. Ramirez,* 594 U.S. 413, 426-27 (2021) and *Popa*, 153 F.4th at 789). Because Plaintiff has not suffered an injury in fact, she

cannot establish Article III standing. Thus, dismissal of the Complaint in its entirety is warranted.

### C. **<u>Plaintiff Fails to Adequately Allege Interception of Information "In Transit"</u>.**

As detailed in Better's Opening Brief, interception must occur during transmission and not upon receipt. Plaintiff's response is that the Court should infer from her word choice that she has alleged interception "in transit." (Opp. at 10.) This invitation should be declined because her allegations are contradictory and fundamentally unclear.

In her allegations and in the Opposition, Plaintiff fails to explain how the tracking technology in question "intercepts" information while in transit. Instead, she simply asks the Court to ignore her allegation that the information was "*disclosed* by Defendant to LinkedIn and Google" (Compl. ¶ 94 (emphasis added)) – indicating receipt by those entities at a time subsequent to the time that the information was put into transit – in favor of her contradicting and conclusory allegation that the information was "intercepted" by those entities "in real time" (*id.*).[5] Plaintiff's contortions are not sufficient to maintain a claim.

As this mess of allegations demonstrates, CIPA's "interception in transit" requirement is far from clear as applied to website technologies such as the LinkedIn and Google tags at issue here. CIPA was drafted in 1967 to address wiretapping of telephone communications. (*See* Mot. at 3–5.) It "was not drafted with the internet in mind." *Doe v. Eating Recovery Ctr. LLC*, --- F.Supp.3d ---, 2025 WL 2971090, at *5–6 (N.D. Cal. Oct. 17, 2025).[6] As stated recently by another court in this District:

---

[5] Plaintiff's reliance on Central District decisions from *Licea v. Old Navy, LLC* and *Valenzuela v. Nationwide Mutual Ins. Co.* miss the mark, as both involved entirely different technologies – specifically, code-tracking chat bot messages – rather than the cookie-based tracking at issue here. 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023); 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023). This distinction is critical because cookie or pixel-based tools do not intercept conversational content like chat-bots recording two-way conversations do; instead, they collect metadata or browser events, not messages being "sent from or received at" any location. Recognizing this critical distinction, courts have dismissed Section 631 claims on this basis, holding that such tools do not intercept communications "in transit." *L.B. v. LinkedIn Corp.,* No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025) (dismissing CIPA claims for failing to plead exactly how the LinkedIn tag intercepts in real time).

[6] This decision was issued a week after the present Motion was filed.

> It's unclear how to apply the transit requirement to instantaneous internet communications. Courts (including probably this one) have been all over the map on the issue. Some seem to say that merely intercepting the communication while it's being made is enough, as long as the interception happens simultaneously or near-simultaneously. *See, e.g., Heerde*, 741 F. Supp. 3d at 862; Esparza v. UAG Escondido A1 Inc., 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024). Others say that you also have to "read" the communication while it's in transit – that is, you have to do something more than just intercept the contents of the communication or redirect them to yourself during the virtually infinitesimal amount of time it takes for the communication to travel from the website visitor to the website operator. *See Torres v. Prudential Fin.*, 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025); *see also Gutierrez*, 2024 WL 3511648, at *7.

*Eating Recovery Ctr.*, 2025 WL 2971090, at *5. As that court observed, "it's virtually impossible to understand what Section 631(a) actually means," and "[a]s difficult as it is to apply CIPA to the physical world, it's virtually impossible to apply to the online world." *Id.* at *6-7.

But CIPA is also a criminal statute, and one with punitive civil penalties. "When the governing standard is set forth in a criminal statute, it is appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage." *Harrott v. Cnty. of Kings*, 25 Cal. 4th 1138, 1154, (2001); *see also Bittner v. United States*, 598 U.S. 85, 103 (2023). Where the statutory language is ambiguous, the rule of lenity requires courts to apply the narrower of multiple potential interpretations. *See Eating Recovery Ctr.*, 2025 WL 2971090, at *1, 6-7.

That is the case here. Rejecting a similar "in transit" argument as Plaintiff advances, the court in *Eating Recovery Ctr.* explained that "the only commonsense meaning of transit … is the transit from the person sending the communication to its intended recipient," and that filtering, processing, or using data after receipt is not "reading" in transit. *Id.* (citing *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025)). The court in *Eating Recovery Ctr.* added that if information is stored, processed, or reassembled before it is read (even briefly), it cannot plausibly satisfy CIPA's "in transit" requirement. *Id.* As further support for this interpretation – and rejecting the notion that merely intercepting data with the intent to analyze it later constitutes an "attempt to learn" – the court explained that such an expansive reading would render CIPA § 632 superfluous and run afoul of the rule of lenity

applicable to CIPA's criminal provisions. *Eating Recovery Ctr.*, 2025 WL 2971090, at *6 ("Section 632 makes it unlawful to 'eavesdrop upon or record' a 'confidential communication' without the consent of all parties to the communication. Intercepting the contents of a communication and recording those contents…would seem to be covered by Section 632. If the same conduct were covered by the second clause of Section 631(a), it would appear to render Section 632 superfluous."). This, in turn, means that actions such as filtering private information do not qualify as "reading or learning" under the statute, since to "read or learn" requires active steps toward understanding the content, whereas filtering is an attempt to avoid such understanding. *Id.* at *5.

This is also consistent with the recent decision in *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025). There, Judge Blumenfeld dismissed CIPA claims where (as is the case here) the complaint "only vaguely reference[d] defendant's use of APIs without explaining how the technology allows real-time interception in general or how it was used to intercept plaintiff's data in particular." *Id.*[7] The court held that a "single vague and conclusory allegation" of "real time and/or near-real time" interception is not sufficient to demonstrate eavesdropping, let alone plausibly allege that confidential communications were intercepted in transit. *Id.* Here, Plaintiff's allegations are similarly deficient. (Compl. ¶¶ 69, 94, 130.) As illustrated above, recent decisions from the Central and Northern Districts make clear that CIPA § 631's interception element requires plaintiffs to plausibly allege facts as to how and when the alleged interception occurred "in transit," and to articulate a coherent theory explaining how the technology at issue actually reads or learns the contents of communications during transmission. *See Hernandez-Silva*, 2025 WL 2233210, at *5; *Eating Recovery Ctr.*, 2025 WL 2971090, at *5–6.

---

[7] As noted in n.1 *supra*, Plaintiff's counsel previously filed a nearly identical complaint against Better in the *Gillean* matter. That action was voluntarily dismissed on September 10, 2025, following Better's filing of a Motion to Dismiss and just weeks *after* Judge Blumenfeld's decision in *Hernandez-Silva*. The timing and circumstances strongly suggest that Plaintiff's counsel engaged in improper forum shopping in search of a more favorable outcome.

This Court should thus reject Plaintiff's contortions, apply the rule of lenity, and conclude that Plaintiff failed to allege "interception in transit" as required to maintain their claims.

### D. **Plaintiff's ECPA Claim Fails Because She Has Not Alleged that Better Had a Criminal or Tortious Purpose.**

Plaintiff concedes that Better cannot be liable under the ECPA for intercepting a communication to which Better was a party; instead, she relies upon the crime-tort exception in an effort to save her claim. (Opp. at 7.) Anticipating this, Better explained in its Opening Brief that the Complaint's generalized references to the GLBA and CalFIPA fall well-short of meeting this doctrine's exception. (Mot. at 14-15.) Plaintiff's Opposition, which simply parrots the same boilerplate language that Better identified as insufficient, confirms Better's point. (Opp. at 7-8.) Indeed, Plaintiff makes no attempt to explain how Better violated the GLBA or CalFIPA, let alone how Better purportedly intercepted the communications with the purpose of violating the Acts. Even if Better violated the Acts (it did not), the crime-tort exception does not apply simply because a law was violated or a crime or tort was committed. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 516 ("[T]he commission of a tortious act [does] not prove a tortious purpose.")

The lone case relied upon by Plaintiff does not compel a different result. In *Shah*, the court focused on the *unlawful purpose* of the interceptions: "Plaintiffs also allege that Defendant intercepted the contents of the electronic communications *for an unauthorized purpose*, which resulted in tortious acts." *Shav v. Capital One Financial Corporation*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (emphasis added). The mere allegation that Better's use of the website technologies in question constituted a crime or tort is not the same as alleging that Better had a criminal or tortious purpose for installing those technologies. *Doe v. Kaiser Found. Health Plan, Inc.,* No. 23-CV-02865-EMC, 2024 WL 1589982, at *10, 27 (N.D. Cal. Apr. 11, 2024) ("Violation of HIPAA was not the purpose of the alleged interception."); *T.D. v. Piedmont Healthcare, Inc.,* No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024), *reconsideration denied*, 2024 WL 5284883 (N.D. Ga. Dec. 10, 2024) (holding that defendant "could [no]t have acted with a tortious or criminal purpose in seeking to drive marketing and

revenue"). To hold otherwise and accept Plaintiff's reasoning would upset the entire purpose of the ECPA's one-party consent requirement – *every* alleged interception of website tracking information by a third-party cookie would trigger the ECPA's crime-tort exception and render the ECPA an all-party consent law.

Plaintiff's alternative argument that financial motivation is sufficient to trigger the crime-tort exception is simply incorrect and unsupported by law. (*Compare* Mot. at 15, *with* Opp. at 7-9.) As an initial matter, *nowhere* in the *Shah* decision did the court even discuss "financial motivation." 768 F. Supp. at 1053. In *R.C. v. Walgreen Co.*, which Plaintiff also relies upon for this proposition, the court similarly did not conclude that financial motivation alone is sufficient to trigger the exception, but, instead, *inferred* the defendant's "tortious intent" based on a well-pled privacy claim involving the collection and disclosure of highly sensitive health information for commercial gain. 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024). In reaching its conclusion, the court in *R.C.* also acknowledged:

> Generally, alleged interceptions fall within the tort or crime exception *only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously*, *and cannot apply where the interceptor's purpose* has plainly not been to perpetuate torts on millions of Internet users, but *to make money*.

*Id.* (citing *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (cleaned up and emphasis added)). Because no such intent is alleged in the Complaint, the crime-tort exception is not well-pled and, thus, the ECPA claim must be dismissed with prejudice.

### E. Plaintiff's Response Does Not Save Her Aiding and Abetting Theory.

Although Plaintiff dedicates nearly two pages of her Opposition to arguing that "LinkedIn and Google are more than mere tools utilized for Defendant's sole benefit," she fails to meaningfully distinguish or otherwise address the authority in the Motion, which demonstrates that her aiding and abetting theory fails as a matter of law. (*Compare* Mot. at 18-21, *with* Opp. at 12.) Plaintiff also does not dispute (and therefore concedes) that LinkedIn's Ads Agreement squarely addresses and refutes her allegations that LinkedIn and Google use data for their own

purposes. (Opp. at 13; *see also* Reilly Decl., Ex. B.) Instead, relying upon *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. Sept. 7, 2023), Plaintiff claims that these are fact issues that cannot be resolved at the pleadings stage. (Opp. at 13.) Plaintiff is wrong and *Meta* provides her with no support: in that case, the court (although skeptical of the merits) denied the motion to dismiss *only* because plaintiffs alleged that Meta's tools and filters were not effective and not fully implemented, which called into question Meta's true intent. *Id.* Nothing of the sort is pled here.

Plaintiff's *mens rea* argument fares no better. Realizing the lack of legal or factual support, Plaintiff stretches the decisions of the cases cited therein and points to no authority applying Section 631(a)(4) to the ordinary use of pixel-based tracking tools. (Opp. at 13-15.) To be sure, none of the cases cited by Plaintiff support her claim that embedding a standard third-party pixel constitutes "aiding" an unlawful wiretap. Read in context, each decision turned on allegations far more specific and technologically distinct from the browser-initiated pixel activity alleged here. In *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), the court ultimately dismissed the Section 631 claim because plaintiffs failed to plausibly allege that Sharp enabled any unlawful interception. There, the court emphasized that the complaint lacked nonconclusory allegations showing that confidential content was transmitted through the challenged pixel implementation or that Meta's receipt of the data amounted to eavesdropping. *Id.* at 1130-31. Although *Cousin* noted that the statutory term "aids" should be given its plain meaning, rather than read as "aiding and abetting," the court nowhere suggested that the mere embedding of a tracking pixel was sufficient to establish liability under prong four. *Id.* Instead, *Cousin* reinforces that prong four demands factual allegations demonstrating that the defendant actually enabled an unlawful interception – allegations that are missing here. *See id.*

Plaintiff's reliance upon *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), is similarly flawed. That case involved a session-replay code, which the court described as acting "as a wiretap" because the code allegedly redirected a user's communications to a third party while the user interacted with the site. *Id.* at *1. The court

allowed a prong-four theory only because the technology at issue purportedly captured and diverted the contents of communications in transit. *Id.* Nothing in *Revitch* suggests that a standard browser-initiated pixel request resembles the surreptitious duplication and redirection mechanism alleged there. *See id.*

The remaining cases cited by Plaintiff fare no better. (Opp. at 14-15 (citing *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987 (N.D. Cal. 2024), and *Smith v. Google, LLC*, 735 F. Supp. 3d 1188 (N.D. Cal. 2024)).) Both decisions addressed direct-interception theories under prongs two and three of Section 631, not prong-four aiding liability. *In re Meta Pixel*, 724 F. Supp. 3d at 1003-04; *Smith*, 735 F. Supp. 3d at 1198-99. In each, the complaints alleged that the defendants' respective tracking tools were configured to intentionally collect highly sensitive information (sensitive tax information in *Meta* and financial information and confidential health data in *Smith*). *In re Meta Pixel*, 724 F. Supp. 3d at 1004; *Smith*, 735 F. Supp. 3d at 1198-99. In denying the motions to dismiss, both decisions turned on the fact that detailed, content-specific allegations were sufficiently pled and demonstrated intentional reading or use of communications. 724 F. Supp. 3d at 1003-04; 735 F. Supp. 3d at 1198-99. Neither case held, or even implied, that the mere presence of a pixel on a website amounts to aiding an unlawful interception – as Plaintiff suggests. (Opp. at 14.)

In short, none of Plaintiff's authorities support the claim that a website operator "aids" a third party under CIPA § 631(a)(4) simply by implementing standard pixels that passively receive browser-initiated data. Plaintiff identifies no underlying unlawful interception by LinkedIn or Google, and no facts showing that Better knowingly enabled one. Without plausible allegations of an underlying wiretap violation or purposeful participation in such a violation, Plaintiff's prong-four theory fails as a matter of law.[8]

### F. **Plaintiff's Response Does Not Save Her Invasion of Privacy Claim.**

Citing no supporting authority, Plaintiff asserts that she has a legally protected privacy interest in her credit score. (Opp. at 15.) The authority relied upon by Plaintiff is readily

---

[8] For the reasons outlined in Section II.C *supra*, we urge the Court to apply the rule of lenity here, as well.

distinguishable and underscores her pleading deficiencies here. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024) (legally protected interest in credit card number, card issuer, expiration date, and CVC, but still dismissing claim because plaintiff failed to plausibly allege that defendant's conduct was so egregious as to constitute a serious invasion of privacy); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-01392 JLS NLS, 2009 WL 6527758, at *2-3 (S.D. Cal. Nov. 23, 2009) (legally protected interest in plaintiff's financial account, credit information, and social security number); *Valley Bank of Nevada v. Superior Ct.*, 15 Cal. 3d 652, 655, 542 P.2d 977 (1975) ("bank records pertaining to loan transactions between Bank and seven named persons and corporations"). Unlike the cases cited, Plaintiff identifies no similar information that was disclosed by Better, nor can she. The figures in the Complaint demonstrate that, at worst, Plaintiff's general credit score *range* of 700-719 was disclosed.[9] (Compl. ¶ 90, Figs. 13, 14.) But Plaintiff cannot reasonably expect privacy of a general credit score range that may be applicable to millions of Americans and, importantly, cannot allege disclosure of the information types at issue in her cited authorities, which include payment card information, social security numbers, and bank account information and records.[10]

Plaintiff cannot plausibly state a claim for invasion of privacy, because the disclosure of an address and credit score range are not highly offensive. Rather than make any attempt to address this issue, Plaintiff punts on the point altogether and simply claims that these are fact-intensive questions. (Opp. at 16.) Not true. Indeed, courts routinely decide this issue at the pleading stage. In *Smith v. YETI*, which Plaintiff relies upon in her Opposition (Opp. at 15), the

---

[9] Plaintiff now asserts that her identity, address, credit score, type of loan applied for, device information, and property information were disclosed. (Opp. at 15.) But Plaintiff makes no effort to distinguish the case authority cited in the Motion, including *Cabral*, *Fredenberg*, and *Low*, which contradict any claim that the disclosure of this information is sufficient to support a privacy claim. (Mot. at 22.)

[10] The Opposition is also entirely silent as to whether Plaintiff's conduct, including voluntarily disclosing this information during online commercial activity, is reasonable. (*Compare* Mot. at 22-23, *with* Opp. at 15-17). Plaintiff's silence concedes this argument. *Ardente*, 2010 WL 546485, at *7 ("Plaintiff does not respond to this argument and therefore concedes it."); *Doe v. Ritz-Carlton Hotel Co., L.L.C.*, No. 23-CV-05218-AMO, 2024 WL 2059087, at *2 (N.D. Cal. May 7, 2024) ("Plaintiffs do not contest this assertion, thus conceding the point.")

court dismissed the privacy claim because the plaintiff failed to plausibly allege that the defendant's conduct was so egregious as to constitute a serious invasion of privacy. 754 F. Supp. 3d at 946; *see also Popa.*, 153 F.4th at 791 (affirming dismissal where plaintiff did not "explain how the tracking of her interactions with the [website] caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."); *DellaSala v. Samba TV, Inc.,* No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (granting motion to dismiss as to intrusion upon seclusion claim because "Plaintiffs have not plausibly alleged a highly offensive violation of a privacy interest."); *Wooten*, 2025 WL 2979619, at *3 (granting motion to dismiss because "[d]isclosure of one's email and IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law.") (collecting cases). Here, the Complaint is devoid of allegations relating to the likelihood of serious harm to Plaintiff, or any other allegation that could meet the high bar to bring a privacy claim. That is because Plaintiff has not suffered any harm related to the purported disclosure that occurred three years ago.

## III. CONCLUSION

Better respectfully requests that the Court grant its motion and dismiss the case in its entirety with prejudice.

Dated: December 5, 2025

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: /s/ Brandon P. Reilly
Brandon P. Reilly
Matthew F. Bruno
Kyla Núñez
Attorneys for Defendant,
Better Home & Finance Holding Company