**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
KYLA NÚÑEZ (Bar No. CA 329484)
KNunez@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 916.552.2300
Facsimile: 916.552.2323

MATTHEW F. BRUNO (*Pro Hac Vice*)
MBruno@manatt.com
7 Times Square
New York, New York 10036
Telephone: 212.790.2701

*Attorneys for Defendant*
Better Home & Finance Holding Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER HOME & FINANCE HOLDING COMPANY,<br><br>Defendant. | Case No. 3:25-CV-07893<br><br>Assigned to Hon. Edward Chen<br><br>**DEFENDANT BETTER HOME & FINANCE HOLDING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Filed concurrently with Request for Judicial Notice, Declaration of Brandon P. Reilly; and [Proposed] Order<br><br>Date: July 30, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5<br>Complaint Filed: September 16, 2025<br>Trial Date: None Set |

**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on Thursday, July 30, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 5, 17th Floor, located in the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA, the Honorable Edward Chen presiding, Defendant Better Home & Finance Holding Company ("Better"), will and hereby does move to dismiss Plaintiff Shawn Miller's ("Plaintiff") First Amended Complaint ("FAC") under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This motion is made on the grounds that Plaintiff lacks standing to bring these claims because he failed to plausibly allege that he suffered damages of any kind. Further, both of Plaintiff's causes of action are untimely under the applicable statute of limitations. Finally, Plaintiff failed to state a claim as a matter of law for violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.* and invasion of privacy under California's Constitution. Both claims further fail because Plaintiff cannot plausibly allege that Better violated his right to privacy.

The motion is based on this notice of motion; the accompanying memorandum of points and authorities; request for judicial notice; declaration of Brandon P. Reilly; all prior pleadings, records, and files in this action; any evidence or argument presented at the hearing; and any and all papers on file with the Court.

Respectfully submitted,

Dated: June 11, 2026

**MANATT, PHELPS & PHILLIPS, LLP**

By: */s/ Brandon P. Reilly*
Brandon P. Reilly
Matthew F. Bruno
Kyla Núñez

Attorneys for Defendant,
BETTER HOME & FINANCE HOLDING COMPANY

## TABLE OF CONTENTS

**PAGE**

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
INTRODUCTION ..... 1
BACKGROUND ..... 4
A. Procedural History ..... 4
B. Allegations in the First Amended Complaint ..... 5
C. Better's Privacy Policy Was Discoverable and Placed Plaintiff With Presumptive Knowledge of His Purported Injuries. ..... 6
LEGAL STANDARD ..... 7
ARGUMENT ..... 8
II. PLAINTIFF LACKS ARTICLE III STANDING. ..... 8
III. PLAINTIFF'S CLAIMS REMAIN TIME-BARRED. ..... 12
A. The Delayed Discovery Doctrine Does Not Save Plaintiff's Untimely FAC. ..... 12
B. The Fraudulent Concealment Doctrine Does Not Save Plaintiff's Untimely FAC. ..... 13
C. The Relation Back Doctrine Does Not Save Plaintiff's Untimely FAC. ..... 15
IV. THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM. ..... 16
A. Plaintiff's Wiretap Act Claim Fails Under the One-Party Consent Rule. ..... 16
B. Plaintiff's Wiretap Act Claim Fails Because the Communications Were Not Confidential. ..... 18
C. Plaintiff's Wiretap Act Claim Fails Because He Does Not Allege "Interception in Transit." ..... 19
D. Plaintiff's Invasion of Privacy Claim Fails. ..... 21
V. CONCLUSION ..... 23

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 (N.D. Cal. 2023) (Chen, J.) ....................12

*ASARCO, LLC v. Union Pacific R. Co.*,
765 F.3d 999 (9th Cir. 2014) ....................15, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................8

*B.K. v. Eisenhower Med. Ctr.*,
721 F. Supp. 3d 1056 (C.D. Cal. 2024) ....................17, 18

*Belluomini v. Citigroup, Inc.*,
2013 No. CV 13-01743 CRB, WL 3855589 (N.D. Cal. July 24, 2013)....................21

*Boggs v. 3M Co.*,
527 F. App'x 415 (6th Cir. 2013) ....................16

*Brown v. Madison Reed, Inc.*,
622 F. Supp. 3d 786 (N.D. Cal. 2022), *aff'd*, No. 22-16415, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) ....................14

*Cabral v. Supple, LLC*,
No. EDCV 12-85-MWF (OPX), 2012 WL 12895825 (C.D. Cal. Oct. 3, 2012)....................22

*Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336 (9th Cir. 1996) ....................8

*Clink v. Oregon Health and Science Univ.*,
9 F. Supp. 3d 1162 (D. Or. 2014) ....................16

*Dawidzik v. Tesla, Inc.*,
No. EDCV 25-01982-KK-SPX, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ....................10

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025)....................20

*Doe v. Talkiatry Mgmt. Services, LLC*,
No. 5:25-cv-00781-SSS-DTBx, 2026 WL 206483 (C.D. Cal. Jan. 22, 2026) ....................17

*Faulkner v. ADT Sec. Servs., Inc.*,
706 F.3d 1017 (9th Cir. 2013) ....................19

*Finney v. Ford Motor Co.*,
No. 17-CV-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) ....................14

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011)....................23

*Fredenberg v. City of Fremont*,
119 Cal. App. 4th 408 (2004) ....................22

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) ....................9

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................21

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) ....................11

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................23

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ....................12

*Heerde v. Learfield Commc'ns, LLC*,
741 F. Supp. 3d 849 (C.D. Cal. 2024) ....................19

*Henderson v. Bolanda*,
253 F.3d 928 (7th Cir. 2001) ....................16

*Herzman v. Smile Brands Inc.*,
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ....................8

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ....................21, 22

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ....................11

*In re Carrier IQ, Inc.*,
78 F. Supp. 3d 1051 (N.D. Cal. 2015) ....................20

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ....................7, 8

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................9, 21, 22, 23

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ....................12

*Jones v. Tonal Sys., Inc.*,
751 F. Supp. 3d 1025 (S.D. Cal. 2024) ....................20, 21

*Khamooshi v. Politico LLC*,
No. 24-CV-07836-SK, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ....................9, 10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................8

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .....9

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) .....19

*Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724 (C.D. Cal. 2025) .....16

*Lakes v. Ubisoft*, 777 F. Supp. 3d 1047 (N.D. Cal. 2025) .....18

*Lau v. Gen Digital Inc.*, No. 22-CV-08981-JST, 2023 WL 10553772 (N.D. Cal. Sept. 13, 2023) .....14

*Licea v. Cinmar LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) .....20

*Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823 (S.D. Cal. June 12, 2023) .....9

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672 (N.D. Cal. 2021) .....19

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) .....22, 23

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .....8

*Massie v. General Motors LLC*, No. CV 21-787-RGA¸ 2022 WL 534468 (D. Del. Feb. 17, 2022) .....10

*Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129 (E.D. Cal. 2021) .....20

*Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855 (S.D. Cal. 2023) .....9, 10, 11

*Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .....10

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) .....8

*Papenthien v. Papenthien*, 16 F. Supp. 2d 1235 (S.D. Cal. 1998) .....15

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) .....8, 9, 10

*Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611 (9th Cir. 2016) .....14

*Rodriguez v. Brushfire Records, Inc.*,
No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025) ........................8

*Rodriguez v. Culligan Int'l Co.*,
No. 25-CV-00225-AJB-KSC, 2025 WL 3064113 (S.D. Cal. Nov. 3, 2025) ..........................10

*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......................................20

*Roe v. Amgen*,
No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482 (C.D. Cal. June 5, 2024)................17, 18

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
No. 2:24-cv-06525-WLH-E, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025)..............13, 14, 15

*Saeedy v. Microsoft Corp.*,
No. 23-CV-1104, 2023 WL 8828852 (W.D. Wash. Dec. 21, 2023) ......................................10

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .................................................................................................7

*Schallert v. Laird Superfood, Inc.*,
No. 2:25-cv-12407-SPG-PVC, slip op. (C.D. Cal. June 5, 2026) ..........................................10

*Sisti v. Bosley Inc.*,
No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ....................11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998)....................................................................................................................7

*Sussman v. AM. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ...............................................................................................17

*Svenson v. Google Inc.*,
No. 13-CV-04080-BLF, 2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) ................................11

*Tash v. Vision Serv. Plan*,
No. 2:25-CV-00762-DJC-JDP, 2026 WL 1012680 (E.D. Cal. Apr. 14, 2026).......................11

*Thomas v. Papa Johns Int'l, Inc.*,
No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024), *aff'd* No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025) ...................................................................22

*Torres v. Prudential Financial, Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .............................20

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................................................................8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ...........................................................................20, 21

*Gillean v. Better Home & Finance Company*,
Case No. 5:25-CV-01573-SB (C.D. Cal. 2025)...........................................................4, 5, 16





MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 ....................21

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) ....................12

**STATUTES**

18 U.S.C. § 2511(1) ....................16

18 U.S.C. § 2511(2)(d) ....................16, 17

18 U.S.C. § 2520(e) ....................12

Cal. Fin. Code § 4053 ....................18

Cal. Fin. Code § 4054.6 ....................18

Cal. Fin. Code § 4056 ....................18

**OTHER AUTHORITIES**

16 C.F.R. § 313 ....................18

16 C.F.R. §§ 313.4-313.9 ....................18

Wright & Miller, Federal Practice & Procedure Civil § 2367 (4th ed. 2025) ....................16

**RULES**

Fed. R. Civ. P. 6(a) ....................16

Fed. R. Civ. P. 9(b) ....................2, 14

Fed. R. Civ. P. 12(b)(1) ....................7, 8, 10, 12

Fed. R. Civ. P. 12(b)(6) ....................8

Fed. R. Civ. P. 41(a) ....................16

Fed. R. Evid. 201 ....................8

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Shawn Miller is now the third individual plaintiff in less than one year to attempt to bring wiretap and invasion of privacy claims against Defendant Better Home and Finance Company ("Better"), following the failed claims by his two predecessors – the latest by this Court on statute of limitations grounds via its April 9, 2026 order. (Dkt. 37.) This latest attempt – now the third – fails for the same and additional reasons. It should be the last.

When this case was previously before this Court on Better's motion to dismiss the Complaint (Dkt. 1, the "*Leanos* Complaint"), the Court held that Plaintiff's claims were untimely because Plaintiff Miller's predecessor, Elena Leanos, was chargeable with presumptive knowledge of Better's Privacy Policy upon visiting Better's Website in January 2022—a review that, according to the Court, "would have revealed Plaintiff's injury." Accordingly, because no tolling theory could save Plaintiff Leanos' claims from the applicable statute of limitations, the Court dismissed the *Leanos* Complaint without prejudice. Rather than amend the *Leanos* Complaint to address these deficiencies and others, the FAC merely reflects a change in class representative. The *Leanos* Complaint was itself an attempt to shop for a new forum after abandoning the original plaintiff (Wesley Gillean) in the prior action in the Central District of California, making this FAC the third in this series (*see* Section I(A) ("Procedural History") below). Aside from swapping out Leanos in favor of Miller and abandoning prior claims brought under the California Invasion of Privacy Act ("CIPA"), a redline of the FAC (Dkt. 41-1) reveals no material changes, let alone dispositive facts, that should change the outcome here. As such, the FAC suffers from the same pleading deficiencies and timeliness issues that doomed the *Leanos* Complaint and therefore must be dismissed with prejudice.

***First***, like former Plaintiff Leanos, Plaintiff Miller's claims are time-barred. Plaintiff Miller claims he visited Better's Website in January and February 2024, but his claims against Better were only filed last month, May 2026—which is beyond the applicable two-year statute of limitations for claims under the Electronic Communications Privacy Act ("ECPA" or the "Wiretap Act") and the California

Constitution. To attempt to justify this lapse, Plaintiff Miller ***repeats verbatim*** the very same tolling allegations this Court previously deemed insufficient with respect to Former Plaintiff Leanos. Given that Better's Privacy Policy was in effect and available on every browsing page of the Website, Plaintiff Miller (as was the case with his predecessor) cannot avail himself of the delayed discovery doctrine. Plaintiff Miller will find no shelter in advancing a fraudulent concealment theory (a theory that this Court found former Plaintiff Leanos had abandoned in her opposition to Better's previous motion to dismiss (*see* Dkt. 37 at 7) because the FAC does not come remotely close to meeting Rule 9(b)'s heightened pleading requirements, let alone the requirement elements for the doctrine's application. Finally, Plaintiff Miller's attempt to relate his untimely claims to the filing of the *Leanos* Complaint (which itself was untimely) should be flatly rejected—it is blackletter law that an untimely initial complaint cannot anchor a later, untimely, amended pleading.

***Second***, Plaintiff (again) fails to plead Article III standing because he fails to demonstrate a concrete, particularized, injury-in-fact that was purportedly caused by Better's use of basic website tools. In fact, Plaintiff relies upon ***the very same loan application*** for ***the very same Miami, Florida condominium*** that both Leanos and Gillean previously relied upon for purposes of alleging a violation of federal wiretapping laws and harm flowing therefrom. It is highly circumspect that the exact same loan application, allegedly representing their particularized injury, was submitted by all three plaintiffs (indeed, the accompanying screenshot purporting to show the alleged violation bears the same time stamp as the *Leanos* Complaint (*compare* Fig. 8 with Fig. 8), and therefore, cannot be used to demonstrate a concrete injury. Even if that dispositive issue did not exist, Plaintiff Miller pleads no facts—***none***—that otherwise establish how voluntarily inputting general information (*i.e.*, a current or prospective address of an entire condominium building and a credit score range) can somehow support an injury-in-fact.

***Finally***, as to the merits, the FAC fails to state a claim under ECPA or invasion of privacy—matters that this Court has not previously ruled upon after dismissing the *Leanos* Complaint on limitations grounds. As a matter of law, Plaintiff's ECPA claim must be dismissed because, under



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ECPA's one-party consent rule, Better cannot be liable for purportedly intercepting a communication that it was a party to. Plaintiff cannot overcome this rule's application because he fails to plausibly plead any facts establishing that the alleged interception was for purposes of committing a criminal or tortious act. Plaintiff's ECPA claim separately fails because, among other things, he fails to plead facts demonstrating a reasonable expectation of privacy, or that the information shared by Better was confidential, which are prerequisites to Wiretap Act. The only information at issue concerns an address (which may not even be his, as it was used for the previous two plaintiffs) and a credit score range. Because this does not qualify as personally identifiable information, it fails to qualify as "confidential communications" under ECPA or "highly sensitive" information sufficient to support a constitutional or common law privacy claim. Plaintiff also fails to plausibly allege that the communications at issue were "intercepted in transit," as required under the Wiretap Act. According to the FAC, Plaintiff voluntarily submitted data to Better through its standard webform and online application, which was then allegedly processed by Google and LinkedIn *only after* the information was transmitted. Even when construing these facts in the light most favorable to Plaintiff, this fails to plausibly demonstrate an interception of a communication "in transit." Rather, Plaintiff describes a voluntary transmission to the intended recipient—Better—in the ordinary course of business, which third-parties later used according to disclosed policies for standard and expected business purposes. These allegations do not match any concept of "interception in transit."

Plaintiff's invasion of privacy claim fares no better. Plaintiff alleges no conduct that could plausibly be characterized as "highly offensive" to adequately plead an invasion of privacy claim. The allegations center on standard "tracking technologies" that are employed by countless websites for marketing and data purposes. The routine use of common analytics and marketing tools is neither egregious nor shocking; it is standard practice across industries and its allegation here cannot support a privacy tort. And the information allegedly at issue is limited to 405-unit condominium complex address and credit score range that may not even be his.

At bottom, despite an opportunity to amend the *Leanos* Complaint to cure the many issues

identified by this Court, Plaintiff did absolutely nothing. Instead, Leanos was swapped out in favor of Miller, who repeats almost the entirety of Leanos's untimely *Leanos* Complaint. For these reasons, and the reasons that follow, the FAC should be dismissed with prejudice.

## BACKGROUND

### A. Procedural History

On June 24, 2025, a class action lawsuit was brought by Wesley Gillean against Better in the Central District of California, captioned as *Wesley Gillean v. Better Home & Finance Company*, Case No. 5:25-CV-01573-SB (C.D. Cal. 2025). (*See* Dkt. 15, the "*Gillean* Complaint".) Better moved to dismiss the *Gillean* Complaint with prejudice on August 29, 2025 and, on September 10, 2025 (two days prior to the deadline to respond to Better's motion to dismiss), Plaintiff Gillean voluntarily dismissed his case (presumably to find a better plaintiff and forum). (*See* Reilly Decl., Exs. A, B.)

A week after dismissing the *Gillean* matter, a new class action lawsuit was initiated before this Court against Better on September 16, 2026, by a new plaintiff, Elena Leanos (herein referred to as the "*Leanos* Complaint"). (Dkt. 1.) The *Leanos* Complaint mirrored the *Gillean* Complaint in virtually all respects—the same theory of liability, the same factual allegations, the same causes of action, the same alleged tracking technologies, the same loan application purportedly used in relation to the same Miami, Florida address, and the same legal counsel. (*See* Dkt. 15-2 (redline comparison of the *Gillean* and *Leanos* Complaints).) On October 10, 2025, Better moved to dismiss the *Leanos* Complaint for *inter alia* (i) untimeliness; (ii) lack of Article III standing; and (iii) failure to state a claim. (Dkt. 17.) After hearing oral argument on Better's motion (Dkt. 38) and requesting and receiving supplemental submissions relating to Better's Privacy Policy (Dkts. 33-35), the Court issued a decision and order on April 9, 2026, granting Better's motion without prejudice for untimeliness. (Dkt. 37.) Pointing to Better's Privacy Policy, which discloses the activity as issue in various ways, and the fact that a hyperlink to the policy appears on the bottom of every page that the user visits on Better's website, the Court rejected Plaintiff Leanos' attempt to invoke the delayed discovery doctrine, reasoning that the Privacy Policy was "reasonably discoverable" and, therefore, "Plaintiff was chargeable with

presumptive knowledge of its contents when she visited the Website in 2022." (*Id.* at 9-11.)

On April 14, 2026, the FAC was filed with (yet again) another new named plaintiff—this time Shawn Miller. (Dkt. 41.) As discussed further below, like the *Gillian* and *Leanos* Complaints, the FAC advances the same theory of liability, makes the same factual allegations, identifies the same tracking technologies, and relies upon the same loan application purportedly used in relation to the same Miami, Florida address. (*Id.*)[1] That same day, Plaintiff Elena Leanos filed a notice of voluntary dismissal. (Dkt. 42.)

**B. <u>Allegations in the First Amended Complaint</u>**

Better is a digital home-ownership company that provides mortgage financing and related services. Better owns and operates a website, www.better.com (the "Website"), through which consumers can apply for mortgages and related services.

Plaintiff claims that more than two years ago, "in or around January to February of 2024," he used the Website to apply for a loan and submitted personal information, like his address and credit score. (FAC ¶ 5.) Plaintiff alleges that Better uses the LinkedIn Insight Tag and Google Analytics (the "Tracking Technologies"), which purportedly caused information to be shared with those companies without Plaintiff's consent. (*Id*. at ¶¶ 23, 25, 79.) Plaintiff contends Better voluntarily implemented the Tracking Technologies on the Website, which he claims monitor user activity through cookies and embedded code that capture personal information supplied by users via detailed URLs and event data. (*Id.* at ¶¶ 34, 62, 79, 86, 87.)

The alleged information that is purportedly disclosed includes the: (i) applicant's home address or address the applicant seeks to buy and (ii) general range of the applicant's purported credit score. (*Id.* at ¶ 5, Figs. 4, 7, 9, 11, 13.) As demonstrated in the FAC, the information Plaintiff claims to have provided does not disclose his name or other personally identifying information. For example, the FAC refers to the address of a 405-unit building and a credit score range of 700-719, neither of which

[1] Unlike Plaintiffs Gillean and Leanos, Plaintiff Miller does not assert claims under the California Invasion of Privacy Act.

uniquely identify Plaintiff. (*See id.*; Reilly Decl. Ex. C.)[2]

Plaintiff also claims that, through its analytics tools, Better disclosed this information to LinkedIn and Google in "real time." (FAC ¶¶ 3, 6, 21, 25, 79, 86, 121.) But Plaintiff does not claim that these third parties accessed or viewed the data during its transmission. According to the FAC, Google collects information from the Website, processes it, and later combines it with other data for matching purposes. (*See id.* at ¶¶ 64-65.)

Like Plaintiff Leanos, Plaintiff Miller acknowledges that his FAC is untimely, but instead alleges his claims are somehow tolled due to Better's alleged "knowing and active concealment of its incorporation of the Tracking Technologies into its Website," which Plaintiff alleges he was ignorant of. (*Id.* at ¶¶ 92-99.) Specifically, Plaintiff claims Better "had exclusive knowledge that its Website incorporated the Tracking Technologies and yet failed to disclose to consumers, including Plaintiff and Class Members, that by accessing financial services through the Website—including mortgages, loans, and insurance quotes—Plaintiff's and Class Members' private and confidential facts and information relating to their applications would be disclosed or released to LinkedIn and Google." (*Id.* ¶ 96.) Plaintiff claims the earliest he could have reasonably known about Better's use of Tracking Technologies "would have been shortly before the filing of the original complaint in this matter," or September 2025. (*Id.* at ¶ 99.)

### C. <u>Better's Privacy Policy Was Discoverable and Placed Plaintiff With Presumptive Knowledge of His Purported Injuries.</u>

At the time of Plaintiff's alleged visit, Better maintained a Privacy Policy on its Website, which was readily available to any individual browsing Better's Website. (Reilly Decl., Ex. E.) As it appeared in January and February 2024, "Information We Collect" section of Better's Privacy Policy expressly discloses the possibility of sharing information with third parties:

[2] Plaintiff relies upon the very same loan application that was purportedly submitted by Plaintiff Leanos. (*See id.*; *see also* Dkt. 37 at 2 ("In her application, [Leanos] provided the address of the property she planned to borrow based off of, that this property was an investment property and a condo, and that her credit score was in the range of 700-719.").)

> When you use the Website, we and/or our subsidiaries (collectively referred to herein as "we", "us" or "our") may collect personal information about you, such as your name, address, Social Security number, telephone number, email address, asset information, income information, or any other information that you submit on applications or other forms made available through the Website.
>
> We may also collect personal information about you from third party sources, which we may combine with information that you provided to us or we previously collected. For example, we may receive information from a social media service about you if you use a social media account to log into the Website.
>
> We also automatically collect certain information related to you and your activities on the Website when you visit the Website. This information includes information such as your IP address, your internet browser and operating system type, the date and time of your visit, and the website that referred you to us.

(Reilly Decl., Ex. E.) And, as the Court previously acknowledged, "[i]t is undisputed" that (i) "in order to fill out a loan application on Defendant's website, Plaintiff would have had to first visit the website's homepage, where the Privacy Policy was available as a link at the bottom of the page"; (ii) the link to the Privacy Policy "was identifiable as a hyperlink through hovertext"; (iii) the "hyperlink would have been obvious to the typical website visitor" and (iv) "the link to the Privacy Policy appears at the bottom of every subsequent page the user visited." (Dkt. 37 at 10.) Those findings (which were based upon Better's 2022 policy and webflow) remain true through the present. (*See* Reilly Decl., Ex. D.) As with the *Leanos* Complaint, the FAC avoids any mention of Better's Privacy Policy.

## LEGAL STANDARD

A Rule 12(b)(1) motion to dismiss tests whether a complaint alleges grounds for federal subject matter jurisdiction. If the plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig*., 903 F. Supp. 2d 942, 952 (S.D. Cal. 2012) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).) A jurisdictional challenge under Rule 12(b)(1) may be facial or factual. *Id.* (*citing Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).) Where, as here, the attack is facial, "the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint

as true and construing them in favor of the party asserting jurisdiction." *Id.*

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. *Id.* at 952-53 (*citing Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).) This Court must accept factual allegations as true and must draw reasonable inferences from them in favor of the nonmoving party. *Id.* (*citing Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).) However, this Court is not required to accept "legal conclusions" as true. *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009).) While "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)," there are two exceptions: "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

## II. PLAINTIFF LACKS ARTICLE III STANDING.

To establish Article III standing, a plaintiff must allege an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). A statutory violation, standing alone, does not suffice; "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original). Dismissal under Rule 12(b)(1) is appropriate here.

Following *TransUnion*, Ninth Circuit courts have dismissed—and the Ninth Circuit has affirmed the dismissal of—privacy suits based on website tracking technologies where, as is the case here, plaintiffs allege only abstract statutory violations without real-world harm. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 791-95 (9th Cir. 2025) (affirming dismissal of wiretapping claim under Rule 12(b)(1)); *Rodriguez v. Brushfire Records, Inc.*, No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144, at *6-*7 (C.D. Cal. Dec. 15, 2025) (following *Popa* and dismissing "vague and generalized allegations" of harm untethered to plaintiff's actual interactions); *Herzman v. Smile Brands Inc.*, No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) (dismissing claims for failure to demonstrate a

"concrete" injury in fact from an alleged website visit); *Garcia v. Blackhawk Network, Inc.,* No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026) (dismissing ECPA claim for lack of "detailed allegations" of plaintiff's actual harm"); *Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *3-*4 (N.D. Cal. June 24, 2025) (general allegations of interception insufficient).

Plaintiff fails to plead facts demonstrating that he "stated a legally protectable privacy interest based on the nature of the information at issue." *See Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (quoting *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1040 (N.D. Cal. 2014) (granting motion to dismiss).) In *Popa*, the Ninth Circuit held that information about a plaintiff's online interactions with a pet supply store website—"over 30 different categories" of information—included "no embarrassing, invasive, or otherwise private information" collected by the third-party at issue, comparing the interaction "to a store clerk's observing shoppers." *Popa*, 153 F.4th at 786, 791. On this basis, the Ninth Circuit affirmed dismissal for lack of Article III standing. A similar outcome is warranted here.

Here, the information at issue involves a condominium complex address (without unit number) and credit score range, which were voluntarily entered into field and text boxes on the Website. (FAC ¶¶ 5, 81-84; Figs. 2-15.) However, it is well-settled that interception of information that is merely entered into a field or text box fails to demonstrate a concrete injury. *Mikulsky*, 682 F. Supp. 3d at 864 (allegations that plaintiff input "her personal information in text fields" deemed insufficient to establish concrete injury); *Lightoller v. Jetblue Airways Corp.*, No. 23-CV-00361-H-KSC, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (interception of "'mouse movements, clicks, keystrokes (such as text being entered into an information field or text box), URLs of webpages visited, and/or other electronic communications in real-time'" is insufficient to demonstrate harm); *Khamooshi v. Politico LLC*, No. 24-CV-07836-SK, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) ("browsing activity, geolocation data, device type, browser type, and 'device fingerprints'" are "insufficient to establish a concrete privacy injury"). Consistent with *Popa* and its progeny, dismissal of the FAC is warranted for the same reasons.

*See Popa*, 153 F.4th at 786, 791; *see also Khamooshi*, 2025 WL 2822879, at *3 (following *Popa* and dismissing with prejudice); *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPX, 2025 WL 3786963, at *5 (C.D. Cal. Dec. 29, 2025) (applying *Popa* and dismissing under Article III where "Plaintiff has not 'plausibly alleged the infringement of any privacy interest.'") (cleaned up); *Rodriguez v. Culligan Int'l Co.*, No. 25-CV-00225-AJB-KSC, 2025 WL 3064113, at *3 (S.D. Cal. Nov. 3, 2025) (finding no standing under *Popa* because the plaintiff failed "to demonstrate anything more than an alleged statutory violation is consequently fatal to her claim."); *Schallert v. Laird Superfood, Inc.*, No. 2:25-cv-12407-SPG-PVC, slip op. at 9-10(C.D. Cal. June 5, 2026) (dismissing for lack of standing where the complaint lacked "specific allegations about Plaintiff's particularized injury.").

Plaintiff cannot demonstrate concrete harm also because there is no recognized right to privacy over anonymized data. *See Saeedy v. Microsoft Corp.*, No. 23-CV-1104, 2023 WL 8828852, at *4 (W.D. Wash. Dec. 21, 2023) (collecting cases and holding that anonymized data is "insufficiently personal"); *Massie v. General Motors LLC,* No. CV 21-787-RGA¸ 2022 WL 534468, at *5 (D. Del. Feb. 17, 2022) ("Plaintiffs do not have a reasonable expectation of privacy over the anonymized data captured by the Session Replay software"). The Southern District's decision in *Mikulsky v. Noom, Inc.*, No. 3:23-CV-00285-H-MSB, 2024 WL 251171 (S.D. Cal. Jan. 22, 2024) is instructive. There, a plaintiff asserted privacy claims based on inputting "sensitive personal health information" within text fields. *Id.* at *5. In granting dismissal under Rule 12(b)(1), the Court explained that "Plaintiff's activity on Defendant's website was basically anonymous" because plaintiff did not enter "her name, email address, credit card details, or other contact information on Defendant's Website." *Id.*

The same is true here: there is no information provided that would enable Better (or anyone else) to identify Plaintiff. The FAC identifies only two forms of information purportedly disclosed: Plaintiff's (i) property address (FAC Fig. 7) and (ii) credit score range (FAC Fig. 13). Like *Mikulsky*, Plaintiff does not allege that he disclosed his name, email address, financial information, or bank records. *See* 2024 WL 251171, at *5. While Plaintiff claims he disclosed his address—that, without more, does not

demonstrate a concrete injury.[3] *See Mikulsky*, 682 F. Supp. 3d at 864 ("basic contact information" does "not trigger a protectable privacy interest"). The absence of a concrete injury is further underscored by the fact that Plaintiff recycles ***for a third time*** the very same allegations—***including the very same loan application***—previously used in both the *Gillian* and *Leanos* Complaints. It strains credulity that the same generalized allegations, which have been repackaged verbatim ***threefold***, can suffice in establishing a concrete injury. *See id.*

Finally, Plaintiff cannot rely on the purported devaluation of his personal information to establish injury-in-fact. To do so, he "must 'establish both the existence of a market for [their] personal information and an impairment of [their] ability to participate in that market.'" *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016).) Neither element is pled. Indeed, even the most generous reading of the FAC fails to demonstrate how Plaintiff's personal information has a particular value, let alone that this "value" has in any way been impaired. *See Tash v. Vision Serv. Plan,* No. 2:25-CV-00762-DJC-JDP, 2026 WL 1012680, at *5 (E.D. Cal. Apr. 14, 2026) ("Though the Complaint describes the value of this information in the hands of both third parties and Plaintiffs…it does not identify how the value of that information has diminished because of Defendants' actions."); *Sisti v. Bosley Inc.*, No. 2:25-CV-10669-JFW-DFM, 2026 WL 1223927, at *4 (C.D. Cal. Apr. 27, 2026) (dismissing allegations of "'monetary loss' based on the 'diminution of value' of [plaintiff's] 'health data'" as "purely speculative") (internal citations omitted); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1054 (N.D. Cal. 2022) ("Even assuming the existence of a market for the information taken in this case, the [complaint] is devoid of any allegations describing how the breach devalued plaintiffs' specific information . . . such that they are prevented from deriving economic benefit from this information in the future.")

---

[3] Nor does the address alleged in the FAC suggest any type of personal connection. As part of the loan application process, the FAC identifies the address of a 405-unit condominium complex. (*See* FAC Fig. 7; *see also* Reilly Decl., Ex. C.)

For each of the above reasons, dismissal under Rule 12(b)(1) is warranted.

## III. PLAINTIFF'S CLAIMS REMAIN TIME-BARRED.

Even assuming that Plaintiff has Article III standing (he does not), dismissal of the FAC with prejudice is separately warranted for the same reason that this Court previously dismissed the *Leanos* Complaint: Plaintiff's ECPA and invasion of privacy claims (Counts I and IV)[4] are based on purported acts that occurred outside the two-year statute of limitations. *See* 18 U.S.C. § 2520(e) (two years for ECPA claims); *Al-Ahmed v. Twitter, Inc.,* 648 F. Supp. 3d 1140, 1155, n. 1 (N.D. Cal. 2023) (Chen, J.) (same); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 598-99 (N.D. Cal. 2021) (California constitutional privacy claim is subject to two-year statute of limitations). According to the FAC, the alleged violations occurred when Plaintiff visited the Website in or around January and February 2024 (FAC ¶ 5); however, Plaintiff did not bring these claims until more than two years later, on May 14, 2026, when he filed this FAC. Recognizing this fatal flaw, Plaintiff (like Leanos) attempts to save his claims by pleading the very same tolling allegations that this Court previously determined were insufficient. (*Id.* ¶¶ 92-99; *see also* Dkt. 37.) Because Plaintiff did nothing to cure the deficiencies previously observed by this Court, dismissal with prejudice is warranted.

### A. The Delayed Discovery Doctrine Does Not Save Plaintiff's Untimely FAC.

To invoke the delayed discovery doctrine, Plaintiff must plead facts to show "(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 901 (N.D. Cal. 2023) (emphasis original). Plaintiff does not plead any facts to support the doctrine's application. *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (finding the complaint did not plead sufficient facts to invoke the delayed discovery rule). On the contrary, Plaintiff relies verbatim on the very same factual allegations that were previously deemed insufficient.

When this issue was previously submitted, this Court emphasized the fact that Better's disclosures in its Privacy Policy "encompass the very conduct that forms the basis for [Leanos'] claims,"

[4] Plaintiff's second cause of action for invasion of privacy is erroneously numbered "Count IV."



MANATT, PHELPS & PHILLIPS, LLP ATTORNEYS AT LAW SAN FRANCISCO

and "contained information that would have put Plaintiff on notice as to her claims." (Dkt. 37 at 10.) What's more, this Court determined that Better's policy was "reasonably discoverable" had Plaintiff Leanos exercised any due diligence because a link to the policy was available on Better's homepage and every page thereafter and was separately located next "to information such as 'About Us' and 'FAQ' which likely would have been of interest to the website user." (*Id.* at 10-11.) Because she did not exercise such due diligence, this Court held that Leanos could not invoke delayed discovery doctrine and dismissed the *Leanos* Complaint as untimely. (*Id.* at 12 ("Plaintiff has failed to establish that she would not have learned about Defendant's disclosures about its user data sharing had she exercised reasonable diligence.").)

That same outcome is warranted here. Neither the substance nor the placement of Better's Privacy Policy have changed from 2022 (when Leanos allegedly visited the Website) to 2024 (when Miller allegedly visited the Website). (*See* Reilly Decl., Exs. D, E.) As such, when Plaintiff Miller purportedly visited the Website in January and February 2024 (FAC ¶ 5), he was squarely placed on notice of his purported claims by virtue of the Privacy Policy, since it "would have revealed Plaintiff's injury." (*See* Dkt. 37 at 10.) And because Plaintiff Miller failed to heed the Court's prior ruling and allege facts establishing that "[]he would have learned about Defendants' disclosures about its user data sharing had []he exercised reasonable diligence," he cannot avail himself to the delayed discovery doctrine and the FAC should be dismissed in its entirety as untimely. (*Id.* at 12; *see also Saedi v. SPD Swiss Precision Diagnostics GmbH*, No. 2:24-cv-06525-WLH-E, 2025 WL 1141168, at *9-*10 (C.D. Cal. Feb. 27, 2025) (accord).)

**B. <u>The Fraudulent Concealment Doctrine Does Not Save Plaintiff's Untimely FAC.</u>**

To the extent Plaintiff may now advance a theory of fraudulent concealment for tolling purposes, it should be rejected as inadequate and implausible.[5] When tolling is based on an allegation of fraudulent

[5] Like Leanos, Plaintiff again alleges that "[a]ny applicable statutes of limitations have been tolled by Defendant's knowing and active concealment of its incorporation of the Tracking Technologies into its Website." (FAC at ¶ 92.) However, it is unclear whether Plaintiff intends to invoke fraudulent concealment as a basis for tolling—a theory Leanos waived in relation to Defendant's previous motion to dismiss. (*See* Dkt. 37 at 7 n.1 ("While Defendant responded to this fraudulent concealment theory in their Motion to Dismiss, Plaintiff's opposition only argued that the delayed discovery doctrine applies.

concealment, Plaintiff must meet the heightened pleading requirements of Rule 9(b) and "plead with particularity facts showing that (1) the defendant affirmatively misled it, and that (2) the plaintiff had neither actual nor constructive knowledge of the facts giving rise to its claim despite its diligence in trying to uncover those facts." *Saedi*, 2025 WL 1141168, at *10 (internal citations and quotations omitted); *see also Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at * (N.D. Cal. June 4, 2018) ("Fraudulent concealment tolling must be pled with particularity under Fed. R. Civ. P. 9(b)."). "The second element requires the plaintiff to allege '(1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry.'" *Id.* (internal citations omitted). Moreover, fraudulent concealment requires conduct "above and beyond the wrongdoing" upon which the claim is based. *See Saedi*, 2025 WL 1141168, at *10 (dismissing CIPA claim as time-barred because plaintiff failed to sufficiently plead the applicability of the fraudulent concealment or the delayed discovery doctrines).

Here, Plaintiff (again) does not come remotely close to satisfying Rule 9(b)'s heightened pleading standard. *See* Fed. R. Civ. P. 9(b). Among other things, Plaintiff does not identify any fraudulent act committed by Better, let alone allege well-pled facts as to "when the fraud was discovered," "the circumstances under which it was discovered," or that he was "not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put [her] on inquiry." *Raifman v. Wachovia Sec., LLC*, 649 F. App'x 611, 613 (9th Cir. 2016) (affirming dismissal of claims as time-barred because plaintiffs failed to sufficiently allege any efforts to investigate or that defendant fraudulently withheld information); *Brown v. Madison Reed, Inc.*, 622 F. Supp. 3d 786, 800 (N.D. Cal. 2022), *aff'd*, No. 22-16415, 2023 WL 8613496 (9th Cir. Dec. 13, 2023) (finding delayed discovery and fraudulent concealment doctrines did not apply because plaintiff failed to provide enough detail to adequately allege any of the required elements); *Lau v. Gen Digital Inc.,* No. 22-CV-08981-JST, 2023

---

Plaintiff has thus waived a fraudulent concealment tolling theory.").) For completeness's sake, Better again addresses this poorly-pled theory.

WL 10553772, at *3 (N.D. Cal. Sept. 13, 2023). Nor does Plaintiff allege how Better's conduct went "above and beyond the wrongdoing upon which the plaintiff's claim is filed." *Saedi*, 2025 WL 1141168, at *11 ("The only conduct alleged is the installation of Tracking Tools, which is the same alleged wrongdoing that forms the basis of the CIPA claim.")

Beyond this, Plaintiff's contention that Better "fraudulently concealed" its use of tracking technologies is completely unsupported. Plaintiff fails to include any allegation as to what actions (if any) were affirmatively taken by Better to "conceal" this information, let alone describe what purported notices were presented to him when he visited the Website in January and February 2024. As discussed above, Plaintiff (again) fails to address that the Better Privacy Policy, as of January 2024, clearly disclosed the use of "third-party cookies and tracking technologies" that "may collect your personal information," including to "serve advertisements and evaluate the effectiveness of our advertising campaigns," "improve the Website, analyze Website traffic and [for] other analytics purposes," and "to serve targeted advertisements on both the Website and on third-party websites." (Reilly Decl., Ex. E at 1-2.) Plaintiff's complete avoidance of any mention of the Privacy Policy is fatal. Finally, (like Leanos) Plaintiff fails to allege that he took any steps in trying to uncover the purported concealment other than contacting an attorney more than two years after he visited the Website.

### C. <u>The Relation Back Doctrine Does Not Save Plaintiff's Untimely FAC.</u>

Finally, because the *Leanos* Complaint was itself dismissed as untimely, Plaintiff cannot rely upon the initial filing for purposes of invoking the relation back doctrine. "It strains reason to argue that one untimely complaint can be saved by relating back to another untimely complaint. Stated otherwise, it simply makes no sense to hold that a complaint that was dead on arrival can breathe life into another complaint." *Papenthien v. Papenthien*, 16 F. Supp. 2d 1235, 1241 (S.D. Cal. 1998) (holding that untimely amended complaint could not relate back to filing of original complaint, where the plaintiff did not timely file her original complaint); *see, e.g.*, *ASARCO, LLC v. Union Pacific R. Co.*, 765 F.3d 999, 1007 (9th Cir. 2014) ("Of course, relation back does not help [the plaintiff] if the original complaint was

not timely in the first instance.”).[6] Cases are legion on this score. *See, e.g., Henderson v. Bolanda*, 253 F.3d 928, 932 (7th Cir. 2001) (holding that an original, untimely, complaint cannot “act as a life-line for a later complaint, filed after the two-year statute of limitations”); *Boggs v. 3M Co.*, 527 F. App’x 415, 418 (6th Cir. 2013) (“a plaintiff may not save one untimely claim by tacking it on to an untimely initial complaint”); *see also Clink v. Oregon Health and Science Univ.*, 9 F. Supp. 3d 1162, 1165-66 (D. Or. 2014) (holding that plaintiff “cannot rely on Federal Rule of Civil Procedure 15(c) to resurrect his untimely Original Complaint for the purpose of avoiding the statute of limitations.”).

Applying this logical principle here, Plaintiff cannot rely upon the initial filing of the untimely *Leanos* Complaint to bring his claims within the applicable two-year statute of limitations.[7] Because no tolling theory applies to Plaintiff’s untimely claims, dismissal of the FAC is warranted.

## IV. THE FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM.

### A. Plaintiff’s Wiretap Act Claim Fails Under the One-Party Consent Rule.

In Count I, Plaintiff claims Better violated the Wiretap Act, which prohibits the interception of certain communications. 18 U.S.C. § 2511(1). However, the Wiretap Act includes a “one-party consent” rule, which permits the interception of communications if intercepted by a party to the communication, or where a party consented to the interception by a third party. 18 U.S.C § 2511(2)(d). Put differently, under the Wiretap Act, Better cannot be liable for intercepting communications to which it was a party. *Id.* Because Plaintiff cannot plead facts to avoid this rule’s application, Count I should be dismissed.

There is no dispute that the parties to the “communications” were Plaintiff and Better. (*See, e.g.,* FAC ¶¶ 5, 113, 119.) Despite this, Plaintiff claims that Better (i.e., the *participant* to the conversation) somehow “intercepted” communications in which it was participating. (*Id.* at ¶¶ 120-22, 125.) But it is

---

[6] In *ASARCO*, the Ninth Circuit ultimately determined that the plaintiff’s CERCLA claims were timely under Rule 6(a)’s method of calculation—a fact-pattern and analysis that offers Plaintiff no support here.

[7] The same is true should Plaintiff attempt to relate back to the *Gillean* Complaint filed in the Central District of California, which was voluntarily dismissed prior to the filing of the initial *Leanos* complaint in this matter. *See Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 736-37 (C.D. Cal. 2025) (rejecting similar argument seeking to relate untimely claims back to prior class action complaint that was voluntarily dismissed in a different district); *see also* Wright & Miller, Federal Practice & Procedure Civil § 2367 (4th ed. 2025) (“[I]t seems well settled in the case law that the statute of limitations is not tolled by bringing an action that later is dismissed voluntarily under Rule 41(a).”).

well-settled that Better cannot be liable for purportedly wiretapping its own website. *See Roe v. Amgen*, No. 2:23-CV-07448-MCS-SSC, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (holding "Plaintiffs' allegations are self-defeating; their complaint is only susceptible to an inference that Defendant, as the creator and operator of its website, consented to the use of data collection tools it installed on its website" and dismissing Wiretap Act claim); *Doe v. Talkiatry Mgmt. Services, LLC*, No. 5:25-cv-00781-SSS-DTBx, 2026 WL 206483, at *3 (C.D. Cal. Jan. 22, 2026) (similar). That holds true here: as a party to the communication, Better cannot be liable for "intercepting" the communication intended for that party. For that reason, Count I fails as a matter of law.[8]

To avoid the one-party consent rule's application, Plaintiff attempts to invoke the crime-tort exception, (*see* FAC ¶ 125), which negates consent where the interception was for the "purpose of ***committing [a] ... tortious act*** in violation of the . . . laws of the United States or any State." 18 U.S.C. § 2511(2)(d) (emphasis added). Plaintiff must plead *facts* demonstrating that "the ***purpose*** for the interception—its ***intended use***—was criminal or tortious." *Sussman v. AM. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis added). Specifically, courts require plaintiffs "plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording or interception itself." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1065 (C.D. Cal. 2024) (collecting cases). Plaintiff fails to do so.

Here, Plaintiff fails this standard as he, like Leanos, pleads nothing more than general, unspecified, violations under the Gramm-Leach Bliley Act ("GLBA"), the California Financial Information Privacy Act ("CalFIPA"), and California Constitution. (FAC ¶¶ 126-27.) Plaintiff summarily states, without explanation, that the GLBA implementing regulations "impose[e] a criminal penalty for

[8] Plaintiff's alternative theory—that Google or LinkedIn, as third parties, "intercept[ed]" the alleged communication—fares no better because Plaintiff acknowledges (as he must) that Better, as operator of the Website, "integrated" the Tracking Technologies onto the Website. (FAC ¶ 23.) Put differently, the FAC pleads nothing but *Better's* consent to these technologies being utilized on *Better's* Website—acts that fall within the one-party consent rule.

knowingly disclosing 'nonpublic personal information' to a third party," and provides the definition for "nonpublic personal information." (*Id.* at ¶ 126 (citing 16 C.F.R. § 313 (which is an entire part with many sections).) Plaintiff does not explain what Better has done to purportedly violate the many provisions in the code section that he cites to or which provisions Better has allegedly violated. Plaintiff's assertion about the GLBA is also incorrect: The GLBA, of course, authorizes consumer financial institutions to legally disclose nonpublic personal information to a third party in *many ways*, including disclosures to carry out services requested by the consumer, to render basic services back to the company, to conduct joint marketing, and as otherwise subject to adequate notice via a GLBA-complaint privacy notice. *See, e.g.,* 16 C.F.R. §§ 313.4-313.9; 313.13-313.14. Indeed, the FAC at least acknowledges similar provisions under CalFIPA, which like the GLBA permits the sharing of protected information under certain circumstances, including with consent. (FAC ¶ 20 (citing Cal. Fin. Code §§ 4053, 4054.6, 4056).) The reality is that under the GLBA and CalFIPA, Better is allowed to share nonpublic information under various authorized circumstances. But Plaintiff ignores these exceptions and concludes simply that Better has somehow violated the GLBA or CalFIPA. (*Id.* ¶¶ 6, 22, 125.) This cannot sustain application of ECPA's crime-tort exception.

That aside, the crux of the FAC rests not on criminality, but on the theory that Better was motivated by financial factors. (*Id.* ¶¶ 84, 91.) Courts in this Circuit have repeatedly held that financial motivation is insufficient to trigger the crime-tort exception. *B.K.*, 721 F. Supp. 3d at 1065 (interception of information for "commercial advantage" failed to support exception); *Roe*, 2024 WL 2873482, at *6 (exception did not apply where "Defendant's motivations were to improve their marketing and advertising efforts"); *Lakes v. Ubisoft*, 777 F. Supp. 3d 1047, 1058 (N.D. Cal. 2025) (exception inapplicable where interception was motivated by profit). Count I should be dismissed with prejudice.

**B. <u>Plaintiff's Wiretap Act Claim Fails Because the Communications Were Not Confidential.</u>**

Plaintiff's Wiretap Act claim separately fails because he fails to plead facts demonstrating he had a reasonable expectation of privacy or that the communications were confidential, which ECPA requires.

*Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 683 (N.D. Cal. 2021) (ECPA requires allegations that the speaker had a "reasonable expectation of privacy."); *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019-20 (9th Cir. 2013) (Plaintiff must plead facts demonstrating the communications at-issue were "confidential" and he had "an objectively reasonable expectation [he was] not being recorded."). Plaintiff has not done so.

As detailed in Section I *supra*, Plaintiff recycles the same allegations and application as Leanos and repeats the same information as having been purportedly intercepted as Leanos previously alleged: (i) a property address of a 405-unit condominium (FAC Figs. 4, 7) and (ii) a credit score range (*id.* Fig. 13). Plaintiff does not allege he disclosed—or that LinkedIn or Google intercepted—identifying information, like his name, email address, financial information, or bank records. This information, without an association with Plaintiff's name or other identifying information, is not confidential. *Lopez*, 519 F. Supp. 3d at 684, 689-90 (dismissing Wiretap Act claims for failure to plead confidential communications).

### C. <u>Plaintiff's Wiretap Act Claim Fails Because He Does Not Allege "Interception in Transit."</u>

Because Plaintiff cannot allege that any communication was intercepted while "in transit," the Wiretap Act claim fails. *See Heerde v. Learfield Commc'ns, LLC*, 741 F. Supp. 3d 849, 865 (C.D. Cal. 2024). It is well-settled that "[t]he analysis for a violation of the Federal Wiretap Act is the same as under CIPA" and, therefore, requires contemporaneous interception of the type that might occur where a telephone communication is intercepted while it is occurring. *Id.* Here, however, there is no authority conclusively finding that the concept of "interception in transit"—passed for telephone communications—should apply to website tracking technologies of the type alleged here. In addition, even if it did, Plaintiff's allegations confirm the tracking technology software operates to collect information only *after* the user arrived on the Website (FAC ¶ 82), collecting data once the communication is complete, and thus falling outside the scope of unlawful interception. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (holding that for a communication to be

intercepted, "it must be acquired during transmission, not while it is in electronic storage"); *see also Torres v. Prudential Financial, Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *6-*7 (N.D. Cal. Apr. 17, 2025) (holding that even if third-party technology captures inputs in real time, Section 631 is not implicated where data is stored and later reviewed by humans).

To trigger liability, the communication must be intercepted during transmission—that is, before it reaches its intended recipient. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1136 (E.D. Cal. 2021). Once the data reaches its recipient, even if only momentarily collected, there is no interception because at that point "a communication becomes 'stored' and contemporaneous interception is no longer possible." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1077-78 (N.D. Cal. 2015). For instance, in *Jones v. Tonal Sys., Inc.*, the court found plaintiffs failed to plausibly allege interception under Section 631 because the transcripts were "retrieved and created after transmission from the server provided for [defendant's] benefit by [defendant's] service provider." 751 F. Supp. 3d 1025, 1037 (S.D. Cal. 2024). The court emphasized that conclusory allegations—like repeatedly asserting data was "intercepted"—are not enough without concrete facts indicating contemporaneous access during transmission. *Id.* (citing *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022)).

Similarly, *Valenzuela v. Keurig Green Mountain, Inc.* makes clear that simply reciting the phrase "intercepted in transit" does not suffice to state a claim. 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023). There, the court stressed that a plaintiff must plausibly allege the specific mechanism by which the challenged technology intercepts a communication while in transit, emphasizing that—"'[w]hile' is the key word here." *Id.* Conclusory allegations, without concrete facts showing contemporaneous interception, are inadequate. *Id.*; *see also Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023) ("Bare allegations of recording and creating transcripts do not specifically allege that Plaintiffs' messages were intercepted while in transit. The timeline of the automatic recording and transcription is unclear, as it could occur during transit or it can take place after receipt of the message in defendant's inbox."); *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1117 (N.D. Cal. 2025) (concluding interception cannot occur "in transit" where data is momentarily stored and later read and analyzed).

As in *Jones* and *Valenzuela*, the Tracking Technologies capture data only for later use and analysis. Plaintiff does not allege facts establishing real-time interception. *Jones*, 751 F. Supp. 3d at 1037; *Valenzuela*, 674 F. Supp. 3d at 758. Plaintiff's assertion that communications were "*disclosed* by Defendant to LinkedIn and Google and/or intercepted in transit by LinkedIn and Google, *in real time*," (FAC ¶ 86 (emphasis added)) is unsupported by allegations showing that third-parties accessed or reviewed data while in transit. In fact, the FAC confirms the opposite—that these purported disclosures are *not* contemporaneous: "***once*** Google's software code collects the data intercepted from the Website, it packages the information and sends it to Google for processing." (*Id.* at ¶ 64 (emphasis added).) Therefore, given that the FAC identifies ***post***-transmission like *Jones* and *Valenzuela*, it fails to support a statutory violation. That is because the later use of collected data does not convert lawful collection into unlawful interception. *Valenzuela*, 674 F. Supp. 3d at 758. For this additional reason, Count I must be dismissed.

**D. <u>Plaintiff's Invasion of Privacy Claim Fails.</u>**

Plaintiff's invasion of privacy claim fails for any number of reasons. To begin, because this claim rests entirely on his legally infirm Wiretap Act claim, it, too, must be dismissed. *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 836 (N.D. Cal. 2021) ("Because there was no plausible wiretapping . . . the plaintiffs did not plausibly plead that they possess a legally protected privacy interest."); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *3 ("The plaintiff does not plausibly plead a violation of her right to privacy under the California Constitution because she did not plausibly plead wiretapping.").

Should the Court consider the merits of the claim, dismissal is warranted because he fails to adequately plead the required elements. "To establish an invasion of privacy claim, a plaintiff must demonstrate: '(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy.'" *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037 (quoting *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 39-40 (1994).) "The California Constitution and the common law both set a high bar for an invasion of privacy claim." *Belluomini v. Citigroup, Inc.*, 2013 No. CV 13-01743 CRB, WL 3855589, at *6 (N.D. Cal. July

24, 2013). Plaintiff falls well-short of clearing this "high bar."

As discussed above, *supra* pp. 9, Plaintiff has not identified a legally protected privacy interest. Indeed, the only information identified concerns the alleged disclosure of Plaintiff's home address and credit score range, unassociated with his name or other identifying information. (*See* FAC ¶ 5.) Courts, however, have repeatedly held that disclosure of information like employment details, bank account status, or credit preapproval, while personal, is not enough to support a privacy claim. *See Cabral v. Supple, LLC*, No. EDCV 12-85-MWF (OPX), 2012 WL 12895825, at *3 (C.D. Cal. Oct. 3, 2012) ("The disclosure of mere contact information, such as names and addresses, does not unduly interfere with one's right to privacy"); *Fredenberg v. City of Fremont*, 119 Cal. App. 4th 408, 423 (2004) ("[a] person's general location is not the type of core value, informational privacy explicated in *Hill*"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) ("Even disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim."). Accordingly, this threshold element is not satisfied.

Second, Plaintiff fails to show his expectation of privacy was reasonable. To satisfy this prong, Plaintiff "must have conducted himself or herself in a manner consistent with an actual expectation of privacy, *i.e.*, he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1037-38. Where, as here, consumers voluntarily disclose information during online commercial activity, there is no reasonable expectation of privacy. *See Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *4-*5 (S.D. Cal. May 8, 2024) (no reasonable expectation of privacy in "name, address, credit card number(s), and billing information" provided to third party), *aff'd* No. 24-3557, 2025 WL 1704437 (9th Cir. June 18, 2025). The same holds true here: Plaintiff's alleged conduct is inconsistent with any reasonable expectation that the limited, generic information he voluntarily provided would remain private from Better. To be sure, Plaintiff concedes he visited the Website and voluntarily provided general information about an address and credit score range. (FAC ¶ 5, Figs. 7, 9, 11, 13.) This conduct belies any *reasonable* expectation of privacy. *See, e.g.*, *Papa Johns*, 2024 WL 2060140, at *4-



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*5.

Even if Plaintiff had a reasonable expectation of privacy, he failed to satisfy the "high bar" of demonstrating Better's conduct was "highly offensive." To satisfy this element, he must plead an "egregious breach of social norms." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d at 1038. He cannot meet this high standard because the collection of addresses and credit score ranges reflects "routine commercial behavior" that courts regularly accept. *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) ("Courts in this district have held that data collection and disclosure to third parties that is routine commercial behavior is not a highly offensive intrusion of privacy."); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011) (routine commercial behavior is not an egregious breach of social norms); *Low*, 900 F. Supp. 2d at 1025 (holding disclosure of personal information, like social security numbers, was not an "egregious breach of the social norms"). For each of these reasons, the privacy claim must be dismissed.

## V. CONCLUSION

Based upon the foregoing, Better respectfully requests that the First Amended Complaint be dismissed with prejudice and award Better such further relief as the Court deems proper.

Respectfully submitted,

Dated: June 11, 2026

**MANATT, PHELPS & PHILLIPS, LLP**

By: */s/ Brandon P. Reilly*
Brandon P. Reilly
Matthew F. Bruno
Kyla Núñez

Attorneys for Defendant,
BETTER HOME & FINANCE HOLDING COMPANY