**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER HOME & FINANCE HOLDING COMPANY,<br><br>Defendant. | Case No. 3:25-cv-07893-EMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date: July 30, 2026<br>Time: 1:30 p.m.<br>Ctrm: 05, 17th Floor<br>Judge: Hon. Edward M. Chen |

# TABLE OF CONTENTS

**PAGE(S)**


INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 2

I. PLAINTIFF HAS ESTABLISHED ARTICLE III STANDING ........ 2

II. PLAINTIFF'S CLAIMS ARE TIMELY ........ 7

III. PLAINTIFF SUFFICIENTLY PLEADS HIS CLAIMS ........ 10

A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose ........ 10

B. Defendant Intercepted And Disclosed Plaintiff's Confidential Communications ........ 13

C. Defendant Intercepted Plaintiff's Communications In Transit ........ 15

D. Plaintiff States a Claim for Invasion of Privacy ........ 16

CONCLUSION ........ 20

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Allison v. PHH Mortg.*,
2026 WL 1353827 (N.D. Cal. May 14, 2026) .... 1, 12

*Allison v. PHH Mortgage*,
2026 WL 899438 (N.D. Cal. Mar. 27, 2026) .... 1

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) .... 8, 10

*ASARCO, LLC v. Union Pac. R. Co.*,
765 F.3d 999 (9th Cir. 2014) .... 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .... 2

*Boggs v. 3M Co.*,
527 F. App'x 415 (6th Cir. 2013) .... 10

*Bos. Ret. Sys. v. Uber Techs., Inc.*,
2021 WL 4503137 (N.D. Cal. Oct. 1, 2021) .... 8, 9

*Branick v. Downey Sav. & Loan Assn.*,
39 Cal. 4th 235, 138 P.3d 214 (2006) .... 9

*Byars v. Goodyear Tire and Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023) .... 15

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) .... 15

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .... 4

*China Agritech, Inc. v. Resh*,
584 U.S. 732 (2018) .... 8

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .... 13

*Doe v. Eating Recovery Ctr. LLC*,
806 F.Supp.3d 1109 (N.D. Cal. 2025) .... 16

*Doyle v. State Bar*,
32 Cal. 3d 12, 184 Cal.Rptr. 720, 648 P.2d 942 (1982) .......... 18

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal.App.4th 986 (2011) .......... 19

*Frasco v. Flo Health, Inc.*,
349 F.R.D. 557 (N.D. Cal. 2025) .......... 5, 6

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......... 3

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Mar. 2, 2025) .......... 14

*Garcia v. Blackhawk Network, Inc.*,
2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......... 5

*Garcia v. Truist Fin. Corp.*,
2026 WL 972328 (C.D. Cal. Mar. 25, 2026) .......... passim

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) .......... 5, 14

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 3

*Hammerling v. Google LLC*,
615 F.Supp.3d 1069 (N.D. Cal. July 18, 2022) .......... 19

*Hassid v. Alex & Ani, LLC*,
2026 WL 160535 (C.D. Cal. Jan. 20, 2026) .......... 6

*Henderson v. Bolanda*,
253 F.3d 928 (7th Cir. 2001) .......... 10

*Herzman v. Smile Brands Inc.*,
2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) .......... 5

*Hildebrandt v. Staples the Off. Superstore, LLC*,
58 Cal. App. 5th 128 (2020) .......... 9

*Hutcheson v. Superior Ct.*,
74 Cal. App. 5th 932, 290 Cal. Rptr. 3d 60 (2022) .......... 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 3, 16, 18, 20

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) .......... 4

*Jones v. Tonal Systems, Inc.*,
751 F.Supp.3d 1025 (S.D. Cal. Sept. 30, 2024) .................... 16

*Kempf v. Apple Inc.*,
2026 WL 765332 (N.D. Cal. Mar. 18, 2026) .................... 8

*Khamooshi v. Politico LLC*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) .................... 4

*Krzyzek v. OpenX Techs., Inc.*,
817 F. Supp. 3d 857 (N.D. Cal. 2026).................... 3, 5

*Licea v. Old Navy, LLC*,
669 F. Supp. 3d 941 (C.D. Cal. 2023).................... 15, 16

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) .................... 4

*Lopez v. Apple, Inc*
519 F.Supp.3d 672 (N.D. Cal. Feb. 10, 2021).................... 14

*Mikulsky v. Noom, Inc*
2024 WL 251171 (S.D. Cal. Jan. 22, 2024) .................... 5

*Moskowitz v. Superior Court*,
137 Cal.App.3d 313, 187 Cal.Rptr. 4 (Cal.Ct.App.1982) .................... 17

*Papenthien v. Papenthien*,
16 F. Supp. 2d 1235 (S.D. Cal. 1998) .................... 10

*Petris v. Sportsman's Warehouse, Inc.*,
736 F. Supp. 3d 260 (W.D. Pa. June 3, 2024) .................... 3

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025).................... 3, 4

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. May 9, 2024).................... 12

*Raynor Bros. v. Am. Cyanimid Co.*,
695 F.2d 382 (9th Cir. 1982) .................... 7

*Riganian v. LiveRamp Holdings Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025).................... 5

*Rodriguez v. Brushfire Records, Inc.*,
2025 WL 3692144 (C.D. Cal. Dec. 15, 2025).................... 5

*Shah v. Capital One Financial Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025).................... 1, 11, 12, 16

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) .... 14

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) .... 2

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025).... 19, 20

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024).... 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .... 3

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) .... 16

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) .... 2

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .... 12

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .... 11

*Taylor v. ConverseNow Technologies, Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) .... 15

*Thomas v. Papa John's Int'l, Inc.*
2024 WL 2060140 (S.D. Cal. May 8, 2024) .... 18

*Torres v. Prudential Financial, Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025).... 16

*Tourgeman v. Collins Fin. Servs., Inc.*,
2009 WL 6527758 (S.D. Cal. 2009).... 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .... 3, 6

*United States v. Page*,
116 F.4th 822 (9th Cir. 2024).... 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F.Supp.3d 751 (N.D. Cal. May 24, 2023) .... 16

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023).... 16

*Valley Bank of Nev. v. Superior Court*,
15 Cal.3d 652 (1975) .......... 17

*Zocco v. Nelnet, Inc.*,
2026 WL 242037 (N.D. Cal. Jan. 29, 2026 .......... 19

**STATUTES**

18 U.S.C. § 2511(2)(d) .......... 11

Cal. Const. art. I, § 1 .......... 17

Cal. Fin. Code § 4050 .......... 3, 12

Cal. Fin. Code § 4051 .......... 1

Cal. Fin. Code § 4051(b) .......... 17

Cal. Fin. Code § 4052 .......... 18

Cal. Fin. Code § 4052.5 .......... 17

Cal. Fin. Code §§ 4053, 4056 .......... 13

Pub. L. No. 106-102, 113 Stat. 1338 (1999) .......... 17

**RULES**

Fed. R. Civ. P. 3 .......... 7

Fed. R. Civ. P. 8(a)(2) .......... 2

Fed. R. Civ. P.12(b)(1) .......... 2

Fed. R. Civ. P. 12(b)(6) .......... 2

Fed. R. Civ. P. 15 .......... 8

Fed. R. Civ. P. 15(c) .......... 7

Fed. R. Civ. P. 15(c)(1) .......... 7

Fed. R. Civ. P. 15(c)(1)(B) .......... 7

**REGULATIONS**

16 C.F.R. § 313 .......... 1

16 C.F.R. § 313.3 .......... 3, 12, 17, 18

16 C.F.R. §§ 313.4–313.9 .......... 13

## INTRODUCTION

Congress and the California Legislature recognize the importance of maintaining the privacy of consumers' sensitive personal and financial information when applying for and using financial products and services. *See* 16 C.F.R. § 313; Cal. Fin. Code § 4051; *see also Shah v. Capital One Financial Corp.*, 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025) (finding that the defendant financial institution violated the ECPA and CIPA by intercepting and unlawfully disclosing the plaintiffs' personal and financial information); *Garcia v. Truist Fin. Corp.*, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) (same); *Allison v. PHH Mortg.*, 2026 WL 1353827 (N.D. Cal. May 14, 2026) (denying motion to dismiss ECPA claim); *Allison v. PHH Mortgage*, 2026 WL 899438 (N.D. Cal. Mar. 27, 2026) (finding "[defendant] acted with the purpose of committing an invasion of privacy tort" sufficient to deny dismissal of the ECPA claim). Despite such duties to prevent consumers' private information from disclosure, Defendant Better Home & Finance Holding Company ("Defendant") unlawfully intercepts and discloses the personal and financial information of consumers applying for loans on its website to LinkedIn Corporation and Google LLC, unknown third parties. *See generally* First Amended Complaint ("FAC") (ECF No. 41).

Plaintiff Shawn Miller ("Plaintiff") is a resident of California who accessed Defendant's website www.better.com (the "Website") to apply for a home loan in or around January and February of 2024. FAC ¶¶ 1, 5–6. Unbeknownst to Plaintiff, the confidential information he provided in connection with his loan application was intercepted by Defendant through its use of the LinkedIn Insight Tag and Google Analytics, and simultaneously disclosed to both LinkedIn and Google. *Id.* This included private information including Plaintiff's loan application status, information related to Plaintiff's property, and Plaintiff's credit score in addition to his PII. *Id.* ¶¶ 5–6; *see e.g.* Figs. 3–15. Such disclosures were not made to provide Plaintiff with services, but rather, to bombard him with harassing targeted advertising and enrich Defendant, LinkedIn, and Google in the process. Such conduct is unlawful under both state and federal law.

Defendant now moves to dismiss Plaintiff's First Amended Complaint. *See* ECF No. 45 ("MTD"). Defendant does not deny that it disclosed consumers' information to LinkedIn and Google. Instead, it largely relies on misstatements of both law and fact, none of which supports

dismissal. For the reasons set forth herein, Plaintiff respectfully requests this Court deny Defendant's Motion to Dismiss in its entirety.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure tests a district court's subject matter jurisdiction. When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1), the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89 (1998)).

Federal Rule of Civil Procedure 12(b)(6) provides a mechanism to test the legal sufficiency of the averments in a complaint. Dismissal is appropriate only when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint, the court must accept all its material allegations as true and construe them in the light most favorable to the non-moving party. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. PLAINTIFF HAS ESTABLISHED ARTICLE III STANDING

Defendant argues that Plaintiff lacks standing to assert his claims because (1) he does not have a legally protected privacy interest in the information disclosed by Defendant and (2) "there is no recognized right to privacy over anonymized data." MTD at 9–11. Not so. Defendant's position relies on misstatements of both law and fact.

To establish a concrete and particularized injury, the injury suffered must be one traditionally recognized by American courts. *Petris v. Sportsman's Warehouse, Inc.*, 736 F. Supp. 3d 260, 270–71 (W.D. Pa. June 3, 2024) ("The focus of the analysis for Article III purposes is the harm, not the cause of action or remedy. In other words . . . [i]t is not necessary . . . for a plaintiff asserting such a claim to plead or establish the elements of a traditional cause of action, but rather, only that an analogous harm exists."). Indeed, the Supreme Court has recognized various intangible harms can be concrete. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Both "disclosure of private information[] and intrusion upon seclusion" constitute "harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* In determining "whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Specifically, the Supreme Court has instructed courts to identify if an alleged injury bears "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Popa v. Microsoft Corp.*, 153 F.4th 784, 792 (9th Cir. 2025) (citing *TransUnion*, 594 U.S. at 424). The Ninth Circuit is in accord, recognizing that, "[v]iolations of the right to privacy have long been actionable at common law." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quotations omitted). This "right to privacy" includes an "individual's control of information concerning his or her person." *Id.* (quotations omitted); *see also Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 862–64 (N.D. Cal. 2026); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1036–41 (S.D. Cal. 2023) (denying a 12(b)(1) motion to dismiss); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 863–67 (N.D. Cal. 2025). Moreover, under both state and federal law, financial service providers, including Defendant, are prohibited from disclosing nonpublic personal information to third parties. 16 C.F.R. § 313.3; Cal. Fin. Code § 4050, *et seq.*; FAC ¶¶ 13–22.

Here, Plaintiff does not allege an injury stemming from a mere "statutory violation," as Defendant suggests. MTD at 8–9. Rather, Plaintiff alleges that he applied for a home loan through Defendant's Website, which required him to share his personally identifiable information and financial information (home address, credit score, loan application type, and property information).

FAC ¶¶ 5, 24, 61, 67, 82–85, Figs. 2–15. Unbeknownst to Plaintiff, "Defendant disclosed his personally identifiable information ('PII') to LinkedIn and Google—including communications that contained Plaintiff's confidential, 'nonpublic personal information' as defined by the GLBA and CalFIPA. Neither Defendant nor LinkedIn nor Google procured Plaintiff's prior consent to the sharing of his private and protected information." FAC ¶ 6. Such disclosures were made for Defendant's own profit at the expense of Plaintiff's privacy. FAC ¶ 91. Plaintiff suffered a concrete injury from this disclosure. FAC ¶¶ 84, 86–90; *see Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–18 (9th Cir. 2020) (ECPA and CIPA "codif[y] a context-specific extension of the substantive right to privacy," the violation of which constitutes a concrete injury sufficient for standing).

The authority relied upon by Defendant is inapposite, as none of those cases concern the disclosure of legally protected financial information. *See Popa*, 153 F.4th at 791 (no standing where plaintiff "identifies no embarrassing, invasive, or otherwise private information collected"—interactions with a pet supply website analogized to "a store clerk's observing shoppers"); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (general browsing activity and device fingerprints insufficient); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (generic mouse movements and keystrokes insufficient).

Plaintiff is not complaining about anonymous browsing data. Rather, he alleges Defendant disclosed to LinkedIn and Google, in real time, his nonpublic personal financial information—address, property information, loan application type, and credit score—alongside PII-laden identifiers. FAC ¶¶ 67, 84–87. This is precisely the "embarrassing, invasive, or otherwise private information" *Popa* identified as necessary to support standing. *Compare Popa*, 153 F.4th at 791 n.5; *with Garcia v. Truist Fin. Corp.*, 2026 WL 972328, at *6 (parallel facts involving financial institution's LinkedIn Insight Tag; finding Article III standing) (citing *Popa*, 153 F.4th at 791 n.5); *accord Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *5 (S.D. Cal. Mar. 12, 2026) (collecting cases). The remaining post-*Popa* decisions Defendant strings together are inapposite for the same reason: each concerned only generic browsing data or information typed into a text box, untethered to any legally protected interest, rather than the real-time disclosure of nonpublic financial

information that is at issue here. *See, e.g.*, *Rodriguez v. Brushfire Records, Inc.*, 2025 WL 3692144, at *6–7 (C.D. Cal. Dec. 15, 2025) (vague allegations of harm untethered to plaintiff's actual interactions); *Garcia v. Blackhawk Network, Inc.*, 2026 WL 925028, at *6 (C.D. Cal. Apr. 1, 2026); *Herzman v. Smile Brands Inc.*, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026). Unlike those plaintiffs, Plaintiff alleges the disclosure of his nonpublic financial information—made confidential as a matter of law by the GLBA and CalFIPA—tied to identifiers that render him identifiable. FAC ¶¶ 67, 84–87.

Defendant's argument that its disclosures were "anonymized" is belied by Plaintiff's allegations, which demonstrate the opposite. *See* FAC ¶¶ 6, 44–48, 67–76, 84–87. Defendant's reliance on *Mikulsky v. Noom, Inc.* is inapposite. *Mikulsky* concerned technology incapable of identifying users, where the plaintiff's activity was "basically anonymous" because she never entered her name or contact information. 2024 WL 251171, at *5 (S.D. Cal. Jan. 22, 2024). Here, the Google Client ID ("cid") "identif[ies] users as they navigate the Website," FAC ¶ 68; Google matches intercepted identifiers "to an individual's specific identity," FAC ¶¶ 74–76; browser fingerprinting identifies users with 99.24% accuracy. FAC ¶ 73. And the LinkedIn lms_ads and li_sugr cookies connected the disclosures to each applicant's named LinkedIn profile. FAC ¶¶ 6, 85. A user ID "can constitute PII where it leads to [a profile] that discloses personal and identifying information about the consumer." *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). "Where anonymity is rendered 'functionally meaningless,' lower courts have found 'pseudonymization' arguments unpersuasive." *Krzyzek v. OpenX Techs., Inc.,* 817 F. Supp. 3d 857, 864 (N.D. Cal. 2026) (citing *Riganian v. LiveRamp Holdings Inc.*, 791 F. Supp. 3d 1075, 1086–87 (N.D. Cal. 2025)). The privacy injury occurred the moment Defendant transmitted Plaintiff's communications without consent, nothing more is required. *Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 579 (N.D. Cal. 2025) ("Our case law underscores the principle that the privacy injury occurs at the point of interception without consent, irrespective of whether the misappropriated data is anonymized.").

Defendant's remaining arguments fare no better. Its "recycled loan application" argument, that standing is defeated because this FAC uses the same examples, conflates standing with the merits and finds no support in Article III doctrine. MTD at 11. Plaintiff personally accessed the Website, shared his own address and credit score, and maintained his own LinkedIn and Google accounts. FAC ¶¶ 5–6. Nothing more is required. Defendant's insinuation that the Amended Complaint's screenshots bear the same time stamp as those in the *Leanos* Complaint and that the property "may not even be his" only demonstrates its misunderstanding of Plaintiff's allegations. The exemplar screenshots are intended to demonstrate the functionality of the Google and LinkedIn tracking technologies Defendant installed on its Website. *See generally* FAC Figs. 3–15. Read together with Plaintiff's allegations that he personally visited the Website and submitted his own information (FAC ¶¶ 5–6) while the Google and LinkedIn tracking technologies were installed on the Website, and drawing all reasonable inferences in Plaintiff's favor, the exemplar screenshots plausibly illustrate how the Google and LinkedIn tracking functionality operated when Plaintiff visited the Website and submitted his own information.

Defendant's devaluation argument is similarly unavailing. MTD at 11. Plaintiff does not rely on a theory of devaluation. Rather, Plaintiff's standing rests on loss of control over legally protected financial information—a concrete harm grounded in the common law torts *TransUnion* recognized as traditional bases for Article III. 594 U.S. at 425. That harm is independently established irrespective of any devaluation theory. *See Frasco*, 349 F.R.D. at 580 ("the loss of control over one's personal information is the 'concrete' harm"); *Hassid v. Alex & Ani, LLC*, 2026 WL 160535, at *2 (C.D. Cal. Jan. 20, 2026) ("Defendant contends that plaintiff has not alleged an injury in fact sufficient to confer standing because the Complaint contains only 'general allegations about what might happen if someone were to visit the Website,' and merely 'describes hypothetical users and visitors, and relies on general screenshots of unknown origin' . . . . Defendant's contentions are unpersuasive.").

## II. PLAINTIFF'S CLAIMS ARE TIMELY

Defendant next argues Plaintiff Miller's claims must be dismissed because Plaintiff's ECPA and invasion of privacy claims—which carry a two-year statute of limitation—"are based on purported acts that occurred outside the two-year statute of limitations." MTD at 12. That is wrong.

Defendant's position presupposes the date of the statute of limitations is May 14, 2026, the date the First Amended Complaint was filed (ECF No. 41), not the date that this action commenced, September 16, 2025 (ECF No. 1). This is fatal to its position. A court may only dismiss a complaint on statute of limitations grounds "when 'the running of the statute is apparent on the face of the complaint.'" *United States v. Page*, 116 F.4th 822, 829 (9th Cir. 2024). Here, the record is dispositive. Defendant measures the two years from the FAC's filing date, May 14, 2026 (MTD at 12), but a claim is timely if the action was commenced within the limitations period, and a federal action is commenced when the complaint is filed. Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court"). Accordingly, this action was commenced on September 16, 2025. ECF No. 1.

As the Ninth Circuit recognized in *Raynor Bros. v. Am. Cyanimid Co.*, 695 F.2d 382, 384 (9th Cir. 1982):

> An amendment substituting defendants relates back to the time of filing of the original complaint when: (1) the claim in the amended pleading arises out of the same conduct as that in the original pleading, and (2) the substituted party has notice and is not prejudiced by the amendment. Fed.R.Civ.P. 15(c). While Rule 15(c) speaks only of a change in defendants, it applies by analogy to the substitution of plaintiffs.

Rule 15(c)(1) of the Federal Rules of Civil Procedure, as amended, supports this position:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is

> satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rather than acknowledge the Amended Complaint relates back to the commencement of the action, Defendant instead puts forth an untenable position the Supreme Court sought to curb in *American Pipe* when it held "the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action" *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974).[1] Plaintiff Miller is a member of the class Plaintiff Leanos pleaded— "a natural person with LinkedIn and/or Google accounts who accessed the Website and applied for one of Defendant's financial products." Compare ECF No. 1 at ¶ 100 *with* FAC ¶¶ 5–6, 100. His claims accrued, at the latest, upon his January to February 2024 visit (FAC ¶ 5), so they were less than twenty months old when this action was filed and well within the two-year period, as he was previously a member of the class Leanos sought to represent such that the statute of limitations was tolled. The filing stopped the clock, and the claims have remained tolled since.

Courts in this District are in accord. *Bos. Ret. Sys. v. Uber Techs., Inc.*, 2021 WL 4503137, at *1 (N.D. Cal. Oct. 1, 2021) ("At issue in this motion, however, is the addition of new plaintiffs to an existing class action, not the filing of a new class action. This motion is therefore governed by Federal Rule of Civil Procedure 15 and the doctrine of relation back, not the holding in *China Agritech*. As multiple Courts of Appeals have now held, nothing in *China Agritech* indicates that a new plaintiff cannot join an existing class action, which is what the New Plaintiffs seek to do in this litigation. The motion to dismiss the claims of the New Plaintiffs is therefore denied."); Kempf

---

[1] *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018) does not compel a different result as this is not a successive class action. Rather, it supports Plaintiff's position as the Supreme Court affirmed "[t]he watchwords of American Pipe are efficiency and economy of litigation, a principal purpose of Rule 23 as well." *China Agritech* 84 U.S. 732, 748.

v. Apple Inc., 2026 WL 765332, at *9 (N.D. Cal. Mar. 18, 2026) (explaining *Bos. Ret. Sys. v. Uber Techs., Inc.* recognized tolling was proper where "new named plaintiffs were asserting the exact same claims as the existing named plaintiffs on behalf of the same putative class, so the consolidated cases represented one, ongoing action").

Defendant's relation-back authorities do not compel a different result. Defendant first invokes the earlier *Gillean* action filed in the Central District of California (MTD at 16 n.7), but this is a red herring. Plaintiff does not rely on *Gillean*, Plaintiff relies on the original Leanos complaint which commenced this action. ECF No. 1. Defendant next posits because Plaintiff's allegations include the same loan application and the same 405-unit condominium address recur across the pleadings (MTD at 2, 5, 10–11), insinuating gamesmanship. That too is a red herring. Relation back turns on whether the amended pleading arises from the same conduct, transaction, or occurrence. Here, Plaintiff Miller is a member of the class Plaintiff Leanos sought to represent. ECF No. 1 at ¶ 100. His claims are identical to Plaintiff Leanos' (less those that fell within a one-year statute of limitations). If anything, the similarities between the Complaint and the First Amended Complaint confirm Plaintiff Miller's claims comply with the statute of limitations.

The same holds true for Plaintiff Miller's invasion of privacy claim, which is based on state law. *Cf. Hildebrandt v. Staples the Off. Superstore, LLC,* 58 Cal. App. 5th 128, 145 (2020) ("Tolling is therefore appropriate, and the statute of limitations must give way to the stronger consideration: protection of the class action device."); *Branick v. Downey Sav. & Loan Assn.*, 39 Cal. 4th 235, 243, 138 P.3d 214, 219 (2006) ("Courts have permitted plaintiffs who have been determined to lack standing, or who have lost standing after the complaint was filed, to substitute as plaintiffs the true real parties in interest. . . . .The relation-back doctrine for the statute of limitations requires that the amended complaint must (1) rest on the same general set of facts, (2) involve the same injury, and (3) refer to the same instrumentality, as the original one. The important limitation on the rule just mentioned is that the plaintiff proposed to be substituted may not 'state facts which give rise to a wholly distinct and different legal obligation against the defendant.'"); *Hutcheson v. Superior Ct.*, 74 Cal. App. 5th 932, 940, 290 Cal. Rptr. 3d 60, 66

(2022) ("Relation back may apply to amendments that substitute a plaintiff. . . . For example, if a plaintiff is determined to have lacked standing, or if a plaintiff loses standing after the complaint is filed, the plaintiff may amend the complaint to substitute a new plaintiff with standing.").

Defendant's remaining cases do not compel a different result. *Papenthien* refused relation back where a single plaintiff "did not timely file her original complaint," it did not contemplate relating back in class actions where the class members' claims are tolled. *See generally Papenthien v. Papenthien*, 16 F. Supp. 2d 1235 (S.D. Cal. 1998). In fact, none involved a putative class member whose own claims were timely when the class action was filed, continuing the same action as the substituted representative. *Boggs v. 3M Co.*, 527 F. App'x 415 (6th Cir. 2013); *Henderson v. Bolanda*, 253 F.3d 928 (7th Cir. 2001); *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999 (9th Cir. 2014). Defendant was put on notice of the class claims with the filing of the Leanos Complaint which was timely as to Plaintiff Miller's claims. The Court held only that ***Leanos's*** claims were untimely because ***she*** visited in 2022. ECF. 37 at 9–12. Timeliness is plaintiff and claim-specific, and that ruling says nothing about the timely claims of 2024 class members like Miller, nor can Defendant flout its liability by improperly narrowing a class whose claims were tolled when the Leanos Complaint was filed.

Because the filing date resolves timeliness, the Court need not address Defendant's tolling or fraudulent concealment arguments. Here, the Court should find Plaintiff Miller's claims are timely because "[a] contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Am. Pipe* 414 U.S. 538, 554.

## III. PLAINTIFF SUFFICIENTLY PLEADS HIS CLAIMS

### A. Defendant Intercepted Plaintiff's Communications For A Criminal Or Tortious Purpose

Defendant argues the consent exemption to the ECPA applies because Defendant was a party to the communication. *See* MTD at 16. However, as conceded by Defendant, the party exception does not apply if the "communication is intercepted for the purpose of committing any

tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). In other words, if Defendant intercepted and disclosed Plaintiff's communications "for the purpose of committing any tortious or criminal act," it cannot escape liability. The crime-tort exception focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Companies, Inc*., 186 F.3d 1200, 1202 (9th Cir. 1999) (emphasis in original) (internal quotations and citations omitted). Defendant's suggestion that any alternative theory of interception by LinkedIn or Google necessarily fails because Defendant "integrated" the Tracking Technologies onto its Website misapprehends both facts and law. MTD at 17 n.8. A party's consent to an interception does not immunize the conduct where, as alleged here, the interception was undertaken for a tortious purpose; the crime-tort exception applies regardless of which entity is characterized as the interceptor. 18 U.S.C. § 2511(2)(d). Critically, here Plaintiff alleges ***Defendant*** embedded Google and LinkedIn Tracking Technologies into the Website, and ***Defendant*** used the Tracking Technologies to intercept and disclose Plaintiff's and Class Members' confidential communications to the undisclosed third parties via these technologies. FAC ¶¶ 8 ("Defendant chose to embed LinkedIn and Google's tracking technology on the Website, which it owns and maintains."), *id*. ¶ 86 ("In other words, and as shown above, Plaintiff's communications with Defendant were disclosed by Defendant to LinkedIn and Google and/or intercepted in transit by LinkedIn and Google, in real time, via detailed URLs and event data, which contain the nonpublic personal information and personally identifiable information entered into the Website ").

*Shah v. Capital One Financial Corporation*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) is instructive. In *Shah*, the plaintiff alleged that the defendant installed third party tracking software, including tracking software from Google, that intercepted private information related to his account information. *Id.* at 1041. There, the court denied the defendant's motion to dismiss, holding the defendant's actions of intercepting and disclosing communications without consent were allegedly tortious. *Id.* at 1053. Here, the same result is warranted where Plaintiff alleges Defendant disclosed his personally identifiable information and sensitive financial information in violation of

the Gramm-Leach-Bliley Act (the "GLBA") (16 C.F.R. § 313.3) and the California Financial Information Privacy Act ("CalFIPA") (Cal. Fin. Code § 4050, *et seq*.). FAC ¶¶ 20–26, 79–86; *see also Allison v. PHH Mortg*., 2026 WL 1353827, at *11 (holding for purposes of the ECPA the plaintiff adequately alleged the crime-tort exception); *Garcia*, 2026 WL 972328, at *10 (finding the plaintiff had alleged a criminal or tortious purpose where "Truist chose to embed the LinkedIn Insight Tag on its Website, which it owns and operates, . . . and, with this tag, Truist then disclosed to LinkedIn sensitive and confidential information provided by consumers, . . . . Therefore, when viewing the facts in Garcia's favor, the Court finds that Garcia has plausibly alleged that Truist's purpose was, at the very least, tortious, thereby satisfying the crime-tort exception.") (cleaned up).

Defendant posits that "Plaintiff does not explain what Better has done to purportedly violate" the GLBA and CalFIPA. MTD at 18. Not so. *See* FAC ¶ 84 ("Defendant shares its applicants' PII and financial information (specifically, the applicant's address, property information, loan application type, and credit score) with its advertising partners" which "allows LinkedIn and Google to know the identities of specific individuals as well as information related to the financial services they are receiving. This allows these companies, including Defendant, to profit from this information for targeted advertising purposes.").

Defendant's argument that its motivation for disclosing Plaintiff's protected information was for monetary gain such that it is insulated from liability has been repeatedly rejected by courts within this Circuit and across the country. *See Shah*, 768 F. Supp. 3d at 1053 ("However, Plaintiffs also allege that Defendant intercepted the contents of the electronic communications for an unauthorized purpose, which resulted in tortious acts. Because Defendant's actions are allegedly tortious, the one-party exception does not apply."); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. May 9, 2024) ("But even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law."); *Stein v. Edward-Elmhurst Health,* 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("The existence of a financial motivation (on the one hand) and a

criminal or tortious motivation (on the other hand) are not mutually exclusive."); *Cooper v. Mount Sinai Health Sys., Inc.,* 742 F. Supp. 3d 369, 381–82 (S.D.N.Y. 2024) (finding the plaintiff's allegations "plausibly support the inference that [defendant], for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain."). This Court should do the same.

Nor do the GLBA and CalFIPA exceptions Defendant invokes defeat the crime-tort exception at the pleading stage. MTD at 18. Those statutory exceptions permit disclosure only in defined circumstances—for example, to perform a service the consumer has requested, or with the ***consumer's consent***[2] following a compliant privacy notice. 16 C.F.R. §§ 313.4–313.9; Cal. Fin. Code §§ 4053, 4056. Plaintiff alleges that none of those circumstances is present: the disclosures here were made to LinkedIn and Google to facilitate targeted advertising—not to service Plaintiff's loan application—and without Plaintiff's consent. FAC ¶¶ 6, 84, 91. Whether a statutory exception applies is an affirmative defense that Defendant cannot establish on the face of the FAC, and Plaintiff's well-pleaded allegations that the disclosures fell outside any authorized purpose must be accepted as true at this stage. *See Garcia*, 2026 WL 972328, at *10 (finding a tortious purpose adequately pled where a financial institution disclosed confidential consumer information to LinkedIn via the Insight Tag).

**B. Defendant Intercepted And Disclosed Plaintiff's Confidential Communications**

Defendant argues that Plaintiff's claims under the Wiretap Act fail because he does not allege the disclosure of "identifying information." MTD at 19. That is wrong.

Plaintiff's allegations detail precisely how the Tracking Technologies operate and how Defendant used them to intercept and disclose Plaintiff's PII, financial information, and nonpublic personal information to Google and LinkedIn. FAC ¶¶ 47–52 As discussed *supra*, the LinkedIn tracking technology utilized by Defendant is "used to link the data collected to the user's LinkedIn

---

[2] Indeed, this court found "this case presents circumstances which resemble more a browsewrap than a clickwrap, such that the hyperlink would likely fail the conspicuous notice test for online agreements to be contractually binding." ECF No. 37 at p. 11.

profile." FAC ¶ 37. Similarly, the Google tracking technology utilized by Defendant captures several pieces of PII, including a consumer's IP address, User ID, and browser-fingerprint. *Id.* ¶¶ 67–74. Due to the vast quantity of data maintained by Google, it can determine a consumer's identity, including Plaintiff's. *Id.*

During the time Plaintiff used Defendant's Website, he maintained accounts with both LinkedIn and Google, which included his full name and identity. *Id.* ¶ 6. By disclosing this PII to LinkedIn and Google, Defendant enabled them to match the intercepted data to Plaintiff's identity. FAC ¶ 84 ("The information shared by Defendant allows LinkedIn and Google to know the identities of specific individuals as well as information related to the financial services they are receiving."); *id.* ¶ 85 ("The information disclosed by Defendant was also accompanied by the lms_ads and li_sugr cookies, whereby LinkedIn could connect the disclosed PII and financial information with the applicant's LinkedIn profile."). Nothing more is required. *Cf. Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023) ("Most, if not all,7 courts to address the question have found at the pleading stage that Facebook IDs are PII."); *Gaige*, 2025 WL 559719, at *4 ("The Court finds that Plaintiff has sufficiently alleged that the IP address, in conjunction with the other specific user information that permitted identification of him, was personally identifiable."); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at *5-6 (N.D. Cal. Oct. 21, 2024) (holding that "Plaintiffs plausibly allege [in a motion to dismiss] that the collection of their IP addresses through the Trackers allows the third parties to obtain personally identifying, non-anonymized information, and that the IP addresses reveal geographical location and other personal information sufficient for third parties to conduct targeted advertising") (internal quotation marks and citation omitted). Finally, Defendant's reliance on *Lopez v. Apple, Inc.* is inapposite as that case concerned tracking technology unable to identify users. 519 F.Supp.3d 672, 683 (N.D. Cal. Feb. 10, 2021) (allegations related to recording through Apple's Siri software incapable of identifying users).

Defendant's argument that Plaintiff's claims must fail because "Plaintiff recycles the same allegations and application as Leanos and repeats the same information" is a red herring. MTD 19.

The screenshots included in the First Amended Complaint demonstrate how the Google and LinkedIn tracking technologies function on the Website. *See* FAC ¶¶ 73–91, Figs. 3–15. When read in conjunction with Plaintiff's individual allegations (FAC ¶¶ 5–6), it is more than plausible to conclude Defendant disclosed his PII and nonpublic personal information to LinkedIn and Google in the manner described throughout the Complaint. It would make no sense to require a plaintiff to conduct and preserve a forensic analysis of a website visited—let alone know how to perform such—to someday be used in a hypothetical litigation. And it makes even less sense given Plaintiff's allegations that Defendant's conduct is deceptive and unknown to class members.

**C. Defendant Intercepted Plaintiff's Communications In Transit**

Defendant argues that Plaintiff does not "allege that any communication was intercepted while 'in transit.'" MTD at 19. This mischaracterizes Plaintiff's allegations. Under the ECPA and CIPA, "interception[]" of contents "must occur during . . . transmission, not when the communication is in electronic storage." *Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023). On a motion to dismiss, Plaintiff's allegations that Defendant intercepts communications in real-time are to be taken as true. *Id.* ("Defendant argues that Plaintiff's allegations are conclusory and require more factual support. Not so."); *Byars v. Goodyear Tire and Rubber Co.*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. 2023) (same); *Taylor*, 2025 WL 2308483, at *5 (same); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014) (same).

Defendant argues that Plaintiff's allegations confirm that the interception did not occur "in transit" because the tracking technology software collects information after a user arrives on the Website. MTD at 19. Not so. Plaintiff's allegations about the LinkedIn and Google tracking technologies satisfy the "real-time" requirement. *See* FAC ¶¶ 47–52 (detailing how Website communications work). Plaintiff goes to great lengths to explain how the LinkedIn Insight Tag and Google tracking software are used to intercept communications in real-time. FAC ¶¶ 27–78. The screenshots in the First Amended Complaint detail examples of how each interaction on the Website is intercepted and disclosed simultaneously, by including an example of the consumer-facing action with the contemporaneous disclosures to Google and LinkedIn. FAC, Figures 2–15.

The only plausible inference from Plaintiff's description of the technology is that interception occurred "during transmission." Courts have found similar allegations to satisfy the "in transit" requirement. *Compare Doe v. Eating Recovery Ctr. LLC*, 806 F.Supp.3d 1109, 1117 (N.D. Cal. 2025) (rejecting an argument on *summary judgment* that *filtering* information is contemporaneous interception); *with Licea v. Old Navy, LLC*, 669 F. Supp. 3d 941, 946 (C.D. Cal. 2023) ("Plaintiff has pled sufficient facts to allege his communications were intercepted in transit."); *St. Aubin v. Carbon Health Techs., Inc*., 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) ("At the motion to dismiss stage, a plaintiff is not required to allege how and when their communications are captured"); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 1078–79 (C.D. Cal. 2023) ("[Plaintiff] did not simply recite that there was real time interception, she added detail on how it occurs["); *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1053 ("Plaintiffs also sufficiently allege that Defendant accessed the communications in transit and provide details on how Defendant installed third-party trackers on its website"); *see also* FAC ¶¶ 61 (alleging the "code immediately intercepts a user's interaction with the webpage every time the user visits it"), *id*. ¶¶ 47–52, 82. Defendant's argument that Google and LinkedIn "capture data only for later use and analysis" disregards the allegations in Plaintiff's well-pleaded Complaint. *Compare* MTD at 21 *with* FAC ¶¶ 47–52.

Defendant's authority does not compel a different result. Defendant's authority concerns different technologies, rather than the advertising technologies at issue here. *See Jones v. Tonal Systems, Inc.*, 751 F.Supp.3d 1025, 1029 (S.D. Cal. Sept. 30, 2024) (allegations related to chat feature on website); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 754 (N.D. Cal. May 24, 2023) (same); *Torres v. Prudential Financial, Inc.*, 2025 WL 1135088, at *6-7 (N.D. Cal. Apr. 17, 2025) (allegations related to session replay software).

### D. Plaintiff States a Claim for Invasion of Privacy

To state a claim for invasion of privacy under the California Constitution, a plaintiff need only plead (1) a legally protected privacy interest, (2) a reasonable expectation for privacy, and (3) that the intrusion is so serious as to amount to an egregious breach of the social norms. *In re*

*Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citation omitted). As a threshold matter, Defendant is wrong that the invasion-of-privacy claim rises or falls entirely with the Wiretap Act claim. MTD at 21. The constitutional privacy claim is independently pleaded and, as shown below, satisfies each element on its own terms. In any event, because Plaintiff has adequately pleaded his Wiretap Act claim, *see supra*, Defendant's derivative theory fails for the same reason.

***First***, Plaintiff alleges a legally protected privacy interest in his financial information, including, but not limited to, his credit score. FAC ¶¶ 134 ("The highly sensitive and personal information of Plaintiff . . . consists of private and confidential facts and information regarding Plaintiff's . . . financial services that were never intended to be shared beyond private communications on the Website and the consideration of finance professionals."), *id.* ¶¶ 5, 12–22, 84–85, 136–46; *see also Smith v. YETI Coolers, LLC,* 754 F. Supp. 3d 933, 944–45 (N.D. Cal. 2024) (finding the plaintiff had a legally protected privacy interest in sensitive financial information and personally identifiable information); *Garcia*, 2026 WL 972328, at *12 (same); *Tourgeman v. Collins Fin. Servs., Inc.*, 2009 WL 6527758, at *3 (S.D. Cal. 2009) ("There can be little question that [p]laintiff has a legally protected privacy interest in his private financial information."); *Valley Bank of Nev. v. Superior Court*, 15 Cal.3d 652, 656 (1975) ("[W]e may safely assume that the right of privacy extends to one's confidential financial affairs"); *Moskowitz v. Superior Court,* 137 Cal.App.3d 313, 187 Cal.Rptr. 4, 6 (Cal.Ct.App.1982) ("Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution.").

That interest is reinforced by the GLBA and CalFIPA, which make "nonpublic personal information" confidential as a matter of law. 16 C.F.R. § 313.3; Cal. Fin. Code § 4052.5; FAC ¶¶ 24–34. Indeed, CalFIPA expressly declares the California Legislature's intent in enacting CalFIPA was "to afford persons greater privacy protections than those provided in Public Law 106-102, the federal Gramm-Leach-Bliley Act." FAC ¶ 17 (citing Cal. Fin. Code § 4051(b)). Simply put the

statutory privacy interests created by the GLBA and CalFIPA bolster the common-law privacy interest California courts have long recognized in confidential financial affairs.

***Second***, Plaintiff's expectation in the privacy of his financial information is reasonable. Indeed, Plaintiff's privacy interest arises from Defendant's disclosures of sensitive and confidential financial information and PII including: (1) his identity, (2) address, (3) credit score, (4) type of loan applied for, (5) device information, and (6) property information. *See* FAC ¶¶ 2, 5–6, 23–26, 79–91. This is precisely the type of information people possess a reasonable expectation of privacy over, which is bolstered by its protected status under both the GLBA and CalFIPA. *See* 16 C.F.R. § 313.3 (The Gramm-Leach-Bliley Act, making nonpublic personal information confidential); *see also* Cal. Fin. Code § 4052 *et seq*. (protecting from disclosure nonpublic personal information to third parties without explicit prior consent of the consumer).

Defendant's contention that Plaintiff manifested consent simply by voluntarily providing information during online commercial activity misunderstands the claim. MTD at 22. The question is not whether Plaintiff expected Defendant to receive the information he submitted to apply for a loan, but whether he reasonably expected that his nonpublic financial information would be simultaneously intercepted and disclosed by Defendant to third-party advertisers—LinkedIn and Google—without his consent. *Thomas v. Papa Johns Int'l, Inc.*, on which Defendant relies, is inapposite: there the information was knowingly provided to the very third party that received it, whereas here Plaintiff never consented to any disclosure to LinkedIn or Google, and the GLBA and CalFIPA render that nonpublic information confidential as a matter of law. 16 C.F.R. § 313.3; Cal. Fin. Code § 4052. Crucially, the *Thomas* court recognized there is a reasonable expectation of privacy in financial information. *See* 2024 WL 2060140, at *5 (S.D. Cal. May 8, 2024) (citing *Doyle v. State Bar*, 32 Cal. 3d 12, 19, 184 Cal.Rptr. 720, 648 P.2d 942 (1982)).

***Third***, Defendant's disclosure constituted an "egregious breach of privacy." Determining what is highly offensive to a reasonable person requires a "holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion . . . social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 606

(9th Cir. 2020) ("The ultimate question of whether [defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (same). A holistic consideration in this case should lead to the determination that Plaintiff's data constitutes an egregious breach.

*Zocco v. NelNet,* Inc. is instructive. There, the court reasoned:

> Plaintiffs allege that Nelnet shared "private and confidential facts and information regarding Plaintiff[s'] ... financial services," and PII that Plaintiffs never intended to be shared "beyond private communications on the Website and the consideration of finance professionals." According to the complaint, the "information shared by [Nelnet] allows Google to know the identities of specific individuals as well as information related to the financial services they are receiving." "For example, when a consumer logs into their Nelnet account and makes a payment or opts for repayment options, [Nelnet] discloses such information to Google through its use of Google Analytics." Against this backdrop, Plaintiffs have identified sufficient facts to survive a motion to dismiss.

*Zocco v. Nelnet, Inc.*, 2026 WL 242037, at *8 (internal citations omitted).

Defendant's caselaw is unavailing. Defendant relies on a number of cases concerning routine commercial behavior that is not legally protected (*see Folgelstrom v. Lamps Plus, Inc.*, 195 Cal.App.4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of Lamps Plus obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements. This conduct is not an egregious breach of social norms, but routine commercial behavior")) and cases that contain insufficient information as to what was allegedly disclosed. *See Hammerling v. Google LLC*, 615 F.Supp.3d 1069, 1091 (N.D. Cal. July 18, 2022) ("The lack of details as to how Google could attain the intimate information renders implausible what might otherwise be the strongest allegation of highly offensive conduct"). Contrastingly, here, contemporary social norms are far more likely to render the disclosure of nonpublic personal information, and sensitive financial information (e.g. loan application status and credit score information) for instance, as being highly offensive. *See e.g.* FAC ¶ 91 ("Such disclosures are an invasion of privacy.").

Crucially, Defendant's disclosure goes beyond "routine commercial behavior." MTD at 23. Plaintiff clearly alleges with detailed screenshots, Defendant, through LinkedIn's and Google's tracking technologies, disclosed, at a minimum, Plaintiff's and other borrowers' IP addresses, device information, User-IDs, along with their nonpublic financial interactions with the Website. FAC ¶¶ 23–91; Figs 2–15. This information allows LinkedIn and Google to link a user's specific identity to their nonpublic financial interactions with Defendant in violation of the GLBA and CalFIPA. *Id.* At a minimum, whether the intrusion is highly intrusive is not fit to be resolved at the pleadings stage. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *3 (N.D. Cal. Apr. 4, 2025) (explaining open factual questions pertaining to the degree of offensiveness such as "the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive" should not be resolved in a motion to dismiss). Accordingly, Plaintiff requests the Court deny Defendant's motion to dismiss Plaintiff's invasion of privacy claim.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny Defendant's motion to dismiss in its entirety. Should the Court find dismissal of any claims warranted, Plaintiff respectfully seeks leave to cure any such deficiencies.

Dated: June 25, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Philip L. Fraietta*
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
50 Main Street, Suite 475
White Plains, NY 10606
Tel: (914) 874-0710
Fax: (914) 206-3656
E-Mail: pfraietta@bursor.com

*Counsel for Plaintiff*