**MANATT, PHELPS & PHILLIPS, LLP**
BRANDON P. REILLY (Bar No. CA 278012)
BReilly@manatt.com
KYLA NÚÑEZ (Bar No. CA 329484)
knunez@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone: 916.552.2300
Facsimile: 916.552.2323

MATTHEW F. BRUNO (*Pro Hac Vice*)
mbruno@manatt.com
7 Times Square
New York, New York 10036
Telephone: 212.790.2701

*Attorneys for Defendant*
Better Home & Finance Holding Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHAWN MILLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BETTER HOME & FINANCE HOLDING COMPANY,<br><br>Defendant. | Case No.: 3:25-CV-07893-EMC<br><br>Assigned to Hon. Edward Chen<br><br>**DEFENDANT BETTER HOME & FINANCE HOLDING COMPANY'S REPLY IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Filed with Reply Request for Judicial Notice and Declaration of Brandon P. Reilly<br><br>Hearing Date: July 30, 2026<br>Time: 1:30 PM<br>Courtroom: 5<br><br>Complaint Filed: September 16, 2025<br>Trial Date: None Set |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. ARGUMENT ..... 2
A. Plaintiff Admits His Claims Are Untimely ..... 2
1. The Relation Back Doctrine Does Not Apply to An Untimely Original Complaint. ..... 3
2. Plaintiff Concedes He Did Not Act With Reasonable Diligence ..... 4
B. Plaintiff Cannot Establish Article III Standing ..... 5
C. Plaintiff's ECPA Claim Fails Because He Has Not Alleged that Better Had a Criminal or Tortious Purpose ..... 8
D. Plaintiff Does Not Allege Interception in Transit Under ECPA of His Confidential Communications. ..... 11
E. Plaintiff's Opposition Does Not Save His Invasion of Privacy Claim ..... 13
III. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

Page

### CASES

*Allison v. PHH Mortg.*,
No. 25-CV-05323-RFL, 2026 WL 1353827 (N.D. Cal. May 14, 2026) ............................... 10

*Am. Pipe & Constr. Co. v. Utah*,
414 U.S. 538 (1974) ............................................................................................... 1, 3

*Ardente, Inc. v. Shanley*,
No. C 07-4479 MHP, 2010 WL 546485 (N.D. Cal. Feb. 10, 2010) ....................................... 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................... 5, 8

*Bolton v. First Advantage LNS Screening Sols., Inc.*,
No. 14 Civ. 5735(PAC), 2015 WL 4039834 (S.D.N.Y. July 1, 2015) .......................... 3, 5, 13

*Boston Ret. Sys. v. Uber Tech., Inc.*,
2021 WL 4503137 (N.D. Cal. Oct. 1, 2021) ........................................................... 3, 4

*Branick v. Downey Savings & Loan Ass'n*,
39 Cal.4th 235 (2009) ................................................................................................ 4

*Chandra v. Prager Univ. Found.*,
No. 2:25-CV-03984-MCS-SK, 2025 WL 3049870 (C.D. Cal. Oct. 21, 2025) ....................... 7

*China Agritech v. Michael H. Resh*,
584 U.S. 732 (2018) ................................................................................................... 3

*DellaSala v. Samba TV, Inc.*,
No. 3:25-CV-03470-JSC, 2025 WL 3034069 (N.D. Cal. Oct. 30, 2025) .............................. 15

*Doe v. Eating Recovery Ctr.*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........................................................................ 12

*Doe v. Talkiatry Mgt. Services, LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) .......................................................................... 9

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) .............................................. 14

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) .................................................................. 13

*Garcia v. Anschutz Ent. Group, Inc.*,
No. 5:25-CV-02282-SSS-DTBX, 2026 WL 1278912 (C.D. Cal. May 5, 2026) ...................... 9

*Garcia v. Truist Fin. Corp.*,
No. 2:25-CV-05753-MEMF-PVC, 2026 WL 972328 (C.D. Cal. Mar. 25, 2026) ........ 7, 10, 14

*Gillean v. Better Home & Fin. Co.*,
No. 5:25-cv-01573-SB-MAR (C.D. Cal.) ................................................................. 7, 12

*Heerde v. Learfield Comm's, LLC*,
741 F. Supp. 3d 849 (2024) ... 13

*Hernandez-Silva v. Instructure, Inc.*,
No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210 (C.D. Cal. Aug. 4, 2025) ... 12

*Herzman v. Smile Brands Inc.*,
No. 25-CV-03400-H-BLM, 2026 WL 1110698 (S.D. Cal. Apr. 23, 2026) ... 8

*Hildebrandt v. Staples, the Office Superstore, LLC*,
58 Cal. App. 5th 128 (2020) ... 4

*Hutcheson v. Superior Ct.*,
74 Cal. App. 5th 932 (2022) ... 4

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ... 9

*In re Google Inc. Gmail Litig.*,
No. 13–MD–02430–LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ... 10

*J.S. v. Spring Fertility Holdings, LLC*,
No. 5:24-CV-07374-EJD, 2026 WL 1483490 (N.D. Cal. May 27, 2026) ... 9

*Jones v. Skullcandy, Inc.*,
2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ... 7, 8

*Krantz v. Old Copper Co., Inc.*,
794 F. Supp. 3d 724 (C.D. Cal. 2025) ... 3

*L.B. v. LinkedIn Corp.*,
No. 5:24-CV-06832-EJD, 2025 WL 2899514 (N.D. Cal. Oct. 10, 2025) ... 11

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ... 6, 8, 15

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) ... 10

*Robbins v. Fluor Corp.*,
835 F.2d 213 (9th Cir. 1987) ... 3

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ... 10

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) ... 14, 15

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ... 11

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ... 12

*Tourgeman v. Collins Fin. Servs., Inc.*,
No. 08-CV-01392 JLS NLS, 2009 WL 6527758 (S.D. Cal. Nov. 23, 2009) ... 14

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 5

*Valley Bank of Nevada v. Superior Ct.*,
15 Cal. 3d 652, 542 P.2d 977 (1975) ........ 14

*Wooten v. BioLife Plasma Servs., L.P.*,
807 F. Supp. 3d 1139 (2025) ........ 15

**STATUTES & RULES**

16 C.F.R. § 313.4, *et seq.* ........ 5

18 U.S.C. §§ 2510 *et seq.* ........ 2, 8, 9, 11

Cal. Civ. Code § 1798.92(c) ........ 6

Cal. Civ. Code § 1798.140(ae)(1)(B) ........ 6

Cal. Fin. Code § 4050, *et seq.* ........ 5, 9, 11

Cal. Penal Code § 631(a) ........ 11

Fed. R. Civ. P. 12 ........ 11

Fed. R. Civ. P. 15 ........ 3





MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

Plaintiff Shawn Miller's arguments in opposition (the "Opp.") do not save his materially flawed allegations, which warrant dismissal with prejudice.

First, the Opposition fails to overcome the same statute of limitation deficiencies that this Court already identified when it granted Defendant's previous motion to dismiss. (*See generally* Dkt. No. 37.) To begin, Plaintiff abandons two of the three theories of tolling advanced in the FAC—fraudulent concealment and delayed discovery. Instead, he commits to the relation back doctrine but cannot successfully evade settled precedent that recognizes the obvious: the relation back doctrine does not apply when the initial complaint is, itself, untimely. In doing so, Plaintiff overstates the Supreme Court's holding in *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) by arguing that his own tardy claims are somehow tolled by virtue of his predecessor's untimely lawsuit. But that goes far afield of the Supreme Court's reasoning and welcomes the very abusive practices that circuit courts have long condemned—tacking one time-barred class action upon another.

Second, even if the FAC were timely, Plaintiff unsuccessfully attempts to salvage his claims by misstating and overstating his own allegations to manufacture Article III standing, an Electronic Communications Privacy Act ("ECPA") violation, and tortious invasion of privacy. But his allegations do not support those claims. For example, despite now arguing in the Opposition that there was disclosure of "PII" and "sensitive financial information," Plaintiff's FAC alleges only the collection of a desired loan type, condominium building address, property type, and credit score range—none linked to any identifying information. This deficiency persists throughout Plaintiff's arguments, including those seeking to save his attempts to allege standing and tortious invasion of privacy. Likewise, Plaintiff still fails to allege the requisite criminal or tortious purpose, relying instead on the mistaken premise that the Gramm-Leach-Bliley Act ("GLBA") and California Financial Information Privacy Act ("CalFIPA") categorically prohibit data sharing. They do not. Moreover, Plaintiff still does not, and cannot, explain how the challenged tracking technology

"intercepts" information in transit and instead asks the Court to ignore his own contradictory allegation that Defendant "disclosed" the information to LinkedIn and Google—an allegation that necessarily describes receipt after the transmission of information from Plaintiff to Defendant.

Finally, Plaintiff's defense of his invasion of privacy claim falls flat. As mentioned above, Plaintiff impermissibly attempts to use the Opposition to add facts that are not actually set forth in his FAC. Indeed, the "private" information first discussed in the Opposition is limited to a generic credit score range—one attributable to millions of Americans. The caselaw does not treat such generic information as legally protectable. Even putting that aside that failure, the Opposition makes no attempt to explain how the FAC clears California's "high bar" for an invasion of privacy pleading requiring facts demonstrating highly offensive conduct. Instead, Plaintiff punts altogether, claiming that these are "fact issues" to be addressed after discovery. Not so. As shown below, numerous cases dismiss claims when they are deficient at the pleadings stage, and this Court should follow suit.

For all these reasons, this Court should grant the Motion to Dismiss in full with prejudice, since the same glaring timeliness, procedural, and pleading deficiencies remain uncured.

## II. ARGUMENT

### A. <u>Plaintiff Admits His Claims Are Untimely</u>.

Plaintiff does not, and cannot, dispute that he filed the FAC on May 14, 2026, making that the operative date for purposes of the two-year statute of limitations. (Opp. at 7.) Nor does Plaintiff dispute that "[h]is claims accrued, ***at the latest***, upon his January to February 2024 visits." (*Id.* at 8 (emphasis added).) Accordingly, the FAC falls outside of the applicable two-year statute of limitations for Plaintiff's ECPA and invasion of privacy claims. Plaintiff does not contend otherwise, and also abandons any claims of fraudulent concealment or delayed discovery. Instead, he relies entirely upon the relation-back doctrine to resuscitate his untimely claims.[1] As a matter

[1] In his Opposition, Plaintiff does not address Better's arguments challenging Plaintiff's attempt to invoke tolling due to fraudulent concealment or delayed discovery. (*Compare* Mot. at 12-15 *with* Opp. at 8-10.) Plaintiff's silence concedes this argument. *Ardente, Inc. v. Shanley*, No. C

of law, this argument fails.

1. *The Relation Back Doctrine Does Not Apply to an Untimely Original Complaint.*

An untimely initial complaint cannot anchor a subsequent, untimely complaint for purposes of Rule 15(c) or the relation back doctrine. (Mot. at 15-16.) Citing *American Pipe*, however, Plaintiff argues that this basic law is somehow "an untenable position" that the "Supreme Court sought to curb." (Opp. at 8.) Plaintiff is wrong. *American Pipe* simply stands for the proposition that the statute of limitations during a pending class action are tolled, thereby enabling individual claims to be timely brought if class certification fails. *Am. Pipe & Constr. Co.*, 414 U.S. at 554. Essential to *American Pipe* tolling is that a timely-brought putative class action exists and has been maintained, which is true of neither the *Leanos* Action nor this case due to the plaintiffs' untimely filings. In fact, the Supreme Court later clarified that "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech v. Michael H. Resh*, 584 U.S. 732, 736 (2018). To extend *American Pipe*'s application to situations such as this "falls beyond [*American Pipe's*] carefully crafted parameters into the range of abusive options." *Robbins v. Fluor Corp.*, 835 F.2d 213, 214 (9th Cir. 1987); *see also Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 736-37 (C.D. Cal. 2025) (rejecting invocation of *American Pipe* and relation back doctrines where plaintiff voluntarily dismissed an earlier case). Fatal to Plaintiff is that he admittedly relies upon the untimely filing of the *Leanos* Complaint as a basis for attempting to render his current case timely—a tactic that courts have expressly rejected in view of *American Pipe*. *See Bolton v. First Advantage LNS Screening Sols., Inc.*, No. 14 Civ. 5735(PAC), 2015 WL 4039834, at *3 (S.D.N.Y. July 1, 2015) (rejecting *American Pipe* tolling and relation back doctrine where named plaintiff's claims were untimely). In short, where a plaintiff has commenced a "clearly untimely suit," the class he or she purports to represent "could fare no better." *Id.*

The cases cited by Plaintiff in opposition underscore the flaws in his argument. (*See* Opp.

---

07-4479 MHP, 2010 WL 546485, at *7 (N.D. Cal. Feb. 10, 2010) ("Plaintiff does not respond to this argument and therefore concedes it.").

at 8-9.) In *Boston Ret. Sys. v. Uber Tech., Inc.*, the court applied Rule 15 and the relation back doctrine to allow the inclusion of new plaintiffs to a class action that already existed and had been timely filed. 2021 WL 4503137, at *1 (N.D. Cal. Oct. 1, 2021). Similarly, in *Hildebrandt v. Staples, the Office Superstore, LLC*, the California Court of Appeal, following *American Pipe* and its progeny, held that an individual's claims were tolled by virtue of the timely filing of the putative class action. 58 Cal. App. 5th 128, 135-37 (2020). The court's decisions in *Branick v. Downey Savings & Loan Ass'n*, 39 Cal.4th 235 (2009) and *Hutcheson v. Superior Ct.*, 74 Cal. App. 5th 932 (2022) fare no better, as neither addressed relation back to an untimely complaint

Here, Plaintiff admits his claim is untimely. But he cannot seek shelter in *American Pipe* because there was no timely action to begin with. His effort to relate his untimely putative class action to an earlier, untimely, putative class action finds no support in law and, for this reason alone, dismissal of the FAC in its entirety should be granted as untimely.

2. *Plaintiff Concedes He Did Not Act With Reasonable Diligence.*

In an obvious effort to avoid the same fate as his predecessor, Plaintiff abandons any reliance upon the delayed discovery doctrine and avoids entirely Better's arguments on this score. (*Compare* Mot. at 12-13, *with* Opp. at 7-10.) That's for good reason—Plaintiff has no excuse (whether in law or in fact) for his untimely filing when, based on his browsing of the website and the existence of the Privacy Policy, he was squarely put on notice of his purported claims. As set forth further in its Opening Brief, the delayed discovery doctrine cannot apply because Better's Privacy Policy (which was available on every page of its website) put Plaintiff on notice of his purported injury when he allegedly visited Better's website. (Mot. at 12-13.) Indeed, against virtually identical facts, this Court held the same in relation with Plaintiff Leanos. (*See* Dkt. No. 37.) Plaintiff's complete failure to address this argument—or the existence of Better's Privacy Policy—is fatal and provides a separate basis for dismissal.

In short, two separately named plaintiffs have attempted to bring untimely suits and, despite being given the opportunity to cure, have done ***absolutely nothing*** to cure the fatal flaw previously observed by this Court. (*Compare* Compl. ¶¶ 100-08 (tolling allegations), *with* FAC, ¶¶ 92-99

(same).) Accordingly, given the obvious futility of amendment, dismissal with prejudice is warranted.

**B. <u>Plaintiff Cannot Establish Article III Standing</u>.**

Timing aside, Plaintiff's Opposition fails to address another fatal defect in the FAC: his failure to plead a concrete injury sufficient to confer Article III standing. Instead, Plaintiff misstates the scope of the GLBA and CalFIPA, conflates generalized website analytics data with sensitive personal information, and relies upon inapposite authority. Arguments made in an opposition cannot supplant Plaintiff's deficient allegations in a pleading and, even still, they do not satisfy standing requirements.

***First***, Plaintiff's standing argument rests largely on his premise that the GLBA and CalFIPA categorically prohibit financial institutions from sharing consumers' "nonpublic personal information" with third parties. (Opp. at 3-4.) This contention is flawed at its premise. The GLBA and CalFIPA are not simple, blanket prohibitions on data sharing: they authorize data sharing by financial institutions for myriad circumstances. Recognizing the need for data sharing for purposes of carrying out various business and commercial services, both statutes expressly permit financial institutions, like Better, to share nonpublic personal information to third parties under various circumstances, including to (i) render services back to the company and (ii) conduct joint marketing—the very purposes purportedly challenged in the FAC. (*See* FAC ¶¶ 20, 84; *see also* 16 C.F.R. §§ 313.4-313.9, 313.13-313.14.) Plaintiff fails to offer a meaningful response on this score and, instead, summarily states, without factual or legal support, that violations under the GLBA and CalFIPA have occurred. (Opp. at 3-4.) That is not enough and is simply another way of pleading injury based on a statutory violation, which fails to establish Article III standing. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("an injury in law is not an injury in fact").[2]

---

[2] Contrary to Plaintiff's argument in the Opposition, Better has not somehow conceded that it disclosed the alleged information to LinkedIn and Google. Plaintiff fundamentally misunderstands what is required of Better at the pleading stage. Plaintiff states that "Defendant does not deny that it disclosed consumers' information to LinkedIn and Google." (Opp. at 1.) But at the pleading stage, all that is required is for Better to attack the facial sufficiency of the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007).

***Second***, in his effort to establish harm, Plaintiff overstates the type of information at issue by describing it at various points as "personally identifying information" and "sensitive financial information." (Opp. at 3-4, 11, 14, 17.) But a plain review of Plaintiff's actual allegations reveals that these are not accurate descriptions of what was allegedly collected and shared. Rather, Plaintiff alleges that Better has collected only four narrow pieces of information: (i) a desired loan type, (ii) a condominium building address, (iii) a property type, and (iv) a credit score range. (*See* FAC ¶ 82, Figs. 3-14 (providing full screenshots of the alleged data collection forms).) That's it.

Plaintiff fails to articulate any cognizable basis as these four narrow pieces of information could possibly qualify as "embarrassing, invasive, or otherwise private information." *Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025). Nor could he given that these four items do not constitute "personally identifiable information" under any accepted definition of the term. For example, California's identity theft statute defines "PII" as "a person's name, address, telephone number, driver's license number, social security number, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, or credit card number." Cal. Civ. Code § 1798.92(c). Nor is this "sensitive financial information." For example, the California Consumer Privacy Act defines "sensitive personal information" to include certain financial information such as "[a] consumer's account log-in, financial account, debit card, or credit card number in combination with any required security or access code, password, or credentials allowing access to an account." Cal. Civ. Code § 1798.140(ae)(1)(B). None of the information in these definitions appears in Plaintiff's allegations. The complete absence of any such information here, therefore, defeats Plaintiff's attempt to differentiate this case from *Popa*, 153 F.4th at 791 and its progeny.

Plaintiff's alternative argument that Better required him to provide his "home address" during the loan application process, (FAC ¶ 5), fares no better and is belied by the FAC itself, which is silent on this score. Instead, the FAC alleges only that Plaintiff applied for a "home loan." That allegation does not reasonably support an inference that the property address reflected in the screenshots was Plaintiff's residence, as opposed to a property he sought to purchase, refinance,

rent, or hold as an investment. Plaintiff's inability to allege that the address supposedly disclosed was even associated with his residence further undermines any claim that the information was uniquely personal, confidential, or capable of giving rise to a concrete privacy injury.

The screenshot "exemplar[s]" referenced in the FAC do not cure Plaintiff's standing problem. (Opp. at 6.) To the contrary, Plaintiff asks the Court to infer a concrete and particularized injury from screenshots that concededly do not depict his own transaction and that have now appeared in three separate complaints brought by three different plaintiffs—two of which have been dismissed. (Dkt. No. 1; *Gillean v. Better Home & Fin. Co.*, No. 5:25-cv-01573-SB-MAR, ECF No. 1 (C.D. Cal.).) Far from establishing a concrete injury, the repeated recycling of the same screenshots across three separate cases substantially undercuts any inference that Plaintiff himself suffered a distinct, particularized disclosure of private information. Indeed, other courts faced with similarly lazy allegations have dismissed claims at the pleadings stage. *See Chandra v. Prager Univ. Found.*, No. 2:25-CV-03984-MCS-SK, 2025 WL 3049870 at *4 (C.D. Cal. Oct. 21, 2025) (dismissing claim because screenshot of pixel code was "provided only as an exemplar and [did] not relate to either Plaintiff specifically. ") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).)

***Third***, Plaintiff's claim that "IP address, device information, and User-IDs" somehow constitutes personally identifiable information or other sensitive information is a non-starter. (*See, e.g.,* FAC ¶ 67.) To begin, Plaintiff makes no meaningful effort to connect these pieces of information to his (or anyone else's) identity.

Plaintiff's own authority illustrates what's missing here: specific, detailed, facts concerning information capable of establishing the identity of the plaintiff. In *Garcia v. Truist Financial Corp.*, for instance, the plaintiff alleged disclosure of information concerning "his citizenship, housing status, and employment information" and communications containing confidential, non-public information connected to him personally. No. 2:25-CV-05753-MEMF-PVC, 2026 WL 972328, at *1, *6 (C.D. Cal. Mar. 25, 2026). Similarly, in *Jones v. Skullcandy, Inc.*, a great level of detail was pled:

> Plaintiff alleges that Defendant allows third-parties to collect information such as

> "[d]etailed browsing histories and product preferences," "[s]hopping cart contents and purchase behavior," "[p]ersonally identifiable information including names, email addresses, and Facebook/Google account identifiers," "[r]eal-time behavioral data showing consumer interests and purchasing patterns," and "[d]emographic and psychographic profiles that enable targeted marketing."

No. 25-CV-1759 JLS (BLM), 2026 WL 699819, at *18 (S.D. Cal. Mar. 12, 2026). Nothing of the sort is pled here.[3]

Ultimately, Plaintiff asks the Court to infer an injury from generalized allegations that website analytics tools received an address, a property designation, a general credit-score range, and technical identifiers. (FAC ¶¶ 5, 21, 86, 87, 127.) That is exactly the type of "broad theory . . . pitched at a high level of generality" that the Ninth Circuit rejected in *Popa*. *See* 153 F.4th at 792. Because Plaintiff has not plausibly alleged disclosure of information that is private, identifying, and uniquely attributable to him—and because he identifies no concrete harm flowing from the alleged disclosure—he has failed to establish Article III standing. The FAC must therefore be dismissed in its entirety.

### C. <u>Plaintiff's ECPA Claim Fails Because He Has Not Alleged that Better Had a Criminal or Tortious Purpose</u>

Plaintiff concedes that Better cannot be liable under the ECPA for intercepting a communication to which Better was a party; instead, he relies upon the crime-tort exception in an effort to save his claim. (Opp. at 10-13.) Anticipating this, Better challenged Plaintiff to identify any well-pled facts within the FAC that satisfy this doctrine's exception, namely that Better had a

[3] Plaintiff's reliance on *Ghanaat v. Numerade Labs, Inc.* makes Better's point: there, the court held that while a Facebook ID *may* constitute personally identifiable information in certain circumstances, dismissal was still warranted because the plaintiffs failed to allege that the associated Facebook pages contained information sufficient to identify them. 689 F. Supp. 3d 714, 720 (N.D. Cal. 2023). Here, Plaintiff alleges only that Google or LinkedIn could theoretically connect the alleged identifiers to his identity, without pleading that any such linkage occurred or that any uniquely identifying information was disclosed. Courts have repeatedly rejected precisely this sort of conclusory pleading. *See, e.g., Herzman v. Smile Brands Inc.*, No. 25-CV-03400-H-BLM, 2026 WL 1110698, at *4 (S.D. Cal. Apr. 23, 2026) ("bare allegations" of personally identifying information disclosure "is nothing more than legal conclusions cast in the form of factual allegations.").

criminal or tortious purpose. (Mot. at 17-18.) Plaintiff's deficient response proves Better's point: yet again, he parrots the same boilerplate language that Better identified as insufficient. (Opp. at 12-13.) As detailed in Better's Opening Brief and in Section II.B above, Plaintiff makes no attempt to explain how Better violated the GLBA or CalFIPA, let alone how Better purportedly intercepted the communications "for the purpose of committing any tortious or criminal act." Even if Better violated the Acts (it did not), the crime-tort exception does not apply simply because a law was violated or a crime or tort was committed; a criminal or tortious purpose is required. *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 516 (S.D.N.Y. 2001) ("[T]he commission of a tortious act [does] not prove a tortious purpose.")

Worse yet, Plaintiff himself concedes these technologies were used for "targeted advertising purposes." (Opp. at 12.) Targeted advertising is of course not a crime and provides no basis for the ECPA's crime-tort exception. *Doe v. Talkiatry Mgt. Services, LLC,* 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) (dismissing ECPA claim because plaintiffs did not identify "HIPAA as the 'primary motivation or a determining factor'"); *J.S. v. Spring Fertility Holdings, LLC*, No. 5:24-CV-07374-EJD, 2026 WL 1483490, at *3 (N.D. Cal. May 27, 2026) (plaintiff's argument that primary unlawful purpose was to violate HIPAA was not sufficiently pled in the FAC"); *Garcia v. Anschutz Ent. Group, Inc.*, No. 5:25-CV-02282-SSS-DTBX, 2026 WL 1278912, at *6 (C.D. Cal. May 5, 2026) (finding that as alleged, "there do not seem to be any tortious or criminal act independent of the collection, interception, and distribution of Plaintiff's data"). To hold otherwise would upset the entire purpose of the ECPA's one-party consent requirement—since *every* alleged interception of website tracking information by a third-party advertising cookie would trigger the ECPA's crime-tort exception and render the ECPA an all-party consent law.

The cases relied upon by Plaintiff do not compel a different result and turned on factual allegations that are plainly missing here. (Opp. at 11.) In *Shah v. Capital One Financial Corporation*, the plaintiff's 400+ paragraph complaint offered detailed allegations describing Capital One's (i) alleged use of third-party trackers to unlawfully harvest and disclose customer personal and financial information; (ii) misleading data security and privacy policies, in furtherance

of this unlawful data harvest and disclosure plan; and (iii) failure to clearly disclose the sharing of sensitive financial information with third-party advertisers through ambiguous privacy notices. 768 F. Supp. 3d 1033, 1053 (N.D. Cal. 2025); (*see* Reply Request for Judicial Notice, Ex. A, Case No. 3:24-cv-05985-TL, Dkt. No. 1, at ¶¶ 60-143.) Based upon these allegations and others, the court determined that the plaintiff sufficiently pled the interception of information "for an unauthorized purpose, which resulted in tortious acts." *Shah*, F. Supp. 3d at 1053. Plaintiff's allegations here simply do not match the allegations in *Shah.*

Plaintiff's other cited cases involve similar allegations in which the defendants allegedly in "trad[ed] customers' sensitive financial information" for a profit. *Allison v. PHH Mortg.*, No. 25-CV-05323-RFL, 2026 WL 1353827, at *11 (N.D. Cal. May 14, 2026); *Garcia v. Truist Fin. Corp.,* No. 2:25-CV-05753-MEMF-PVC, 2026 WL 972328, at *10 (C.D. Cal. Mar. 25, 2026) (same). Again, no similar allegations are made here.

Plaintiff's alternative argument that financial motivation is sufficient to trigger the crime-tort exception is simply incorrect and unsupported by law. (*Compare* Mot. at 18, *with* Opp. at 12-13.) Nowhere in the *Shah* decision does the court discuss "financial motivation." 768 F. Supp. at 1053. In *R.C. v. Walgreen Co.*, which Plaintiff also relies upon for support, the court similarly did not conclude that financial motivation alone is sufficient to trigger the exception, but instead *inferred* the defendant's "tortious intent" based upon a well-pled privacy claim involving the collection and disclosure of highly sensitive health information for commercial gain. 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024). In reaching its conclusion, the court in *R.C.* also acknowledged:

> Generally, alleged interceptions fall within the tort or crime exception only where the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously, and cannot apply where the interceptor's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.

*Id.* (citing *In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014) (cleaned up)). Here, again, no such intent is alleged.

Finally, Plaintiff turns Rule 12 on its head by arguing "[w]hether a statutory exception applies is an affirmative defense that Defendant cannot establish on the face of the FAC." (Opp. at



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13.) That is fundamentally incorrect and squarely at odds with the authority cited above, which apply these exceptions at the pleadings stage. (*See supra* at 9-10.) Plaintiff's alternative argument that the GLBA and CalFIPA exceptions do not apply here is beside the point. (Opp. at 13.)

None of Plaintiff's kitchen-sink arguments excuse Plaintiff's failure to adequately plead facts to overcome the crime-tort exception—a doctrine that courts have routinely applied at this pleadings stage. For these reasons, the ECPA claim must be dismissed.

**D. Plaintiff Does Not Allege Interception in Transit Under ECPA of His Confidential Communications.**

Plaintiff agrees that, to state a claim under ECPA, he must plead interception during transmission. (Opp. at 15-16.)[4] Realizing that the FAC fails to do so, Plaintiff requests the Court make inference after inference to deem this essential element adequately pled. (Opp. at 16.) The Court should decline this invitation.

To begin with, in neither the FAC nor the Opposition does Plaintiff articulate how the alleged tracking technology at issue "intercepts" information while in transit. Instead, Plaintiff simply asks the Court to ignore his allegation that the information was "*disclosed* by Defendant to LinkedIn and Google" (FAC ¶ 86 (emphasis added))—indicating that those entities received the information some time after it was put into transit—in favor of his contradicting (and conclusory) allegation that the information was "intercepted" by those entities "in real time" (*id.*).[5] Plaintiff's contortions are not sufficient to maintain a claim.

---

[4] Whether a communication was intercepted in transit is analyzed similarly under the ECPA and California Invasion of Privacy Act ("CIPA") section 631(a); accordingly, courts routinely rely on CIPA precedent when evaluating ECPA interception claims. *See, e.g., Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 747 (N.D. Cal. 2023).

[5] Plaintiff's reliance on decisions from *Licea v. Old Navy, LLC* and *Valenzuela v. Nationwide Mutual Ins. Co.* miss the mark, as both involved entirely different technologies—specifically, code-tracking chatbot messages—rather than the cookie-based tracking at issue here. 669 F. Supp. 3d 941, 945 (C.D. Cal. 2023); 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023). Cookie or pixel-based tools do not intercept conversational content like chatbots recording two-way conversations do; instead, they collect metadata or browser events, not messages being "sent from or received at" any location. Courts have dismissed similar claims on this basis, because such tools do not intercept communications "in transit." *L.B. v. LinkedIn Corp.,* No. 5:24-CV-06832-EJD, 2025 WL 2899514, at *16 (N.D. Cal. Oct. 10, 2025).



MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

As this mess of allegations demonstrates, ECPA's "interception in transit" requirement is far from clear as applied to website technologies such as LinkedIn and Google tags. For example, courts in this Circuit have rejected similar "in transit" theories as the one advanced here by Plaintiff. *Doe v. Eating Recovery Ctr.*, 806 F. Supp. 3d 1109, 1116 (N.D. Cal. 2025) ("the only commonsense meaning of transit … is the transit from the person sending the communication to its intended recipient," and that filtering, processing, or using data after receipt is not "reading" in transit); *see also Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *5–7 (N.D. Cal. Apr. 17, 2025) (accord).

This reasoning is also consistent with the recent decision in *Hernandez-Silva v. Instructure, Inc.*, No. 2:25-CV-02711-SB-MAA, 2025 WL 2233210, at *5 (C.D. Cal. Aug. 4, 2025), appeal filed Aug. 27, 2025. There, Judge Blumenfeld dismissed CIPA claims where (as is the case here) the complaint "only vaguely reference[d] defendant's use of APIs without explaining how the technology allows real-time interception in general or how it was used to intercept plaintiff's data in particular." *Id.*[6] The court held that a "single vague and conclusory allegation" of "real time and/or near-real time" interception is not sufficient to demonstrate eavesdropping, let alone plausibly allege that confidential communications were intercepted in transit. *Id.* Here, Plaintiff's allegations are similarly deficient. (FAC ¶¶ 61, 86, 121.)

The remaining cases cited by Plaintiff do not compel a different result. In *Ghanaat,* 689 F. Supp. 3d at 720, the Court agreed that that a Facebook ID could be considered personally identifiable information "where it leads to a Facebook page that discloses personal and identifying information about the consumer" before determining that those allegations were inadequate because plaintiff did not allege that their Facebook page contained personally identifiable information, such as his name or email address. *Id.* In *Gaige v. Exer Holding Co., LLC*, plaintiff

[6] As noted in n.1 *supra*, Plaintiff's counsel previously filed a nearly identical complaint against Better in the *Gillean* matter. That action was voluntarily dismissed on September 10, 2025, following Better's filing of a Motion to Dismiss and just weeks *after* Judge Blumenfeld's decision in *Hernandez-Silva*. The timing and circumstances strongly suggest that Plaintiff's counsel engaged in improper forum shopping in search of a more favorable outcome.

alleged that his Facebook ID along with his health information was disclosed, which was sufficient for him to receive targeted advertising regarding his medical condition. 2025 WL 559719, at *4 (C.D. Cal. Jan. 30, 2025). Unlike both *Ghanaat* and *Gaige*, Plaintiff here does not allege that similarly confidential information was disclosed. In fact, Plaintiff does not even allege that his social media accounts were publicly accessible, as to possibly identify him. *Heerde v. Learfield Comm's, LLC*, 741 F. Supp. 3d 849, 857-58 (2024) ("[A] person's FID can be used to identify that person if the person's Facebook profile is publicly accessible and includes sufficient identifying information."). For this additional reason, because Plaintiff fails to adequately plead facts establishing interception in transit, dismissal is warranted.

**E. Plaintiff's Opposition Does Not Save His Invasion of Privacy Claim.**

Plaintiff's invasion of privacy claim rests on a theory that there is a legally protectable interest in a general credit score range. Not so. Realizing this, Plaintiff tries to rebrand his theory as involving his actual credit score. (*See* Opp. at 17 ("Plaintiff alleges a legally protected privacy interest in his financial information, including, but not limited to, ***his credit score***." (emphasis added)).) This theory is not supported by the FAC, and in any event, Plaintiff makes no meaningful effort to address the "high bar" that California has set, which requires facts demonstrating that Better's conduct was "highly offensive." For each of these reasons, dismissal is warranted.

***First***, despite Plaintiff's best efforts to obfuscate, this case is not one that involves the disclosure of one's actual credit score. On the contrary, as his own FAC confirms, the only "financial information" that is involved is the selection of a general credit score ***range:***





MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
SAN FRANCISCO




(*See* FAC, Fig. 13.)

This, in turn, separates this case from those cited by Plaintiff, which involved information that is indisputably protectable—such as detailed credit card and financial information—***not*** some generic credit score range. *See Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 945 (N.D. Cal. 2024) (finding a legally protected interest in credit card number, card issuer, expiration date, and CVC, but still dismissing claim because plaintiff failed to plausibly allege that defendant's conduct was so egregious as to constitute a serious invasion of privacy); *Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-01392 JLS NLS, 2009 WL 6527758, at *2-3 (S.D. Cal. Nov. 23, 2009) (finding legally protected interest in plaintiff's financial account, credit information, and social security number); *Valley Bank of Nevada v. Superior Ct.*, 15 Cal. 3d 652, 655, 542 P.2d 977 (1975) ("bank records pertaining to loan transactions between Bank and seven named persons and corporations"); *Garcia*, 2026 WL 972328 at *12 (finding legally protected interest in citizenship information, housing status, and employment, where "[s]haring information relating to citizenship particularly violates social norms"). The level of critical, sensitive, information pled in these cases is missing entirely here, where all that allegedly was disclosed was a generic credit score range that could be applicable to millions of Americans.[7]

---

[7] The Opposition contends that Plaintiff had a reasonable expectation that his information would not be disclosed. (Opp. at 18.) But this Court has already determined that "the hyperlink to [Better's] Privacy Policy was visible on each page Plaintiff visited in readable font" (Dkt. No. 37 at 11-12). And if Plaintiff had "exercised reasonable diligence[,]" the Privacy Policy would have put him on notice of "Defendant's disclosures about its user data sharing." (Dkt. No. 37 at 12.)

***Second***, rather than defend his pleadings and explain how Better's conduct satisfies the "high bar" of demonstrating "highly offensive" conduct, Plaintiff punts on it altogether and, instead, claims that these are fact-intensive questions. (Opp. at 20.) Not true. Indeed, courts routinely decide this issue at the pleading stage. In *YETI Coolers, LLC*, which Plaintiff relies upon in his Opposition (Opp. at 17), the court dismissed the privacy claim because the plaintiff failed to plausibly allege that the defendant's conduct was so egregious as to constitute a serious invasion of privacy. 754 F. Supp. 3d at 946. Other cases have followed suit. *Popa.*, 153 F.4th at 791 (affirming dismissal where plaintiff did not "explain how the tracking of her interactions with the [website] caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."); *DellaSala v. Samba TV, Inc.,* No. 3:25-CV-03470-JSC, 2025 WL 3034069, at *4 (N.D. Cal. Oct. 30, 2025) (granting motion to dismiss as to intrusion upon seclusion claim because the "[p]laintiffs have not plausibly alleged a highly offensive violation of a privacy interest"); *Wooten v. BioLife Plasma Servs., L.P.*, 807 F. Supp. 3d 1139, 1144 (2025) (granting motion to dismiss because "[d]isclosure of one's email and IP address, without more, does not bear similarity to the 'highly offensive' interferences or disclosures that were actionable at common law.") (collecting cases).

At bottom, Plaintiff's invasion of privacy theory rests on the disclosure of information that no court has recognized as being legally protectable and, even if it did, Plaintiff makes no effort to establish how the alleged collection and disclosure of this information was somehow "highly offensive." These pleading deficiencies are independently fatal and warrant dismissal of Plaintiff's invasion of privacy claim with prejudice.

## III. CONCLUSION

Better respectfully requests that the Court grant its motion and dismiss the case in its entirety with prejudice.

---

Therefore, Plaintiff fails to plausibly show that Defendant's alleged conduct is an "egregious breach of social norms." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011).

Dated: July 2, 2026

Respectfully submitted,

**MANATT, PHELPS & PHILLIPS, LLP**

By: /s/ Brandon P. Reilly
Brandon P. Reilly
Matthew F. Bruno
Kyla Núñez
Attorneys for Defendant
*Better Home & Finance Holding Company*